POMERANTZ LLP
Thomas H. Przybylowski
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
tprzybylowski@pomlaw.com

*Counsel for Movant Dimitar Yankov
and Proposed Lead Counsel for the
Class*

[Additional counsel on signature page.]

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| RONDOLPH HO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ROCKET PHARMACEUTICALS, INC. and GAURAV SHAH,<br><br>Defendants. | Case No. 3:25-cv-10049-ZNQ-TJB<br><br>DECLARATION OF THOMAS H. PRZYBYLOWSKI IN SUPPORT OF MOTION OF DIMITAR YANKOV FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL<br><br>Motion Date: September 15, 2025 |

|  |  |
|---|---|
| DIMITAR YANKOV, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>  v.<br><br>ROCKET PHARMACEUTICALS, INC., GAURAV SHAH, and AARON ONDREY,<br><br>    Defendants. | Case No. 3:25-cv-13532-ZNQ-TJB |

I, Thomas H. Przybylowski, hereby declare as follows:

1. I am an attorney with the law firm of Pomerantz LLP ("Pomerantz"), counsel on behalf of Dimitar Yankov ("Yankov"), and have personal knowledge of the facts set forth herein. I make this Declaration in support of Yankov's motion for consolidation of the above-captioned related actions (the "Related Actions"), appointment as Lead Plaintiff for the Class in the consolidated action, and approval of Yankov's selection of Pomerantz as Lead Counsel for the Class.

2. Attached hereto as the exhibits indicated are true and correct copies of the following:

| | |
|---|---|
| Exhibit A: | Chart setting forth Yankov's financial interest in this litigation; |
| Exhibit B: | Press release published via *Globe Newswire* on June 11, 2025, announcing the pendency of the first-filed of the Related Actions; |
| Exhibit C: | Shareholder Certification executed by Yankov; |
| Exhibit D: | Declaration executed by Yankov; and |
| Exhibit E: | Firm resume of Pomerantz. |

I declare under penalty of perjury under the laws of the United States of America that the foregoing facts are true and correct.

Executed on August 11, 2025.

*/s/ Thomas H. Przybylowski*
Thomas H. Przybylowski

1

# EXHIBIT A

**Rocket Pharmaceuticals, Inc. (RCKT)**
**Class Period: September 17, 2024 to May 26, 2025**
**(Includes 90-Day Sales @ Statutory Pricing)**

| Plaintiff | Purchase or Acquire Date | Shares | Price | Amount | Sales Date | Shares | Price | Amount | Shares Retained | 74-Days* Mean Price $2.9141 Estimated Value | Estimated Gain(Loss) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Dimitar Yankov | 11/11/2024 | 100 | $17.6200 | ($1,762) | | | | | | | |
| Dimitar Yankov | 11/11/2024 | 20 | $17.6050 | ($352) | | | | | | | |
| Dimitar Yankov | 11/11/2024 | 10 | $17.6500 | ($177) | | | | | | | |
| Dimitar Yankov | 11/11/2024 | 100 | $17.6500 | ($1,765) | | | | | | | |
| Dimitar Yankov | 11/11/2024 | 200 | $17.6400 | ($3,528) | | | | | | | |
| Dimitar Yankov | 11/11/2024 | 300 | $17.6200 | ($5,286) | | | | | | | |
| Dimitar Yankov | 11/11/2024 | 108 | $17.6500 | ($1,906) | | | | | | | |
| Dimitar Yankov | 11/11/2024 | 100 | $17.6300 | ($1,763) | | | | | | | |
| Dimitar Yankov | 11/11/2024 | 100 | $17.6200 | ($1,762) | | | | | | | |
| Dimitar Yankov | 11/11/2024 | 900 | $17.6300 | ($15,867) | | | | | | | |
| Dimitar Yankov | 11/11/2024 | 100 | $17.6300 | ($1,763) | | | | | | | |
| Dimitar Yankov | 11/11/2024 | 100 | $17.6500 | ($1,765) | | | | | | | |
| Dimitar Yankov | 11/11/2024 | 600 | $17.6200 | ($10,572) | | | | | | | |
| Dimitar Yankov | 11/11/2024 | 90 | $17.6300 | ($1,587) | | | | | | | |
| Dimitar Yankov | 11/11/2024 | 600 | $17.6300 | ($10,578) | | | | | | | |
| Dimitar Yankov | 11/11/2024 | 58 | $17.6300 | ($1,023) | | | | | | | |
| Dimitar Yankov | 11/11/2024 | 5,680 | $17.7800 | ($100,990) | | | | | | | |
| Dimitar Yankov | 11/11/2024 | 5,989 | $17.7800 | ($106,484) | | | | | | | |
| Dimitar Yankov | 11/11/2024 | 5,340 | $17.7800 | ($94,945) | | | | | | | |
| Dimitar Yankov | 11/11/2024 | 100 | $17.7800 | ($1,778) | | | | | | | |
| Dimitar Yankov | 11/11/2024 | 450 | $17.7800 | ($8,001) | | | | | | | |
| Dimitar Yankov | 11/11/2024 | 80 | $17.7700 | ($1,422) | | | | | | | |
| Dimitar Yankov | 11/11/2024 | 100 | $17.7800 | ($1,778) | | | | | | | |
| Dimitar Yankov | 11/11/2024 | 1 | $17.7800 | ($18) | | | | | | | |
| Dimitar Yankov | 11/11/2024 | 100 | $17.7700 | ($1,777) | | | | | | | |
| Dimitar Yankov | 11/11/2024 | 4,339 | $17.7800 | ($77,147) | | | | | | | |
| Dimitar Yankov | 11/11/2024 | 74 | $17.7800 | ($1,316) | | | | | | | |
| Dimitar Yankov | 11/11/2024 | 2,829 | $17.7800 | ($50,300) | | | | | | | |
| Dimitar Yankov | 11/11/2024 | 32 | $17.7800 | ($569) | | | | | | | |
| Dimitar Yankov | 2/14/2025 | 100 | $10.3700 | ($1,037) | | | | | | | |
| Dimitar Yankov | 2/14/2025 | 100 | $10.3700 | ($1,037) | | | | | | | |
| Dimitar Yankov | 2/14/2025 | 100 | $10.3700 | ($1,037) | | | | | | | |

*Avg Closing Prices from May 27, 2025 to August 8, 2025

**Rocket Pharmaceuticals, Inc. (RCKT)**
**Class Period: September 17, 2024 to May 26, 2025**
**(Includes 90-Day Sales @ Statutory Pricing)**

| Plaintiff | Purchase or Acquire Date | Shares | Price | Amount | Sales Date | Shares | Price | Amount | Shares Retained | 74-Days* Mean Price $2.9141 Estimated Value | Estimated Gain(Loss) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Dimitar Yankov | 2/14/2025 | 1,200 | $10.3700 | ($12,444) | | | | | | | |
| Dimitar Yankov | 2/14/2025 | 61 | $10.3700 | ($633) | | | | | | | |
| Dimitar Yankov | 2/14/2025 | 99 | $10.3650 | ($1,026) | | | | | | | |
| Dimitar Yankov | 2/14/2025 | 500 | $10.3700 | ($5,185) | | | | | | | |
| Dimitar Yankov | 2/14/2025 | 100 | $10.3700 | ($1,037) | | | | | | | |
| Dimitar Yankov | 2/14/2025 | 1 | $10.3700 | ($10) | | | | | | | |
| Dimitar Yankov | 2/14/2025 | 1 | $10.3700 | ($10) | | | | | | | |
| Dimitar Yankov | 2/14/2025 | 100 | $10.3700 | ($1,037) | | | | | | | |
| Dimitar Yankov | 2/14/2025 | 118 | $10.3700 | ($1,224) | | | | | | | |
| Dimitar Yankov | 2/14/2025 | 1,000 | $10.3680 | ($10,368) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 2,521 | $6.2800 | ($15,832) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.2800 | ($628) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.2800 | ($628) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 27 | $6.2800 | ($170) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 679 | $6.2800 | ($4,264) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.2800 | ($628) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 10 | $6.2800 | ($63) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 700 | $6.2800 | ($4,396) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.2800 | ($628) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 30 | $6.2800 | ($188) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.2800 | ($628) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.2800 | ($628) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.2750 | ($628) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.2800 | ($628) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 12 | $6.2800 | ($75) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 81 | $6.2800 | ($509) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 2,000 | $6.2800 | ($12,560) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.2800 | ($628) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 14 | $6.3200 | ($88) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 11 | $6.3200 | ($70) | | | | | | | |

*Avg Closing Prices from May 27, 2025 to August 8, 2025

**Rocket Pharmaceuticals, Inc. (RCKT)**
**Class Period: September 17, 2024 to May 26, 2025**
**(Includes 90-Day Sales @ Statutory Pricing)**

| Plaintiff | Purchase or Acquire Date | Shares | Price | Amount | Sales Date | Shares | Price | Amount | Shares Retained | 74-Days* Mean Price $2.9141 Estimated Value | Estimated Gain(Loss) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Dimitar Yankov | 5/23/2025 | 400 | $6.3200 | ($2,528) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 50 | $6.3200 | ($316) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 11 | $6.3200 | ($70) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 63 | $6.3200 | ($398) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 55 | $6.3200 | ($348) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 287 | $6.3200 | ($1,814) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3100 | ($631) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 11 | $6.3200 | ($70) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 8 | $6.3200 | ($51) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 1 | $6.3200 | ($6) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 59 | $6.3200 | ($373) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 6 | $6.3200 | ($38) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 126 | $6.3200 | ($796) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 3,524 | $6.3200 | ($22,272) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 56 | $6.3200 | ($354) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 200 | $6.3250 | ($1,265) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 600 | $6.3250 | ($3,795) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3100 | ($631) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3100 | ($631) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 64 | $6.3200 | ($404) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3150 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 163 | $6.3150 | ($1,029) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 14 | $6.3200 | ($88) | | | | | | | |

*Avg Closing Prices from May 27, 2025 to August 8, 2025

**Rocket Pharmaceuticals, Inc. (RCKT)**
**Class Period: September 17, 2024 to May 26, 2025**
**(Includes 90-Day Sales @ Statutory Pricing)**

| Plaintiff | Purchase or Acquire Date | Shares | Price | Amount | Sales Date | Shares | Price | Amount | Shares Retained | 74-Days* Mean Price $2.9141 Estimated Value | Estimated Gain(Loss) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 16 | $6.3200 | ($101) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 48 | $6.3200 | ($303) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 63 | $6.3200 | ($398) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 4 | $6.3200 | ($25) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 23 | $6.3250 | ($145) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 10 | $6.3300 | ($63) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 400 | $6.3300 | ($2,532) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 3 | $6.3300 | ($19) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 64 | $6.3100 | ($404) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 11 | $6.3200 | ($70) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 145 | $6.3200 | ($916) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3250 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3350 | ($634) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3400 | ($634) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 90 | $6.3400 | ($571) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 49 | $6.3300 | ($310) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 200 | $6.3300 | ($1,266) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 300 | $6.3100 | ($1,893) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 17 | $6.3200 | ($107) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 39 | $6.3200 | ($246) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 6 | $6.3200 | ($38) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 22 | $6.3200 | ($139) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 63 | $6.3200 | ($398) | | | | | | | |

*Avg Closing Prices from May 27, 2025 to August 8, 2025

**Rocket Pharmaceuticals, Inc. (RCKT)**
**Class Period: September 17, 2024 to May 26, 2025**
**(Includes 90-Day Sales @ Statutory Pricing)**

| Plaintiff | Purchase or Acquire Date | Shares | Price | Amount | Sales Date | Shares | Price | Amount | Shares Retained | 74-Days* Mean Price $2.9141 Estimated Value | Estimated Gain(Loss) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Dimitar Yankov | 5/23/2025 | 53 | $6.3200 | ($335) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 173 | $6.3200 | ($1,093) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 52 | $6.3300 | ($329) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3250 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 104 | $6.3250 | ($658) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 101 | $6.3250 | ($639) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3100 | ($631) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 6 | $6.3100 | ($38) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3150 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 200 | $6.3200 | ($1,264) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 8 | $6.3300 | ($51) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3400 | ($634) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 200 | $6.3250 | ($1,265) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 30 | $6.3100 | ($189) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3150 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 30 | $6.3200 | ($190) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3150 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 200 | $6.3150 | ($1,263) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 23 | $6.3200 | ($145) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 1 | $6.3300 | ($6) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |

*Avg Closing Prices from May 27, 2025 to August 8, 2025

**Rocket Pharmaceuticals, Inc. (RCKT)**
**Class Period: September 17, 2024 to May 26, 2025**
**(Includes 90-Day Sales @ Statutory Pricing)**

| Plaintiff | Purchase or Acquire Date | Shares | Price | Amount | Sales Date | Shares | Price | Amount | Shares Retained | 74-Days* Mean Price $2.9141 Estimated Value | Estimated Gain(Loss) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Dimitar Yankov | 5/23/2025 | 100 | $6.3250 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3250 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 200 | $6.3250 | ($1,265) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 1 | $6.3100 | ($6) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3100 | ($631) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 9 | $6.3200 | ($57) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 800 | $6.3300 | ($5,064) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 55 | $6.3300 | ($348) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 14 | $6.3300 | ($89) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 8 | $6.3300 | ($51) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3250 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3250 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 2,400 | $6.3100 | ($15,144) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 600 | $6.3150 | ($3,789) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 37 | $6.3150 | ($234) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 200 | $6.3150 | ($1,263) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 39 | $6.3200 | ($246) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 2 | $6.3200 | ($13) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 1,735 | $6.3200 | ($10,965) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 44 | $6.3200 | ($278) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 2 | $6.3200 | ($13) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 4 | $6.3200 | ($25) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3250 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 4 | $6.3300 | ($25) | | | | | | | |

*Avg Closing Prices from May 27, 2025 to August 8, 2025

**Rocket Pharmaceuticals, Inc. (RCKT)**
**Class Period: September 17, 2024 to May 26, 2025**
**(Includes 90-Day Sales @ Statutory Pricing)**

|  | Purchase or Acquire | | | | Sales | | | | Shares | 74-Days* Mean Price $2.9141 Estimated | Estimated |
| Plaintiff | Date | Shares | Price | Amount | Date | Shares | Price | Amount | Retained | Value | Gain(Loss) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 10 | $6.3200 | ($63) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 1 | $6.3300 | ($6) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 200 | $6.3300 | ($1,266) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3400 | ($634) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 200 | $6.3250 | ($1,265) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3100 | ($631) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3250 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 81 | $6.3200 | ($512) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3250 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 63 | $6.3200 | ($398) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 11 | $6.3200 | ($70) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3150 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 59 | $6.3200 | ($373) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 400 | $6.3200 | ($2,528) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 744 | $6.3200 | ($4,702) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 132 | $6.3200 | ($834) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3250 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 200 | $6.3250 | ($1,265) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 200 | $6.3300 | ($1,266) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 800 | $6.3200 | ($5,056) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3100 | ($631) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3150 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 11 | $6.3200 | ($70) | | | | | | | |

*Avg Closing Prices from May 27, 2025 to August 8, 2025

**Rocket Pharmaceuticals, Inc. (RCKT)**
**Class Period: September 17, 2024 to May 26, 2025**
**(Includes 90-Day Sales @ Statutory Pricing)**

|  | Purchase or Acquire | | | | Sales | | | | Shares | 74-Days*<br>Mean Price<br>$2.9141<br>Estimated | Estimated |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Plaintiff** | **Date** | **Shares** | **Price** | **Amount** | **Date** | **Shares** | **Price** | **Amount** | **Retained** | **Value** | **Gain(Loss)** |
| Dimitar Yankov | 5/23/2025 | 36 | $6.3200 | ($228) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 39 | $6.3300 | ($247) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 78 | $6.3300 | ($494) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 92 | $6.3300 | ($582) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 300 | $6.3250 | ($1,898) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 15 | $6.3200 | ($95) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 200 | $6.3150 | ($1,263) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 28 | $6.3200 | ($177) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 247 | $6.3200 | ($1,561) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 11 | $6.3200 | ($70) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3250 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 80 | $6.3300 | ($506) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 1 | $6.3300 | ($6) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 78 | $6.3300 | ($494) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 64 | $6.3300 | ($405) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 61 | $6.3150 | ($385) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 44 | $6.3100 | ($278) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 14 | $6.3200 | ($88) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 300 | $6.3200 | ($1,896) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 10 | $6.3300 | ($63) | | | | | | | |

*Avg Closing Prices from May 27, 2025 to August 8, 2025

**Rocket Pharmaceuticals, Inc. (RCKT)**
**Class Period: September 17, 2024 to May 26, 2025**
**(Includes 90-Day Sales @ Statutory Pricing)**

| Plaintiff | Purchase or Acquire Date | Shares | Price | Amount | Sales Date | Shares | Price | Amount | Shares Retained | 74-Days* Mean Price $2.9141 Estimated Value | Estimated Gain(Loss) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Dimitar Yankov | 5/23/2025 | 22 | $6.3300 | ($139) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3400 | ($634) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 11 | $6.3300 | ($70) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 2 | $6.3300 | ($13) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 200 | $6.3250 | ($1,265) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3100 | ($631) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 1 | $6.3200 | ($6) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 50 | $6.3200 | ($316) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 33 | $6.3200 | ($209) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 200 | $6.3200 | ($1,264) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 4 | $6.3200 | ($25) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 14 | $6.3200 | ($88) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 270 | $6.3200 | ($1,706) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 900 | $6.3250 | ($5,693) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3250 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 15 | $6.3300 | ($95) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 200 | $6.3250 | ($1,265) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 7 | $6.3100 | ($44) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 60 | $6.3100 | ($379) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 60 | $6.3150 | ($379) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 800 | $6.3200 | ($5,056) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 8 | $6.3200 | ($51) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |

*Avg Closing Prices from May 27, 2025 to August 8, 2025

**Rocket Pharmaceuticals, Inc. (RCKT)**
**Class Period: September 17, 2024 to May 26, 2025**
**(Includes 90-Day Sales @ Statutory Pricing)**

| | | | | | | | | | | | 74-Days* Mean Price $2.9141 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | **Purchase or Acquire** | | | | **Sales** | | | | | **Shares** | **Estimated** | **Estimated** |
| **Plaintiff** | **Date** | **Shares** | **Price** | **Amount** | **Date** | **Shares** | **Price** | **Amount** | | **Retained** | **Value** | **Gain(Loss)** |
| Dimitar Yankov | 5/23/2025 | 200 | $6.3300 | ($1,266) | | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 61 | $6.3200 | ($386) | | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 7 | $6.3200 | ($44) | | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 56 | $6.3200 | ($354) | | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 300 | $6.3300 | ($1,899) | | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 122 | $6.3300 | ($772) | | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 39 | $6.3200 | ($246) | | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 7 | $6.3400 | ($44) | | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 200 | $6.3200 | ($1,264) | | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 200 | $6.3250 | ($1,265) | | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3250 | ($633) | | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3250 | ($633) | | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 200 | $6.3300 | ($1,266) | | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 64 | $6.3100 | ($404) | | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3100 | ($631) | | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 12 | $6.3200 | ($76) | | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 53 | $6.3200 | ($335) | | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 14 | $6.3300 | ($89) | | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3400 | ($634) | | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 800 | $6.3300 | ($5,064) | | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 10 | $6.3300 | ($63) | | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 60 | $6.3200 | ($379) | | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 200 | $6.3250 | ($1,265) | | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | | |

*Avg Closing Prices from May 27, 2025 to August 8, 2025

**Rocket Pharmaceuticals, Inc. (RCKT)**
**Class Period: September 17, 2024 to May 26, 2025**
**(Includes 90-Day Sales @ Statutory Pricing)**

| Plaintiff | Purchase or Acquire Date | Shares | Price | Amount | Sales Date | Shares | Price | Amount | Shares Retained | 74-Days* Mean Price $2.9141 Estimated Value | Estimated Gain(Loss) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 96 | $6.3250 | ($607) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3100 | ($631) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 14 | $6.3100 | ($88) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 11 | $6.3200 | ($70) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 1 | $6.3200 | ($6) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 29 | $6.3300 | ($184) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 11 | $6.3300 | ($70) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 11 | $6.3300 | ($70) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 1 | $6.3300 | ($6) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3250 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3250 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3150 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 1 | $6.3200 | ($6) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 164 | $6.3200 | ($1,036) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3250 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 400 | $6.3300 | ($2,532) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3400 | ($634) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 2 | $6.3300 | ($13) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3250 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3250 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 400 | $6.3300 | ($2,532) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 28 | $6.3300 | ($177) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 800 | $6.3300 | ($5,064) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3250 | ($633) | | | | | | | |

*Avg Closing Prices from May 27, 2025 to August 8, 2025

**Rocket Pharmaceuticals, Inc. (RCKT)**
**Class Period: September 17, 2024 to May 26, 2025**
**(Includes 90-Day Sales @ Statutory Pricing)**

| Plaintiff | Purchase or Acquire Date | Shares | Price | Amount | Sales Date | Shares | Price | Amount | Shares Retained | 74-Days* Mean Price $2.9141 Estimated Value | Estimated Gain(Loss) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Dimitar Yankov | 5/23/2025 | 16 | $6.3300 | ($101) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 500 | $6.3150 | ($3,158) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 2 | $6.3200 | ($13) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 4 | $6.3200 | ($25) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3250 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 63 | $6.3300 | ($399) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3250 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 28 | $6.3300 | ($177) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 7 | $6.3300 | ($44) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 2 | $6.3200 | ($13) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 10 | $6.3300 | ($63) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 17 | $6.3300 | ($108) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3250 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 56 | $6.3300 | ($354) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 11 | $6.3200 | ($70) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 14 | $6.3300 | ($89) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3250 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 72 | $6.3300 | ($456) | | | | | | | |

*Avg Closing Prices from May 27, 2025 to August 8, 2025

**Rocket Pharmaceuticals, Inc. (RCKT)**
**Class Period: September 17, 2024 to May 26, 2025**
**(Includes 90-Day Sales @ Statutory Pricing)**

| Plaintiff | Purchase or Acquire Date | Shares | Price | Amount | Sales Date | Shares | Price | Amount | Shares Retained | 74-Days* Mean Price $2.9141 Estimated Value | Estimated Gain(Loss) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 1 | $6.3300 | ($6) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 39 | $6.3300 | ($247) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 6 | $6.3300 | ($38) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 53 | $6.3300 | ($335) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 25 | $6.3300 | ($158) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 1,800 | $6.3150 | ($11,367) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 263 | $6.3200 | ($1,662) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 11 | $6.3200 | ($70) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 200 | $6.3300 | ($1,266) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 14 | $6.3300 | ($89) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3250 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3250 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3250 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 25 | $6.3300 | ($158) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 200 | $6.3200 | ($1,264) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 11 | $6.3300 | ($70) | | | | | | | |

*Avg Closing Prices from May 27, 2025 to August 8, 2025

**Rocket Pharmaceuticals, Inc. (RCKT)**
**Class Period: September 17, 2024 to May 26, 2025**
**(Includes 90-Day Sales @ Statutory Pricing)**

|  | Purchase or Acquire | | | | Sales | | | | Shares | 74-Days*<br>Mean Price<br>$2.9141<br>Estimated | Estimated |
| Plaintiff | Date | Shares | Price | Amount | Date | Shares | Price | Amount | Retained | Value | Gain(Loss) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Dimitar Yankov | 5/23/2025 | 26 | $6.3300 | ($165) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 27 | $6.3300 | ($171) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 1,100 | $6.3300 | ($6,963) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 84 | $6.3300 | ($532) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 61 | $6.3300 | ($386) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 11 | $6.3200 | ($70) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 16 | $6.3300 | ($101) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 83 | $6.3300 | ($525) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3250 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 6,600 | $6.3150 | ($41,679) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 11 | $6.3200 | ($70) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3250 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3250 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 104 | $6.3250 | ($658) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 44 | $6.3300 | ($279) | | | | | | | |

*Avg Closing Prices from May 27, 2025 to August 8, 2025

**Rocket Pharmaceuticals, Inc. (RCKT)**
**Class Period: September 17, 2024 to May 26, 2025**
**(Includes 90-Day Sales @ Statutory Pricing)**

|  | Purchase or Acquire | | | | Sales | | | | Shares | 74-Days* Mean Price $2.9141 Estimated | Estimated |
| Plaintiff | Date | Shares | Price | Amount | Date | Shares | Price | Amount | Retained | Value | Gain(Loss) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 16 | $6.3200 | ($101) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 200 | $6.3200 | ($1,264) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 200 | $6.3300 | ($1,266) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3250 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 600 | $6.3250 | ($3,795) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 4 | $6.3300 | ($25) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3250 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 16 | $6.3300 | ($101) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 8 | $6.3200 | ($51) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3200 | ($632) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 100 | $6.3300 | ($633) | | | | | | | |
| Dimitar Yankov | 5/23/2025 | 7 | $6.3300 | ($44) | | | | | | | |
| **Dimitar Yankov** | | **100,080** | | **($973,677)** | | **0** | | **$0** | **100,080** | **$291,647** | **($682,030)** |

*Avg Closing Prices from May 27, 2025 to August 8, 2025

# EXHIBIT B

8/4/25, 3:38 PM

Newsroom

Services

Sign In        Register        Q

Contact Us

English ⌄

Q  🔔  ☰

EQ | GlobeNewswire by notified

**Levi & Korsinsky, LLP**

**Industry:** Specialized Consumer Services

**Website:**
https://zlk.com

# SHAREHOLDER ALERT: Levi & Korsinsky, LLP Notifies Investors It Has Filed a Complaint to Recover Losses Suffered by Purchasers of Rocket Pharmaceuticals, Inc. Securities and Sets a Lead Plaintiff Deadline of August 11, 2025

**Press Release Actions**

Print
Download PDF
Subscribe via RSS
Subscribe via ATOM
Javascript

June 11, 2025
20:09 ET

| Source: Levi & Korsinsky, LLP



Follow

**Share**

f

in

🙂

✉

⊞

NEW YORK, June 11, 2025 (GLOBE NEWSWIRE) -- The following statement is being issued by Levi & Korsinsky, LLP:

**To: All persons or entities who purchased or otherwise acquired securities of Rocket Pharmaceuticals, Inc. ("Rocket" or the "Company") (NASDAQ: RCKT) between February 27, 2025, to May 26, 2025, both dates inclusive. You are hereby notified** that the class action lawsuit *Rondolph Ho v. Rocket Pharmaceuticals, Inc., et al.* (Case No. 3:25-cv-10049) has been commenced in the United States District Court for the District of New Jersey. To get more information **go to:**

https://zlk.com/pslra-1/rocket-pharmaceuticals-inc-lawsuit-submission-form

or contact Joseph E. Levi, Esq. either via email at jlevi@levikorsinsky.com or by telephone at (212) 363-7500. **There is no cost or obligation to you.**

Newsroom

EQ | GlobeNewswire
by notified

Services

Sign In    Register

Contact Us

of participants enrolled in the study, were a risk. In particular, Rocket amended the trial's protocol to introduce a novel immunomodulatory agent to the pretreatment regimen without providing this critical update to shareholders. Such statements absent these material facts caused Plaintiff and other shareholders to purchase Rocket's securities at artificially inflated prices.

On May 27, 2025, Rocket announced that the FDA placed a clinical hold on the RP-A501 Phase 2 pivotal study after at least one patient suffered a Serious Adverse Event (SAE), ultimately, death, while enrolled in the study following a substantive amendment to the protocol that the Company failed to disclose to investors at the time management made the revision. In fact, Rocket stated that, while the patient was dosed in May, the decision to amend the protocol was made "several months" earlier. Despite this, Rocket made no attempt to alert investors or the public to the change until after the SAE occurred.

Following this news, the price of Rocket's common stock declined dramatically. From a closing market price of $6.27 per share on May 23, 2025, Rocket's stock price fell to $2.33 per share on May 27, 2025, a decline of about 37% in the span of just a single trading day.

**If you suffered a loss in RCKT securities, you have until August 11, 2025** to request that the Court appoint you as lead plaintiff. Your ability to share in any recovery doesn't require that you serve as a lead plaintiff.

**WHY LEVI & KORSINSKY:** Over the past 20 years, the team at Levi & Korsinsky has secured hundreds of millions of dollars for aggrieved shareholders and built a track record of winning high-stakes cases. Our firm has extensive expertise representing investors in complex securities litigation and a team of over 70 employees to serve our clients. For seven years in a row, Levi & Korsinsky has ranked in ISS Securities Class Action Services' Top 50 Report as one of the top securities litigation firms in the United States.

CONTACT:

Levi & Korsinsky, LLP

Joseph E. Levi, Esq.

Ed Korsinsky, Esq.

33 Whitehall Street, 17th Floor

New York, NY 10004

jlevi@levikorsinsky.com

# EXHIBIT C

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.     I, Dimitar Yankov _____, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.     I have reviewed a Complaint against Rocket Pharmaceuticals, Inc. ("Rocket") and authorize the filing of a comparable complaint on my behalf.

3.     I did not purchase or acquire Rocket securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.     I am willing to serve as a representative party on behalf of a Class of investors who purchased or otherwise acquired Rocket securities during the Class Period as specified in the Complaint, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.     The attached sheet lists all of my transactions in Rocket securities during the Class Period as specified in the Complaint.

6.     During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.     I agree not to accept any payment for serving as a representative party on behalf of the Class as set forth in the Complaint, beyond my *pro rata* share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.    I declare under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct.

**Executed** _7/14/2025_
                **(Date)**

DocuSigned by:

_Dimitar Yankov_
B79C6B8DDFB0429...
**(Signature)**

Dimitar Yankov

**(Type or Print Name)**

**Rocket Pharmaceuticals, Inc. (RCKT)**                                             **Dimitar Yankov**

### List of Purchases/Acquisitions and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase/Acquisition | 11/11/2024 | 100 | $17.6200 |
| Purchase/Acquisition | 11/11/2024 | 20 | $17.6050 |
| Purchase/Acquisition | 11/11/2024 | 10 | $17.6500 |
| Purchase/Acquisition | 11/11/2024 | 100 | $17.6500 |
| Purchase/Acquisition | 11/11/2024 | 200 | $17.6400 |
| Purchase/Acquisition | 11/11/2024 | 300 | $17.6200 |
| Purchase/Acquisition | 11/11/2024 | 108 | $17.6500 |
| Purchase/Acquisition | 11/11/2024 | 100 | $17.6300 |
| Purchase/Acquisition | 11/11/2024 | 100 | $17.6200 |
| Purchase/Acquisition | 11/11/2024 | 900 | $17.6300 |
| Purchase/Acquisition | 11/11/2024 | 100 | $17.6300 |
| Purchase/Acquisition | 11/11/2024 | 100 | $17.6500 |
| Purchase/Acquisition | 11/11/2024 | 600 | $17.6200 |
| Purchase/Acquisition | 11/11/2024 | 90 | $17.6300 |
| Purchase/Acquisition | 11/11/2024 | 600 | $17.6300 |
| Purchase/Acquisition | 11/11/2024 | 58 | $17.6300 |
| Purchase/Acquisition | 11/11/2024 | 5,680 | $17.7800 |
| Purchase/Acquisition | 11/11/2024 | 5,989 | $17.7800 |
| Purchase/Acquisition | 11/11/2024 | 5,340 | $17.7800 |
| Purchase/Acquisition | 11/11/2024 | 100 | $17.7800 |
| Purchase/Acquisition | 11/11/2024 | 450 | $17.7800 |
| Purchase/Acquisition | 11/11/2024 | 80 | $17.7700 |
| Purchase/Acquisition | 11/11/2024 | 100 | $17.7800 |
| Purchase/Acquisition | 11/11/2024 | 1 | $17.7800 |
| Purchase/Acquisition | 11/11/2024 | 100 | $17.7700 |
| Purchase/Acquisition | 11/11/2024 | 4,339 | $17.7800 |
| Purchase/Acquisition | 11/11/2024 | 74 | $17.7800 |
| Purchase/Acquisition | 11/11/2024 | 2,829 | $17.7800 |
| Purchase/Acquisition | 11/11/2024 | 32 | $17.7800 |
| Purchase/Acquisition | 2/14/2025 | 100 | $10.3700 |
| Purchase/Acquisition | 2/14/2025 | 100 | $10.3700 |
| Purchase/Acquisition | 2/14/2025 | 100 | $10.3700 |
| Purchase/Acquisition | 2/14/2025 | 1,200 | $10.3700 |
| Purchase/Acquisition | 2/14/2025 | 61 | $10.3700 |
| Purchase/Acquisition | 2/14/2025 | 99 | $10.3650 |
| Purchase/Acquisition | 2/14/2025 | 500 | $10.3700 |
| Purchase/Acquisition | 2/14/2025 | 100 | $10.3700 |
| Purchase/Acquisition | 2/14/2025 | 1 | $10.3700 |
| Purchase/Acquisition | 2/14/2025 | 1 | $10.3700 |
| Purchase/Acquisition | 2/14/2025 | 100 | $10.3700 |
| Purchase/Acquisition | 2/14/2025 | 118 | $10.3700 |
| Purchase/Acquisition | 2/14/2025 | 1,000 | $10.3680 |
| Purchase/Acquisition | 5/23/2025 | 2,521 | $6.2800 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.2800 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.2800 |
| Purchase/Acquisition | 5/23/2025 | 27 | $6.2800 |
| Purchase/Acquisition | 5/23/2025 | 679 | $6.2800 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.2800 |
| Purchase/Acquisition | 5/23/2025 | 10 | $6.2800 |
| Purchase/Acquisition | 5/23/2025 | 700 | $6.2800 |

**Rocket Pharmaceuticals, Inc. (RCKT)**                                                          **Dimitar Yankov**

### List of Purchases/Acquisitions and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase/Acquisition | 5/23/2025 | 100 | $6.2800 |
| Purchase/Acquisition | 5/23/2025 | 30 | $6.2800 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.2800 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.2800 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.2750 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.2800 |
| Purchase/Acquisition | 5/23/2025 | 12 | $6.2800 |
| Purchase/Acquisition | 5/23/2025 | 81 | $6.2800 |
| Purchase/Acquisition | 5/23/2025 | 2,000 | $6.2800 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.2800 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 14 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 11 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 400 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 50 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 11 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 63 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 55 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 287 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3100 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 11 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 8 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 1 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 59 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 6 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 126 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 3,524 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 56 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 200 | $6.3250 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 600 | $6.3250 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3100 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3100 |
| Purchase/Acquisition | 5/23/2025 | 64 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3150 |
| Purchase/Acquisition | 5/23/2025 | 163 | $6.3150 |
| Purchase/Acquisition | 5/23/2025 | 14 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 16 | $6.3200 |

**Rocket Pharmaceuticals, Inc. (RCKT)**                                                    **Dimitar Yankov**

### List of Purchases/Acquisitions and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase/Acquisition | 5/23/2025 | 48 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 63 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 4 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 23 | $6.3250 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 10 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 400 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 3 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 64 | $6.3100 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 11 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 145 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3250 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3350 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3400 |
| Purchase/Acquisition | 5/23/2025 | 90 | $6.3400 |
| Purchase/Acquisition | 5/23/2025 | 49 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 200 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 300 | $6.3100 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 17 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 39 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 6 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 22 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 63 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 53 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 173 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 52 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3250 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 104 | $6.3250 |
| Purchase/Acquisition | 5/23/2025 | 101 | $6.3250 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3100 |
| Purchase/Acquisition | 5/23/2025 | 6 | $6.3100 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3150 |
| Purchase/Acquisition | 5/23/2025 | 200 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 8 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3400 |

**Rocket Pharmaceuticals, Inc. (RCKT)**                                   **Dimitar Yankov**

### List of Purchases/Acquisitions and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 200 | $6.3250 |
| Purchase/Acquisition | 5/23/2025 | 30 | $6.3100 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3150 |
| Purchase/Acquisition | 5/23/2025 | 30 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3150 |
| Purchase/Acquisition | 5/23/2025 | 200 | $6.3150 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 23 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 1 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3250 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3250 |
| Purchase/Acquisition | 5/23/2025 | 200 | $6.3250 |
| Purchase/Acquisition | 5/23/2025 | 1 | $6.3100 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3100 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 9 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 800 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 55 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 14 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 8 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3250 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3250 |
| Purchase/Acquisition | 5/23/2025 | 2,400 | $6.3100 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 600 | $6.3150 |
| Purchase/Acquisition | 5/23/2025 | 37 | $6.3150 |
| Purchase/Acquisition | 5/23/2025 | 200 | $6.3150 |
| Purchase/Acquisition | 5/23/2025 | 39 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 2 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 1,735 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 44 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 2 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 4 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3250 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 4 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 10 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |

**Rocket Pharmaceuticals, Inc. (RCKT)**                                       **Dimitar Yankov**

### List of Purchases/Acquisitions and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase/Acquisition | 5/23/2025 | 1 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 200 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3400 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 200 | $6.3250 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3100 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3250 |
| Purchase/Acquisition | 5/23/2025 | 81 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3250 |
| Purchase/Acquisition | 5/23/2025 | 63 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 11 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3150 |
| Purchase/Acquisition | 5/23/2025 | 59 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 400 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 744 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 132 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3250 |
| Purchase/Acquisition | 5/23/2025 | 200 | $6.3250 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 200 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 800 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3100 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3150 |
| Purchase/Acquisition | 5/23/2025 | 11 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 36 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 39 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 78 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 92 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 300 | $6.3250 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 15 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 200 | $6.3150 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 28 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 247 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 11 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |

**Rocket Pharmaceuticals, Inc. (RCKT)**                                     **Dimitar Yankov**

### List of Purchases/Acquisitions and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3250 |
| Purchase/Acquisition | 5/23/2025 | 80 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 1 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 78 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 64 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 61 | $6.3150 |
| Purchase/Acquisition | 5/23/2025 | 44 | $6.3100 |
| Purchase/Acquisition | 5/23/2025 | 14 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 300 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 10 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 22 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3400 |
| Purchase/Acquisition | 5/23/2025 | 11 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 2 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 200 | $6.3250 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3100 |
| Purchase/Acquisition | 5/23/2025 | 1 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 50 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 33 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 200 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 4 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 14 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 270 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 900 | $6.3250 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3250 |
| Purchase/Acquisition | 5/23/2025 | 15 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 200 | $6.3250 |
| Purchase/Acquisition | 5/23/2025 | 7 | $6.3100 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 60 | $6.3100 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 60 | $6.3150 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 800 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 8 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 200 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 61 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 7 | $6.3200 |

**Rocket Pharmaceuticals, Inc. (RCKT)**                                    **Dimitar Yankov**

### List of Purchases/Acquisitions and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase/Acquisition | 5/23/2025 | 56 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 300 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 122 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 39 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 7 | $6.3400 |
| Purchase/Acquisition | 5/23/2025 | 200 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 200 | $6.3250 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3250 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3250 |
| Purchase/Acquisition | 5/23/2025 | 200 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 64 | $6.3100 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3100 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 12 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 53 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 14 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3400 |
| Purchase/Acquisition | 5/23/2025 | 800 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 10 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 60 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 200 | $6.3250 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 96 | $6.3250 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3100 |
| Purchase/Acquisition | 5/23/2025 | 14 | $6.3100 |
| Purchase/Acquisition | 5/23/2025 | 11 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 1 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 29 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 11 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 11 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 1 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3250 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3250 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3150 |
| Purchase/Acquisition | 5/23/2025 | 1 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 164 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3250 |

**Rocket Pharmaceuticals, Inc. (RCKT)**                                                         **Dimitar Yankov**

### List of Purchases/Acquisitions and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 400 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3400 |
| Purchase/Acquisition | 5/23/2025 | 2 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3250 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3250 |
| Purchase/Acquisition | 5/23/2025 | 400 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 28 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 800 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3250 |
| Purchase/Acquisition | 5/23/2025 | 16 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 500 | $6.3150 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 2 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 4 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3250 |
| Purchase/Acquisition | 5/23/2025 | 63 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3250 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 28 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 7 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 2 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 10 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 17 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3250 |
| Purchase/Acquisition | 5/23/2025 | 56 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 11 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 14 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3250 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 72 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 1 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 39 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |

**Rocket Pharmaceuticals, Inc. (RCKT)**                                                              **Dimitar Yankov**

### List of Purchases/Acquisitions and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 6 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 53 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 25 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 1,800 | $6.3150 |
| Purchase/Acquisition | 5/23/2025 | 263 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 11 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 200 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 14 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3250 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3250 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3250 |
| Purchase/Acquisition | 5/23/2025 | 25 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 200 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 11 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 26 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 27 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 1,100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 84 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 61 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 11 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 16 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 83 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3250 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |

**Rocket Pharmaceuticals, Inc. (RCKT)**                                              **Dimitar Yankov**

### List of Purchases/Acquisitions and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase/Acquisition | 5/23/2025 | 6,600 | $6.3150 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 11 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3250 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3250 |
| Purchase/Acquisition | 5/23/2025 | 104 | $6.3250 |
| Purchase/Acquisition | 5/23/2025 | 44 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 16 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 200 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 200 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3250 |
| Purchase/Acquisition | 5/23/2025 | 600 | $6.3250 |
| Purchase/Acquisition | 5/23/2025 | 4 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3250 |
| Purchase/Acquisition | 5/23/2025 | 16 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 8 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3200 |
| Purchase/Acquisition | 5/23/2025 | 100 | $6.3300 |
| Purchase/Acquisition | 5/23/2025 | 7 | $6.3300 |

# EXHIBIT D

## DECLARATION IN SUPPORT OF LEAD PLAINTIFF MOTION

I, the undersigned, pursuant to 28 U.S.C. § 1746, declare as follows:

1.      I, Dimitar Yankov, respectfully submit this Declaration in support of my motion for appointment as Lead Plaintiff and approval of my selection of Pomerantz LLP ("Pomerantz") as Lead Counsel in the instant class action on behalf of investors in the securities of Rocket Pharmaceuticals, Inc. ("Rocket" or the "Company") pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"). I am informed of and understand the requirements and duties imposed by the PSLRA. I have personal knowledge about the information in this Declaration.

2.      I, Dimitar Yankov, live in London, the United Kingdom. I have a Bachelor of Economics degree and am an entrepreneur in the educational technology industry. I have experience retaining and/or overseeing counsel. I am 53 years old and have been investing in the securities markets for over 10 years. As reflected in my Certification, I purchased Rocket securities during the Class Period and suffered substantial losses as a result of the violations of the federal securities laws alleged in this action.

3.      I have discussed this case with my counsel. Accordingly, I am aware of the current status of this litigation. I understand that in addition to myself, other investors in Rocket securities may file motions seeking appointment as Lead Plaintiff in this action. I understand that on August 11, 2025, Pomerantz will file a memorandum of law in support of my motion for appointment as Lead Plaintiff. I understand that this Declaration and other supporting submissions prepared by Pomerantz will be filed concurrently with the memorandum of law. I understand that the Lead Plaintiff role includes evaluating the strengths and weaknesses of the case and prospects for resolution of this matter. I understand that it is the Lead Plaintiff's responsibility to direct counsel with respect to this litigation, after receiving the benefit of counsel's advice. I attended a

{00663760;1 }                                      1

Docusign Envelope ID: 287004A9-4579-455A-BF4F-4356ABFAC2D2

conference call with an attorney from Pomerantz, approved Pomerantz as my designated Lead Counsel, and approved the filing of a motion on my behalf seeking appointment as Lead Plaintiff.

4. I attest to, among other things, my belief in the merits of this action; my desire to achieve the best possible result for the Class; my interest in prosecuting this case; my understanding of the fiduciary obligations of a Lead Plaintiff; and my preparedness to supervise counsel and undertake all actions necessary to ensure that the Class's claims will be zealously and efficiently litigated. I hereby affirm that the foregoing statements, as well as all other statements set forth in this Declaration, are true and correct statements of my views and intentions with respect to this litigation, and that I seek appointment as Lead Plaintiff in this action.

5. Given my significant financial interest in the claims against the defendants, I am strongly motivated to recover the significant losses that I and the Class suffered as a result of defendants' violations of the federal securities laws. My principal goal in seeking to serve as Lead Plaintiff in this case is to achieve the best possible recovery for the Class from all culpable parties. I am committed to ensuring the litigation is litigated as zealously and efficiently as possible, in accordance with my duties under the PSLRA.

6. If appointed Lead Plaintiff, I will satisfy my fiduciary obligations to the Class by, among other steps, conferring with my counsel regarding litigation strategy and other matters, attending court proceedings, depositions, any settlement mediations, and hearings as needed, and reviewing and authorizing the filing of important litigation documents. Through these and other measures, I will ensure that the Rocket securities litigation will be vigorously prosecuted consistent with the obligations of a Lead Plaintiff under the PSLRA and in the best interests of the Class, and will seek to obtain the greatest possible recovery for the Class.

{00663760;1 }                                                2

7.      After reviewing the allegations pleaded in the complaint, and consulting with my counsel, I independently determined to seek appointment as Lead Plaintiff, and subsequently approved the filing of a motion seeking my appointment as Lead Plaintiff.  I agree that my resources and ability to engage in decision-making will materially benefit and advance the interests of the Class in this case.

8.      I understand that the Lead Plaintiff's share of any recovery is the same as every other potential Class member.  As my Certification states, I will not accept any payment for serving as a representative party beyond my *pro rata* share, except any reasonable costs and expenses directly related to the Class representation as ordered or approved by the Court pursuant to the PSLRA.

9.      I understand that the PSLRA and courts throughout the country, including courts in this District, have endorsed the appointment of investors to serve as Lead Plaintiff when investors establish that they can oversee the litigation and their proposed Lead Counsel in an independent manner.  I intend to prosecute this litigation in such an independent and vigorous manner.

10.      I also understand and appreciate the Lead Plaintiff's obligation under the PSLRA to select Lead Counsel and to monitor the action to ensure it is prosecuted efficiently.  I have fulfilled this responsibility by selecting and retaining Lead Counsel with a proven history of handling this type of complex litigation.  In this case, I selected Pomerantz to serve as Lead Counsel.  Based on Pomerantz's experience in achieving substantial recoveries in securities class actions, I believe that the firm is well-qualified to represent the Class.

11.      Pomerantz has been directed to prosecute this action in an efficient, cost-effective manner while obtaining the best possible result for the Class.  I will continue to supervise counsel

{00663760;1 }                                          3

Docusign Envelope ID: 287904A9-4579-455A-BF4F-4356ABFAC2D2

and actively oversee the prosecution of the action for the benefit of the Class by, among other things, reviewing pleadings, instructing counsel, and/or attending hearings, as necessary.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct to the best of my knowledge.

Executed on this ___31___ day of July 2025.

DocuSigned by:

*Dimitar Yankov*

B79C6B8DDFB0429...

Dimitar Yankov

# EXHIBIT E



**History**  Pomerantz LLP is one of the most respected law firms in the United States dedicated to representing investors. The Firm was founded in 1936 by the late Abraham L. Pomerantz, widely regarded as a legal pioneer and "dean" of the plaintiffs' securities bar, who helped secure the right of investors to bring class and derivative actions.

**Leadership**  Today, led by Managing Partner Jeremy A. Lieberman, the Firm maintains the commitments to excellence and integrity passed down by Abe Pomerantz.

**Results**  Pomerantz achieved a historic $3 billion settlement for defrauded investors in 2018 as well as precedent-setting legal rulings, in *In re Petrobras Securities Litigation*. Pomerantz consistently shapes the law, winning landmark decisions that expand and protect investor rights and initiating historic corporate governance reforms.

**Global Expertise**  Beyond its three American offices, the Firm has offices in Paris, London, and Tel Aviv. Pomerantz also partners with an extensive network of prominent law firms across the globe to assist clients, wherever they are situated, in recovering monies lost due to corporate misconduct and securities fraud. Our team of attorneys is collectively fluent in English, Arabic, Cantonese, Mandarin, French, Hebrew, Italian, Portuguese, Romanian, Russian, Spanish, and Ukrainian.

**Practice**  Pomerantz protects, expands, and vindicates shareholder rights through our securities litigation services and portfolio monitoring service. The Firm represents some of the largest and most influential pension funds, asset managers and institutional investors around the globe, monitoring assets of over $9.4 trillion and growing. Pomerantz's practice includes corporate governance, antitrust, and strategic consumer litigation.

**Recognition**  Pomerantz has been recognized as a top tier firm by *The Legal 500*, *Benchmark Litigation*, and *Chambers USA*, among others. In 2020, Pomerantz was named the Plaintiff Firm of the Year by *Benchmark Litigation* and honored with *European Pensions'* inaugural Thought Leadership Award. Courts across the country have noted the quality of our legal work, and Pomerantz attorneys regularly receive praise from their peers. The 2024 *Benchmark Litigation* guide describes Pomerantz's "prodigious capacity for cases and its tenacity to keep pursuing them" as well as the Firm's work on litigation "with more meaningful angles." The Firm's attorneys have been recognized by major industry publications, including *The National Law Journal*, *The New York Law Journal*, *Law360*, and *Lawdragon*. Among the prestigious honors received by Pomerantz attorneys are the *Benchmark Litigation* Plaintiff Litigator of the Year Award (Jeremy Lieberman, 2019; Emma Gilmore 2024), *New York Law Journal* Innovation Award (Jennifer Pafiti, 2023), and *Law360* Titan of the Plaintiffs Bar (Murielle Steven Walsh, 2024).

Pomerantz is headquartered in New York City, with offices in
Chicago, Los Angeles, London, Paris, and Tel Aviv.

# Securities Litigation

## Significant Landmarks

### *In re Petrobras Sec. Litig.*, No. 14-cv-9662 (S.D.N.Y. 2018)

On January 3, 2018, in a significant victory for investors, Pomerantz, as sole Lead Counsel for the class, along with Lead Plaintiff Universities Superannuation Scheme Limited ("USS"), achieved a historic $2.95 billion settlement with Petróleo Brasileiro S.A. ("Petrobras") and its related entity, Petrobras International Finance Company, as well as certain of Petrobras' former executives and directors. On February 2, 2018, Pomerantz and USS reached a $50 million settlement with Petrobras' auditors, PricewaterhouseCoopers Auditores Independentes, bringing the total recovery for Petrobras investors to $3 billion.

This is not only the largest securities class action settlement in a decade but is the largest settlement ever in a securities class action involving a foreign issuer, the fifth-largest securities class action settlement ever achieved in the United States, the largest securities class action settlement achieved by a foreign Lead Plaintiff, and the largest securities class action settlement in history not involving a restatement of financial reports.

The class action, brought on behalf of all purchasers of common and preferred American Depositary Shares ("ADSs") on the New York Stock Exchange, as well as purchasers of certain Petrobras debt, principally alleged that Petrobras and its senior executives engaged in a multi-year, multi-billion-dollar money-laundering and bribery scheme, which was concealed from investors.

In addition to the multi-billion-dollar recovery for defrauded investors, Pomerantz secured precedent-setting decisions when the Second Circuit Court of Appeals squarely rejected defendants' invitation to adopt the heightened ascertainability requirement promulgated by the Third Circuit, which would have required plaintiffs to demonstrate that determining membership in a class is "administratively feasible." The Second Circuit's rejection of this standard is not only a victory for bondholders in securities class actions, but also for plaintiffs in consumer fraud class actions and other class actions where documentation regarding Class membership is not readily attainable. The Second Circuit also refused to adopt a requirement, urged by defendants, that all securities class action plaintiffs seeking class certification prove through direct evidence (i.e., an event study) that the prices of the relevant securities moved in a particular direction in response to new information.

### *Pirnik v. Fiat Chrysler Automobiles N.V. et al.*, No. 1:15-cv-07199-JMF (S.D.N.Y)

In August 2019, Pomerantz, as Lead Counsel, achieved final approval of a $110 million settlement for the Class in this high-profile securities class action. Plaintiffs alleged that Fiat Chrysler concealed from investors that it improperly outfitted its diesel vehicles with "defeat device" software designed to cheat NOx emissions regulations in the U.S. and Europe, and that regulators had accused Fiat Chrysler of violating the emissions regulations. The *Fiat Chrysler* recovery provides the class of investors with as much as 20% of recoverable damages—an excellent result when compared to historical statistics in class action settlements, where typical recoveries for cases of this size are between 1.6% and 3.3%.

In addition to creating precedent-setting case law in successfully defending the various motions to dismiss the *Fiat Chrysler* litigation, Pomerantz also significantly advanced investors' ability to obtain critically important discovery from regulators that are often at the center of securities actions. During the litigation, Pomerantz sought the deposition of a former employee of the National Highway Traffic Safety Administration ("NHTSA"). The United States Department of Transportation ("USDOT"), like most federal agencies, has enacted a set of regulations—known as "Touhy regulations"—governing when its employees may be called by private parties to testify in court. On their face, USDOT's regulations apply to both "current" and "former" employees. In response to Pomerantz's request to depose a former employee of NHSTA that interacted with Fiat Chrysler, NHTSA denied the request, citing the Touhy regulation. Despite the widespread application, and assumed appropriateness, of applying these regulations to former employees throughout the case law, Pomerantz filed an action against USDOT and NHTSA, arguing that the statute pursuant to which the Touhy regulations were enacted speaks only of "employees," which should be interpreted to apply only to current employees. The court granted summary judgment in favor of Pomerantz's clients, holding that "USDOT's Touhy regulations are unlawful to the extent that they apply to former employees." This victory will greatly shift the discovery tools available, so that investor plaintiffs in securities class actions against highly regulated entities (for example, companies subject to FDA regulations) will now be able to depose former employees of the regulators that interacted with the defendants during the class period to get critical testimony concerning the company's violations and misdeeds.

### *Karimi v. Deutsche Bank AG,* 1:22-cv-02854 (S.D.N.Y.)

On September 27, 2022, Pomerantz reached a $26.25 million settlement on behalf of defrauded investors in a securities class action against Deutsche Bank AG. The settlement represents over 49% of estimated recoverable damages, far in excess of the 1.8% median recovery in similar cases.

The complaint alleges that Deutsche Bank failed to properly adhere to its own Know Your Customer ("KYC") policies when dealing with customers it considered high-risk, such as accused sex offender Jeffrey Epstein, Russian oligarchs and politically exposed persons ("PEPs") reportedly engaged in criminal activities. The Bank repeatedly assured investors that it had "developed effective procedures for assessing clients and processes for accepting new clients in order to facilitate comprehensive compliance" with these policies. In reality, however, during the Class Period, defendants repeatedly exempted high net-worth individuals and PEPs from any meaningful due diligence, further enabling their crimes through the use of the Bank's facilities.

For example, in 2013, Deutsche Bank took on Jeffrey Epstein as a client, despite his previous convictions for and new allegations of child sex trafficking and abuse. Because Epstein was regarded as a "high-risk" customer, he should have been subject to the strict due diligence required by the Bank's KYC program; however, he was instead classified as an "Honorary PEP," and his activities within the Bank were allowed to continue, largely due to the business he could generate for the Bank. Prior to his onboarding as a client, "40 underage girls had come forward with testimony of Epstein sexually assaulting them," and despite these allegations, Deutsche Bank remained "comfortable with things continuing."

*Howard v. Arconic et al.*, **No. 2:17-cv-01057 (W.D.Pa.)**

In August 2023, Pomerantz, as Co-Lead Counsel, achieved final approval of a $74 million settlement on behalf of defrauded investors in a securities class action against the American industrial company Arconic.

On June 14, 2017, a devastating fire broke out in the Grenfell Tower block of flats in London, United Kingdom, resulting in the deaths of 72 people and injuries to more than 70 other tenants. In the wake of the tragedy, numerous investigations were conducted, ultimately revealing that, while an electrical fault within the building instigated the blaze, Arconic's Reynobond PE panels, which covered the outside of the building, likely acted as an accelerant, contributing to the rapid spread of the flames to the floors above.

In August 2017, Pomerantz filed a securities class action against Arconic alleging that its stock price was artificially inflated during the Class Period by the company's misstatements about the safety of its Reynobond PE insulating panels. Following a partial dismissal, Pomerantz filed a second amended complaint, which cited numerous instances in which Arconic sold Reynobond PE panels for use in other high-rise towers in the UK and across the globe.

Notably, despite the United States' near universal ban of combustible Reynobond for buildings taller than twelve meters (40 feet), plaintiffs found that Arconic had sold these panels for use in the construction of numerous structures measuring twelve meters or higher throughout the country, including a terminal at the Dallas/Fort Worth airport and Ohio's Cleveland Browns stadium. The complaint also pointed to at least eighteen other instances in which deadly fires had spread through exterior wall assemblies, most of which involved high-rise buildings. The new allegations included in the second amended complaint convinced Chief U.S. District Judge Mark R. Hornak to not only change his mind on many of the claims he had previously dismissed, but also to make new law in plaintiffs favor on several significant issues, including the element of scienter, i.e., intent to deceive investors.

The $74 million settlement represents approximately 22% of recoverable damages for defrauded Arconic shareholders, an amount far exceeding the 1.8% median recovery for all securities class action settlements in 2022.

*Kaplan v. S.A.C. Capital Advisors, L.P*, **No. 12-cv-9350 (S.D.N.Y.)**

In May 2017, Pomerantz, as Co-Lead Counsel, achieved final approval of a $135 million recovery for the Class in this securities class action that stemmed from what has been called the most profitable insider trading scheme in U.S. history. After years of vigorous litigation, billionaire Steven A. Cohen's former hedge fund, S.A.C. Capital Advisors LP, agreed to settle the lawsuit by investors in the drug maker Elan Corp, who said they lost money because of insider trading by one of his portfolio managers.

*In re BP p.l.c. Securities Litigation*, **MDL No. 2185 (S.D. Tex.)**

Beginning in 2012, Pomerantz pursued ground-breaking individual lawsuits for institutional investors to recover losses in BP p.l.c.'s London-traded common stock and NYSE-traded American Depository Shares (ADSs) arising from its 2010 Gulf of Mexico oil spill. Over nine years, Pomerantz briefed and argued every significant dispute on behalf of 125+ institutional plaintiffs, successfully opposed three motions to

dismiss, won other contested motions, oversaw e-discovery of 1.75 million party and non-party documents, led the Individual Action Plaintiffs Steering Committee, served as sole Liaison with BP and the Court, and worked tirelessly with our clients' outside investment management firms to develop crucial case evidence.

A threshold challenge was how to litigate in U.S. court given the U.S. Supreme Court's decision in *Morrison v. National Australia Bank*, 130 S. Ct. 2869 (2010), which barred recovery for losses in foreign-traded securities under the U.S. federal securities laws. In 2013 and 2014, Pomerantz won significant victories in defeating BP's *forum non conveniens* arguments, which sought to force dismissal of the English common law claims from U.S. courts for refiling in English courts, first as regards U.S. institutions and, later, foreign institutions. Pomerantz also defeated BP's attempt to extend the U.S. federal Securities Litigation Uniform Standards Act of 1998 to reach, and dismiss, these foreign law claims in deference to non-existent remedies under the U.S. federal securities laws. These rulings paved the way for 125+ global institutional investors to pursue their claims and marked the first time, post-*Morrison*, that U.S. and foreign investors, pursuing foreign claims seeking recovery for losses in a foreign company's foreign-traded securities, did so in a U.S. court. In 2017, Pomerantz earned an important victory that expanded investor rights under English law, permitting certain BP investors to pursue a "holder claim" theory seeking to recover losses in securities held, rather than purchased anew, in reliance on the alleged fraud—a theory barred under the U.S. federal securities laws since *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975). This win was significant, given the dearth of precedent from anywhere recognizing the viability of a "holder claim" under any non-U.S. law and holding that a given plaintiff alleged facts sufficiently evidencing reliance and documenting the resulting retention of an identifiable amount of shares on a date certain.

In Q1 2021, Pomerantz secured confidential, favorable monetary settlements from BP for our nearly three dozen clients, including public and private pension funds, money management firms, partnerships, and investment trusts from the U.S., Canada, the U.K., France, the Netherlands, and Australia.

### *In re Comverse Technology, Inc. Sec. Litig.,* No. 06-CV-1825 (E.D.N.Y.)

In June 2010, Judge Nicholas G. Garaufis of the U.S. District Court for the Eastern District of New York granted final approval of a $225 million settlement proposed by Pomerantz and Lead Plaintiff the Menora Group, with Comverse Technology and certain of Comverse's former officers and directors, after four years of highly contested litigation. The *Comverse* settlement is one of the largest securities class action settlements reached since the passage of the Private Securities Litigation Reform Act ("PSLRA").[1] It is the second-largest recovery in a securities litigation involving the backdating of options, as well as one of the largest recoveries—$60 million—from an individual officer-defendant, Comverse's founder and former CEO, Kobi Alexander.

## Other Significant Settlements

Even before the enactment of the PSLRA, Pomerantz represented state agencies in securities class actions, including the Treasurer of the Commonwealth of Pennsylvania (recovered $100 million) against a major investment bank. *In re Salomon Brothers Treasury Litig.*, No. 91-cv-5471 (S.D.N.Y.).

---

[1] Institutional Shareholder Services, *SCAS Top 100 Settlements Quarterly Report* (Sept. 30, 2010).

Pomerantz recovered $50 million for the Treasurer of the State of New Jersey and several New Jersey pension funds in an individual action. This was a substantially higher recovery than what our clients would have obtained had they remained in a related federal class action. *Treasurer of State of New Jersey v. AOL Time Warner, Inc.* (N.J. Super. Ct. Law Div., Mercer Cty.).

Pomerantz has litigated numerous cases for the Louisiana School Employees' Retirement System. For example, as Lead Counsel, Pomerantz recovered $74.75 million in a securities fraud class action against Citigroup, its CEO Sanford Weill, and its now infamous telecommunications analyst Jack Grubman. *In re Salomon Analyst AT&T Litig.*, No. 02-cv-6801 (S.D.N.Y.) Also, the Firm played a major role in a complex antitrust and securities class action which settled for over $1 billion. *In re NASDAQ Market-Makers Antitrust Litig.*, MDL No. 1023 (S.D.N.Y.). Pomerantz was a member of the Executive Committee in *In re Transkaryotic Therapies, Inc. Securities Litigation*, C.A. No. 03-10165 (D. Mass.), helping to win a $50 million settlement for the class.

In 2008, together with Co-Counsel, Pomerantz identified a substantial opportunity for recovery of losses in Countrywide mortgage-backed securities ("MBS") for three large New Mexico funds (New Mexico State Investment Council, New Mexico Public Employees' Retirement Association, and New Mexico Educational Retirement Board), which had been overlooked by all of the firms then in their securities litigation pool. We then filed the first non-class lawsuit by a public institution with respect to Countrywide MBS. *See N.M. State Inv. Council v. Countrywide Fin. Corp.,* No. D-0101-CV-2008-02289 (N.M. 1st Dist. Ct.). In Fall 2010, we negotiated for our clients an extremely favorable but confidential settlement.

Over its long history, Pomerantz has achieved significant settlements in numerous cases, a sampling of which appears below:

- *In re Petrobras Sec. Litig.*, No. 14-cv-9662 (S.D.N.Y. 2018)
  $3 billion settlement of securities class action in which Pomerantz was Lead Counsel.
- *Pirnik v. Fiat Chrysler Automobiles N.V. et al.*, No. 1:15-cv-07199-JMF (S.D.N.Y)
  $110 million settlement of securities class action in which Pomerantz was Lead Counsel
- *In re Yahoo!, Inc. Sec. Litig.,* No. 17-cv-00373 (N.D. Cal. 2018)
  $80 million settlement of securities class action in which Pomerantz was Co-Lead Counsel
- *In re Libor Based Financial Instruments Antitrust Litig.,* 1:11-md-2262
  $31 million partial settlement with three defendants in this multi-district litigation in which Pomerantz represents the Berkshire Bank and the Government Development Bank for Puerto Rico
- *Kaplan v. S.A.C. Capital Advisors, L.P.*, No. 12-cv-9350 (S.D.N.Y. 2017)
  $135 million settlement of class action in which Pomerantz was Co-Lead Counsel.
- *In re Groupon, Inc. Sec. Litig.*, No. 12-cv-02450 (N.D. Ill. 2015)
  $45 million settlement of class action in which Pomerantz was sole Lead Counsel.
- *In re Elan Corp. Sec. Litig.*, No. 05-cv-2860 (S.D.N.Y. 2005)
  $75 million settlement in class action arising out of alleged accounting manipulations.
- *In re Safety-Kleen Corp. Stockholders Litig.*, No. 00-cv-736-17 (D.S.C. 2004)
  $54.5 million in total settlements in class action alleging accounting manipulations by corporate officials and auditors; last settlement reached on eve of trial.
- *Duckworth v. Country Life Ins. Co.*, No. 1998-CH-01046 (Ill. Cir. Ct., Cook Cty. 2000)
  $45 million recovery.

- *Snyder v. Nationwide Ins. Co.*, No. 97/0633 (N.Y. Sup. Ct. Onondaga Cty. 1998)
  Settlement valued at $100 million in derivative case arising from injuries to consumers purchasing life insurance policies.
- *In re National Health Lab., Inc. Sec. Litig.*, No. CV 92-1949 (S.D. Cal. 1995)
  $64 million recovery.
- *In re First Executive Corp. Sec. Litig.*, No. 89-cv-07135 (C.D. Cal. 1994)
  $102 million recovery for the class, exposing a massive securities fraud arising out of the Michael Milken debacle.
- *In re Boardwalk Marketplace Sec. Litig.*, MDL No. 712 (D. Conn. 1994)
  Over $66 million benefit in securities fraud action.
- *In re Telerate, Inc. S'holders Litig.*, C.A. No. 1115 (Del. Ch. 1989)
  $95 million benefit in case alleging violation of fiduciary duty under state law.

Pomerantz has also obtained stellar results for private institutions and Taft-Hartley funds. Below are a few examples:

- *In re Charter Commc'ns, Inc. Sec. Litig.*, No. 02-cv-1186 (E.D. Mo. 2005) (sole Lead Counsel for Lead Plaintiff StoneRidge Investment Partners LLC); $146.25 million class settlement, where Charter also agreed to enact substantive improvements in corporate governance.
- *In re Am. Italian Pasta Sec. Litig.*, No. 05-cv-865 (W.D. Mo. 2008) (sole Lead Counsel for Lead Plaintiff Ironworkers Locals 40, 361 and 417; $28.5 million aggregate settlements).
- *Richardson v. Gray*, No. 116880/1995 (N.Y. Sup. Ct. N.Y. Cty. 1999); and *In re Summit Metals*, No. 98-2870 (Bankr. D. Del. 2004) (two derivative actions where the Firm represented C.C. Partners Ltd. and obtained judgment of contempt against controlling shareholder for having made "extraordinary" payments to himself in violation of a preliminary injunction; persuaded the court to jail him for two years upon his refusal to pay; and, in a related action, won a $43 million judgment after trial and obtained turnover of stock of two companies).

## Shaping the Law

Not only has Pomerantz established a long track record of obtaining substantial monetary recoveries for our clients; whenever appropriate, we also pursue corporate governance reforms on their behalf. In *In re Chesapeake Shareholders Derivative Litig*ation, No. CJ-2009-3983 (Okla. Dist. Ct., Okla. Cty. 2011), for example, the Firm served as Co-Lead Counsel, representing a public pension client in a derivative case arising from an excessive compensation package granted to Chesapeake's CEO and founder. This was a derivative action, not a class action. Yet it is illustrative of the results that can be obtained by an institutional investor in the corporate governance arena. There we obtained a settlement which called for the repayment of $12.1 million and other consideration by the CEO. The Wall Street Journal (Nov. 3, 2011) characterized the settlement as "a rare concession for the 52-year-old executive, who has run the company largely by his own rules since he co-founded it in 1989." The settlement also included comprehensive corporate governance reforms.

The Firm has won many landmark decisions that have enhanced shareholders' rights and improved corporate governance. These include decisions that established that:

- defendants seeking to rebut the *Basic* presumption of reliance on an efficient market must do so by a preponderance of the evidence. *Waggoner v. Barclays PLC*, 875 F.3d 79 (2d Cir. 2017) (*Strougo v. Barclays PLC,* in the court below);
- plaintiffs have no burden to show price impact at the class certification stage. *Waggoner v. Barclays PLC*, 875 F.3d 79 (2d Cir. 2017) (*Strougo v. Barclays PLC,* in the court below);
- the ascertainability doctrine requires only that a class be defined using objective criteria that establish a membership with definite boundaries. *Universities Superannuation Scheme Ltd. v. Petróleo Brasileiro S.A. Petrobras*, 862 F.3d 250 (2d Cir. 2017);
- companies cannot adopt bylaws to regulate the rights of former stockholders. *Strougo v. Hollander*, C.A. No. 9770-CB (Del. Ch. 2015);
- a temporary rise in share price above its purchase price in the aftermath of a corrective disclosure does not eviscerate an investor's claim for damages. *Acticon AG v. China Ne. Petroleum Holdings Ltd.,* 692 F.3d 34 (2d Cir. 2012);
- an MBS holder may bring claims if the MBS price declines even if all payments of principal and interest have been made. Transcript of Proceedings, *N.M. State Inv. Council v. Countrywide Fin. Corp.,* No. D-0101-CV-2008-02289 (N.M. 1st Dist. Ct. Mar. 25, 2009);
- when a court selects a Lead Plaintiff under the Private Securities Litigation Reform Act ("PSLRA"), the standard for calculating the "largest financial interest" must take into account sales as well as purchases. *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-cv-1825, 2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. Mar. 2, 2007);
- a managing underwriter can owe fiduciary duties of loyalty and care to an issuer in connection with a public offering of the issuer stock, even in the absence of any contractual agreement. Professor John C. Coffee, a renowned Columbia University securities law professor, commenting on the ruling, stated: "It's going to change the practice of all underwriting." *EBC I, Inc. v. Goldman Sachs & Co.*, 5 N.Y. 3d 11 (2005);
- purchasers of options have standing to sue under federal securities laws. *In re Green Tree Fin. Corp. Options Litig.*, No. 97-2679, 2002 U.S. Dist. LEXIS 13986 (D. Minn. July 29, 2002);
- shareholders have a right to a jury trial in derivative actions. *Ross v. Bernhard*, 396 U.S. 531 (1970);
- a company may have the obligation to disclose to shareholders its Board's consideration of important corporate transactions, such as the possibility of a spin-off, even before any final decision has been made. *Kronfeld v. Trans World Airlines, Inc.*, 832 F.2d 726 (2d Cir. 1987);
- specific standards for assessing whether mutual fund advisors breach fiduciary duties by charging excessive fees. *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 740 F.2d 190 (2d Cir. 1984);
- investment advisors to mutual funds are fiduciaries who cannot sell their trustee positions for a profit. *Rosenfeld v. Black*, 445 F.2d 1337 (2d Cir. 1971); and
- management directors of mutual funds have a duty to make full disclosure to outside directors "in every area where there was even a possible conflict of interest." *Moses v. Burgin*, 445 F.2d 369 (1st Cir. 1971).

## Comments from the Courts

Throughout its history, courts time and again have acknowledged the Firm's ability to vigorously pursue and successfully litigate actions on behalf of investors.

U.S. District Judge Noel L. Hillman, in approving the *In re Toronto-Dominion Bank Securities Litigation* settlement in October 2019, stated:

> I commend counsel on both sides for their hard work, their very comprehensive and thoughtful submissions during the motion practice aspect of this case . . . It's clear to me that this was comprehensive, extensive, thoughtful, meaningful litigation leading up to the settlement . . . This settlement appears to have been obtained through the hard work of the Pomerantz firm . . . It was through their efforts and not piggybacking on any other work that resulted in this settlement.

In approving the settlement in *Strougo v. Barclays PLC* in June 2019, Judge Victor Marrero of the Southern District of New York wrote:

> Let me thank counsel on both sides for the extraordinary work both sides did in bringing this matter to a reasonable conclusion. As the parties have indicated, the matter was intensely litigated, but it was done in the most extraordinary fashion with cooperation, collaboration, and high levels of professionalism on both sides, so I thank you.

In approving the $3 billion settlement in *In re Petrobras Securities Litigation* in June 2018, Judge Jed S. Rakoff of the Southern District of New York wrote:

> [T]he Court finds that Class Counsel's performance was in many respects exceptional, with the result that, as noted, the class is poised to enjoy a substantially larger per share recovery [65%] than the recovery enjoyed by numerous large and sophisticated plaintiffs who separately settled their claims.

At the hearing for preliminary approval of the settlement in *In re Petrobras Securities Litigation* in February 2018, Judge Rakoff stated:

> [T]he lawyers in this case [are] some of the best lawyers in the United States, if not in the world.

Two years earlier, in certifying two Classes in *In re Petrobras Securities Litigation* in February 2016, Judge Rakoff wrote:

> [O]n the basis not only of USS's counsel's prior experience but also the Court's observation of its advocacy over the many months since it was appointed Lead Counsel, the Court concludes that Pomerantz, the proposed class counsel, is "qualified, experienced and able to conduct the litigation." . . . [T]he Pomerantz firm has both the skill and resources to represent the Classes adequately.

In approving the settlement in *Thorpe v. Walter Investment Management Corp.*, No. 14-cv-20880, 2016 U.S. Dist. LEXIS 144133 (S.D. Fla. Oct. 14, 2016) Judge Ursula Ungaro wrote:

> Class Counsel has developed a reputation for zealous advocacy in securities class actions . . . The settlement amount of $24 million is an outstanding result.

At the May 2015 hearing wherein the court approved the settlement in *Courtney v. Avid Technology, Inc.*, No. 13-cv-10686 (D. Mass. May 12, 2015), following oral argument by Jeremy A. Lieberman, Judge William G. Young stated:

> This has been very well litigated. It is always a privilege. I don't just say that as a matter of form. And I thank you for the vigorous litigation that I've been permitted to be a part of. [Tr. at 8-9.]

At the January 2012 hearing wherein the court approved the settlement in *In re Chesapeake Energy Corp. Shareholder Derivative Litigation*, No. CJ-2009-3983 (Okla. Dist. Ct., Okla. Cty. Jan. 30, 2012), following oral argument by Marc I. Gross, Judge Daniel L. Owens stated:

> Counsel, it's a pleasure, and I mean this and rarely say it. I think I've said it two times in 25 years. It is an extreme pleasure to deal with counsel of such caliber. [Tr. at 48.])

In approving the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 06-CV-1825 (E.D.N.Y.) in June 2010, Judge Nicholas G. Garaufis stated:

> As outlined above, the recovery in this case is one of the highest ever achieved in this type of securities action . . . The court also notes that, throughout this litigation, it has been impressed by Lead Counsel's acumen and diligence. The briefing has been thorough, clear, and convincing, and . . . Lead Counsel has not taken short cuts or relaxed its efforts at any stage of the litigation.

In approving a $146.25 million settlement in *In re Charter Communications Securities Litigation*, No. 02-CV-1186, 2005 U.S. Dist. LEXIS 14772 (E.D. Mo. June 30, 2005), in which Pomerantz served as sole Lead Counsel, Judge Charles A. Shaw praised the Firm's efforts, citing "the vigor with which Lead Counsel . . . investigated claims, briefed the motions to dismiss, and negotiated the settlement." He further stated:

> This Court believes Lead Plaintiff achieved an excellent result in a complex action, where the risk of obtaining a significantly smaller recovery, if any, was substantial.

In approving a $24 million settlement in *In re Force Protection, Inc.,* No. 08 CV 845 (D.S.C. 2011), Judge C. Weston Houk described the Firm as "attorneys of great ability and great reputation" and commended the Firm for having "done an excellent job."

In certifying a class in a securities fraud action against analysts in *DeMarco v. Robertson Stephens, Inc.*, 228 F.R.D. 468 (S.D.N.Y. 2005), Judge Gerard D. Lynch stated that Pomerantz had "ably and zealously represented the interests of the class."

Numerous courts have made similar comments:

- Appointing Pomerantz Lead Counsel in *American Italian Pasta Co. Securities Litigation*, No 05-CV-0725 (W.D. Mo.), a class action that involved a massive fraud and restatements spanning several years, the District Court observed that the Firm "has significant experience (and has been extremely effective) litigating securities class actions, employs highly qualified attorneys, and possesses ample resources to effectively manage the class litigation and protect the class's interests."

- In approving the settlement in *In re Wiring Devices Antitrust Litigation*, MDL No. 331 (E.D.N.Y. Sept. 9, 1980), Chief Judge Jack B. Weinstein stated that "Counsel for the plaintiffs I think did an excellent job . . . They are outstanding and skillful. The litigation was and is extremely complex. They assumed a great deal of responsibility. They recovered a very large amount given the possibility of no recovery here which was in my opinion substantial."
- In *Snyder v. Nationwide Insurance Co.*, No. 97/0633, (N.Y. Supreme Court, Onondaga Cty.), a case where Pomerantz served as Co-Lead Counsel, Judge Tormey stated, "It was a pleasure to work with you. This is a good result. You've got some great attorneys working on it."
- In *Steinberg v. Nationwide Mutual Insurance Co.* (E.D.N.Y. 2004), Judge Spatt, granting class certification and appointing the Firm as class counsel, observed: "The Pomerantz firm has a strong reputation as class counsel and has demonstrated its competence to serve as class counsel in this motion for class certification." (224 F.R.D. 67, 766.)
- In *Mercury Savings & Loan*, No. 90-cv-00087 LHM (C.D. Cal. 1993), Judge McLaughlin commended the Firm for the "absolutely extraordinary job in this litigation."
- In *Boardwalk Marketplace Securities Litigation*, MDL No. 712 (D. Conn.), Judge Eginton described the Firm's services as "exemplary," praised it for its "usual fine job of lawyering . . . [in] an extremely complex matter," and concluded that the case was "very well-handled and managed." (Tr. at 6, 5/20/92; Tr. at 10, 10/10/92.)
- In *Nodar v. Weksel*, No. 84 Civ. 3870 (S.D.N.Y.), Judge Broderick acknowledged "that the services rendered [by Pomerantz] were excellent services from the point of view of the class represented, [and] the result was an excellent result." (Tr. at 21-22, 12/27/90.)
- In *Klein v. A.G. Becker Paribas, Inc.*, No. 83 Civ. 6456 (S.D.N.Y.), Judge Goettel complimented the Firm for providing "excellent . . . absolutely top-drawer representation for the class, particularly in light of the vigorous defense offered by the defense firm." (Tr. at 22, 3/6/87.)
- In *Digital Securities Litigation*, No. 83-3255 (D. Mass.), Judge Young lauded the Firm for its "[v]ery fine lawyering." (Tr. at 13, 9/18/86.)
- In *Shelter Realty Corp. v. Allied Maintenance Corp.*, 75 F.R.D. 34, 40 (S.D.N.Y. 1977), Judge Frankel, referring to Pomerantz, said: "Their experience in handling class actions of this nature is known to the court and certainly puts to rest any doubt that the absent class members will receive the quality of representation to which they are entitled."
- In *Rauch v. Bilzerian*, No. 88 Civ. 15624 (N.J. Sup. Ct.), the court, after trial, referred to Pomerantz partners as "exceptionally competent counsel," and as having provided "top drawer, topflight [representation], certainly as good as I've seen in my stay on this court."

# Corporate Governance Litigation

Pomerantz is committed to ensuring that companies adhere to responsible business practices and practice good corporate citizenship. We strongly support policies and procedures designed to give shareholders the ability to oversee the activities of a corporation. We vigorously pursue corporate governance reform, particularly in the area of excess compensation, where it can address the growing disparity between the salaries of executives and the workers of major corporations. We have successfully utilized litigation to bring about corporate governance reform in numerous cases, and always consider whether such reforms are appropriate before any case is settled.

Pomerantz's Corporate Governance Practice Group, led by Partner Gustavo F. Bruckner, enforces shareholder rights and prosecutes actions challenging corporate transactions that arise from an unfair process or result in an unfair price for shareholders.

In September 2017, New Jersey Superior Court Judge Julio Mendez, of Cape May County Chancery Division, approved Pomerantz's settlement in a litigation against Ocean Shore Holding Co. The settlement provided non-pecuniary benefits for a non-opt out class. In so doing, Judge Mendez became the first New Jersey state court judge to formally adopt the Third Circuit's nine-part *Girsh* factors, *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975). There has never before been a published New Jersey state court opinion setting out the factors a court must consider in evaluating whether a class action settlement should be determined to be fair and adequate. After conducting an analysis of each of the nine *Girsh* factors and holding that "class actions settlements involving non-monetary benefits to the class are subject to more exacting scrutiny," Judge Mendez held that the proposed settlement provided a material benefit to the shareholders.

In February 2018, the Maryland Circuit Court, Montgomery County, approved a $17.5 million settlement that plaintiffs achieved as additional consideration on behalf of a class of shareholders of American Capital, Ltd. *In re Am. Capital, Ltd. S'holder Litig.*, C.A. No. 422598-V (2018). The settlement resolved Plaintiffs' claims regarding a forced sale of American Capital.

Pomerantz filed an action challenging the sale of American Capital, a Delaware corporation with its headquarters in Maryland. Among other things, American Capital's board of directors (the "Board") agreed to sell the company at a price below what two other bidders were willing to offer. Worse, the merger price was even below the amount that shareholders would have received in the company's planned phased liquidation, which the company was considering under pressure from Elliott Management, an activist hedge fund and holder of approximate 15% of American Capital stock. Elliott was not originally named as a defendant, but after initial discovery showed the extent of its involvement in the Board's breaches of fiduciary duty, Elliott was added as a defendant in an amended complaint under the theory that Elliott exercised actual control over the Board's decision-making. Elliott moved to dismiss on jurisdictional grounds and additionally challenged its alleged status as a controller of American Capital. In June 2017, minutes before the hearing on defendants' motion to dismiss, a partial settlement was entered into with the members of the Board for $11.5 million. The motion to dismiss hearing proceeded despite the partial settlement, but only as to Elliott. In July 2017, the court denied the motion to dismiss, finding that Elliott, "by virtue solely of its own conduct, . . . has easily satisfied the transacting business prong of the Maryland long arm statute." The court also found that the "amended complaint in this case sufficiently pleads that Elliott was a controller with respect to" the sale, thus implicating a higher standard of review. Elliott subsequently settled the remaining claims for an additional $6 million. Pomerantz served as Co-Lead Counsel.

In May 2017, the Circuit Court of the State of Oregon approved the settlement achieved by Pomerantz and co-counsel of a derivative action brought by two shareholders of Lithia Motors, Inc. The lawsuit alleged breach of fiduciary duties by the board of directors in approving, without any meaningful review, the Transition Agreement between Lithia Motors and Sidney DeBoer, its founder, controlling shareholder, CEO, and Chairman, who was stepping down as CEO. DeBoer and his son, the current CEO, Bryan DeBoer, negotiated virtually all the material terms of the Agreement, by which the company agreed to pay the senior DeBoer $1,060,000 and a $42,000 car allowance annually for the rest of his life,

plus other benefits, in addition to the $200,000 per year that he would receive for continuing to serve as Chairman.

The *Lithia* settlement extracted corporate governance therapeutics that provide substantial benefits to Lithia and its shareholders and redress the wrongdoing alleged by plaintiffs. The board will now be required to have at least five independent directors—as defined under the New York Stock Exchange rules—by 2020; a number of other new protocols will be in place to prevent self-dealing by board members. Further, the settlement calls for the Transition Agreement to be reviewed by an independent auditor who will determine whether the annual payments of $1,060,000 for life to Sidney DeBoer are reasonable. Lithia has agreed to accept whatever decision the auditor makes.

In January 2017, the Group received approval of the Delaware Chancery Court for a $5.6 million settlement it achieved on behalf of a class of shareholders of Physicians Formula Holdings, Inc. over an ignored merger offer in 2012. *In re Physicians Formula Holdings, Inc.*, C.A. No. 7794-VCL (Del. Ch.).

The Group obtained a landmark ruling in *Strougo v. Hollander*, C.A. No. 9770-CB (Del. Ch.), that fee-shifting bylaws adopted after a challenged transaction do not apply to shareholders affected by the transaction. They were also able to obtain a *25% price increase* for members of the class cashed out in the going private transaction.

In *Miller v. Bolduc*, No. SUCV 2015-00807 (Mass. Super. Ct.), the Group caused Implant Sciences to hold its first shareholder annual meeting in five years and put an important compensation grant up for a shareholder vote.

In *Smollar v. Potarazu*, C.A. No. 10287-VCN (Del. Ch.), the Group pursued a derivative action to bring about the appointment of two independent members to the board of directors, retention of an independent auditor, dissemination of financials to shareholders and the holding of first ever in-person annual meeting, among other corporate therapeutics.

In *Hallandale Beach Police Officers & Firefighters' Personnel Retirement Fund vs. Lululemon athletica, Inc.,* C.A. No. 8522-VCP (Del. Ch.), in an issue of first impression in Delaware, the Chancery Court ordered the production of the chairman's 10b5-1 stock trading plan. The court found that a stock trading plan established by the company's chairman, pursuant to which a broker, rather than the chairman himself, would liquidate a portion of the chairman's stock in the company, did not preclude potential liability for insider trading.

In *Strougo v. North State Bancorp*, No. 15 CVS 14696 (N.C. Super. Ct.), the Group caused the Merger Agreement to be amended to provide a "majority of the minority" provision for the holders of North State Bancorp's common stock in connection with the shareholder vote on the merger. As a result of the Action, common shareholders could stop the merger if they did not wish it to go forward.

Pomerantz's commitment to advancing sound corporate governance principles is further demonstrated by the more than 26 years that we have co-sponsored the Abraham L. Pomerantz Lecture Series with Brooklyn Law School. These lectures focus on critical and emerging issues concerning shareholder rights and corporate governance and bring together top academics and litigators.

Our bi-monthly newsletter, *The Pomerantz Monitor*, provides institutional investors updates and insights on current issues in corporate governance.

# Strategic Consumer Litigation

Pomerantz's Strategic Consumer Litigation practice group, led by Partner Jordan Lurie, represents consumers in actions that seek to recover monetary and injunctive relief on behalf of class members while also advocating for important consumer rights. The attorneys in this group have successfully prosecuted claims involving California's Unfair Competition Law, California's Consumers Legal Remedies Act, the Song Beverly Consumer Warranty Act and the Song Beverly Credit Card Act. They have resolved data breach privacy cases and cases involving unlawful recording, illegal background checks, unfair business practices, misleading advertising, and other consumer finance related actions. All of these actions also have resulted in significant changes to defendants' business practices.

Pomerantz currently represents consumers in a nationwide class action against Facebook for mistargeting ads. Plaintiff alleges that Facebook programmatically displays a material percentage of ads to users outside the defined target market and displays ads to "serial Likers" outside the defined target audience in order to boost Facebook's revenue. *IntegrityMessageBoards.com v. Facebook, Inc.* (N.D. Cal.) Case No. 4:18-cv-05286 PJH.

Pomerantz has pioneered litigation to establish claims for public injunctive relief under California's unfair business practices statute. For example, Pomerantz has filed cases seeking to prevent major auto manufacturers from unauthorized access to, and use of, drivers' vehicle data without compensation, and seeking to require the auto companies to share diagnostic data extracted from drivers' vehicles. The Strategic Consumer Litigation practice group is also prosecuting class cases against auto manufacturers for failing to properly identify high-priced parts that must be covered in California under extended emissions warranties.

Other consumer matters handled by Pomerantz's Strategic Consumer Litigation practice group include actions involving cryptocurrency, medical billing, price fixing, and false advertising of various consumer products and services.

# Antitrust Litigation

Pomerantz has earned a reputation for prosecuting complex antitrust and consumer class actions with vigor, innovation, and success. Pomerantz's Antitrust and Consumer Group has recovered billions of dollars for the Firm's business and individual clients and the classes that they represent. Time and again, Pomerantz has protected our free-market system from anticompetitive conduct such as price fixing, monopolization, exclusive territorial division, pernicious pharmaceutical conduct, and false advertising. Pomerantz's advocacy has spanned across diverse product markets, exhibiting the Antitrust and Consumer Group's versatility to prosecute class actions on any terrain.

Pomerantz has served and is currently serving in leadership or Co-Leadership roles in several high-profile multi-district litigation class actions. In December 2018, the Firm achieved a $31 billion partial settlement with three defendants on behalf of a class of U.S. lending institutions that originated,

purchased or held loans paying interest rates tied to the U.S. Dollar London Interbank Offered Rate (USD LIBOR). It is alleged that the class suffered damages as a result of collusive manipulation by the LIBOR contributor panel banks that artificially suppressed the USD LIBOR rate during the class period, causing the class members to receive lower interest payments than they would have otherwise received. *In re Libor Based Financial Instruments Antitrust Litig.,* 1:11-md-2262.

Pomerantz represented baseball and hockey fans in a game-changing antitrust class action against Major League Baseball and the National Hockey League, challenging the exclusive territorial division of live television broadcasts, internet streaming, and the resulting geographic blackouts. *See Laumann v. NHL* and *Garber v. MLB* (S.D.N.Y. 2012).

Pomerantz has spearheaded the effort to challenge harmful anticompetitive conduct by pharmaceutical companies—including Pay-for-Delay Agreements—that artificially inflates the price of prescription drugs by keeping generic versions off the market.

Even prior to the 2013 precedential U.S. Supreme Court decision in *Actavis*, Pomerantz litigated and successfully settled the following generic-drug-delay cases:

- *In re Flonase Antitrust Litig.* (E.D. Pa. 2008) ($35 million);
- *In re Toprol XL Antitrust Litig.* (D. Del. 2006) ($11 million); and
- *In re Wellbutrin SR Antitrust Litig.* (E.D. Pa. 2004) ($21.5 million).

Other exemplary victories include Pomerantz's prominent role in *In re NASDAQ Market-Makers Antitrust Litigation* (S.D.N.Y.), which resulted in a settlement in excess of $1 billion for class members, one of the largest antitrust settlements in history. Pomerantz also played prominent roles in *In re Sorbates Direct Purchaser Antitrust Litigation* (N.D. Cal.), which resulted in over an $82 million recovery, and in *In re Methionine Antitrust Litigation* (N.D. Cal.), which resulted in a $107 million recovery. These cases illustrate the resources, expertise, and commitment that Pomerantz's Antitrust Group devotes to prosecuting some of the most egregious anticompetitive conduct.

# A Global Advocate for Asset Managers
# and Public and Taft-Hartley Pension Funds

Pomerantz represents some of the largest pension funds, asset managers, and institutional investors around the globe, monitoring assets of over $9 trillion, and growing. Utilizing cutting-edge legal strategies and the latest proprietary techniques, Pomerantz protects, expands, and vindicates shareholder rights through our securities litigation services and portfolio monitoring program.

Pomerantz partners routinely advise foreign and domestic institutional investors on how best to evaluate losses to their investment portfolios attributable to financial misconduct and how best to maximize their potential recoveries worldwide. In particular, Pomerantz Partners Jeremy Lieberman and Jennifer Pafiti regularly travel throughout the U.S. and across the globe to meet with clients on these issues and are frequent speakers at investor conferences and educational forums in North America, Europe, and the Middle East.

Pomerantz was honored by European Pensions with its inaugural 2020 Thought Leadership award in recognition of significant contributions the Firm has made in the European pension environment.

# Institutional Investor Services

Pomerantz offers a variety of services to institutional investors. Through the Firm's proprietary system, PomTrack®, Pomerantz monitors client portfolios to identify and evaluate potential and pending securities fraud, ERISA and derivative claims, and class action settlements. Monthly customized PomTrack® reports are included with the service. PomTrack® currently monitors assets of over $9.4 trillion for some of the most influential institutional investors worldwide.

When a potential securities claim impacting a client is identified, Pomerantz offers to analyze the case's merits and provide a written analysis and recommendation. If litigation is warranted, a team of Pomerantz attorneys will provide efficient and effective legal representation. The experience and expertise of our attorneys—which have consistently been acknowledged by the courts—allow Pomerantz to vigorously pursue the claims of investors, taking complex cases to trial when warranted.

Pomerantz is committed to ensuring that companies adhere to responsible business practices and practice good corporate citizenship. The Firm strongly support policies and procedures designed to give shareholders the ability to oversee the activities of a corporation. Pomerantz has successfully utilized litigation to bring about corporate governance reform, and always considers whether such reforms are appropriate before any case is settled.

Pomerantz provides clients with insightful and timely commentary on matters essential to effective fund management in our bi-monthly newsletter, *The Pomerantz Monitor* and regularly sponsors conferences and roundtable events around the globe with speakers who are experts in securities litigation and corporate governance matters.

# Attorneys

### Partners

**Jeremy A. Lieberman**

Jeremy A. Lieberman is Pomerantz's Managing Partner. He became associated with the Firm in August 2004 and was elevated to Partner in January 2010. The Legal 500, in honoring Jeremy as a Leading Lawyer and Pomerantz as a 2021 and 2022 Tier 1 Plaintiffs Securities Law Firm, stated that "Jeremy Lieberman is super impressive—a formidable adversary for any defense firm." Among the client testimonials posted on The Legal 500's website: "Jeremy Lieberman led the case for us with remarkable and unrelenting energy and aggression. He made a number of excellent strategic decisions which boosted our recovery." Lawdragon has named Jeremy among the Leading 500 Plaintiff Financial Lawyers in the United States each year from 2019 to 2024. Super Lawyers® named him among the Top 100 Lawyers in the New York Metro area in 2021. In 2020, Jeremy won a Distinguished Leader award from the *New York Law Journal*. He was honored as Benchmark Litigation's 2019 Plaintiff Attorney of the Year. In 2018, Jeremy was honored as a Titan of the Plaintiffs Bar by Law360 and as a Benchmark

Litigation Star. The Pomerantz team that Jeremy leads was named a 2018 Securities Practice Group of the Year.

Jeremy led the securities class action litigation *In re Petrobras Securities Litigation,* which arose from a multi-billion-dollar kickback and bribery scheme involving Brazil's largest oil company, Petróleo Brasileiro S.A.–Petrobras, in which Pomerantz was sole Lead Counsel. The biggest instance of corruption in the history of Brazil ensnared not only Petrobras' former executives but also Brazilian politicians, including former president Lula da Silva and one-third of the Brazilian Congress. In January and February 2018, Jeremy achieved a historic $3 billion settlement for the Class. This is not only the largest securities class action settlement in a decade but is the largest settlement ever in a securities class action involving a foreign issuer, the fifth-largest securities class action settlement ever achieved in the United States, the largest securities class action settlement achieved by a foreign Lead Plaintiff, and the largest securities class action settlement in history not involving a restatement of financial reports.

Jeremy also secured a significant victory for Petrobras investors at the Second Circuit Court of Appeals, when the court rejected the heightened ascertainability requirement for obtaining class certification that had been imposed by the Third Circuit Courts of Appeals. The ruling will have a positive impact on plaintiffs in securities fraud litigation. Indeed, the *Petrobras* litigation was honored in 2019 as a National Impact Case by Benchmark Litigation.

Jeremy was Lead Counsel in *Pirnik v. Fiat Chrysler Automobiles N.V. et al.*, No. 1:15-cv-07199-JMF (S.D.N.Y), in which the Firm achieved a $110 million settlement for the class. Plaintiff alleged that Fiat Chrysler concealed from investors that it improperly outfitted its diesel vehicles with "defeat device" software designed to cheat NOx emissions regulations in the U.S. and Europe, and that regulators had accused Fiat Chrysler of violating the emissions regulations. The *Fiat Chrysler* recovery provided the class of investors with as much as 20% of recoverable damages—an excellent result when compared to historical statistics in class action settlements, where typical recoveries for cases of this size are between 1.6% and 3.3%.

In November 2019, Jeremy achieved a critical victory for investors in the securities fraud class action against Perrigo Co. plc when Judge Arleo of the United States District Court for the District of New Jersey certified classes of investors that purchased Perrigo securities on both the New York Stock Exchange and the Tel Aviv Stock Exchange. Pomerantz represents a number of institutional investors that purchased Perrigo securities on both exchanges after an offer by Mylan N.V. to tender Perrigo shares. This is the first time since *Morrison* that a U.S. court has independently analyzed the market of a security traded on a non-U.S. exchange and found that it met the standards of market efficiency necessary allow for class certification.

Jeremy headed the Firm's individual action against pharmaceutical giant Teva Pharmaceutical Industries Ltd. and Teva Pharmaceuticals USA, Inc. (together, "Teva"), and certain of Teva's current and former employees and officers, relating to alleged anticompetitive practices in Teva's sales of generic drugs. Teva is a dual-listed company, and the Firm represents several Israeli institutional investors who purchased Teva shares on the Tel Aviv Stock Exchange. In early 2021, Pomerantz achieved a major victory for global investors when the district court agreed to exercise supplemental jurisdiction over the Israeli law claims. *Clal Insurance Company Ltd. v. Teva Pharmaceutical Industries Ltd.*

In 2019, Jeremy achieved a $27 million settlement for the Class in *Strougo v. Barclays PLC*, a high-profile securities class action in which Pomerantz was Lead Counsel. Plaintiffs alleged that Barclays PLC misled institutional investors about the manipulation of the banking giant's so-called "dark pool" trading systems in order to provide a trading advantage to high-frequency traders over its institutional investor clients. This case turned on the duty of integrity owed by Barclays to its clients. In November 2017, Jeremy achieved precedent-setting victories for investors, when the Second Circuit Court of Appeals held that direct evidence of price impact is not always necessary to demonstrate market efficiency to invoke the presumption of reliance, and that defendants seeking to rebut the presumption of reliance must do so by a preponderance of the evidence rather than merely meeting a burden of production.

Jeremy led the Firm's securities class action litigation against Yahoo!, Inc., in which Pomerantz, as Lead Counsel, achieved an $80 million settlement for the Class in 2018. The case involved the biggest data breaches in U.S. history, in which over 3 billion Yahoo accounts were compromised. This was the first significant settlement to date of a securities fraud class action filed in response to a data breach.

In 2018 Jeremy achieved a $3.3 million settlement for the Class in the Firm's securities class action against Corinthian Colleges, one of the largest for-profit college systems in the country, for alleged misrepresentations about its job placement rates, compliance with applicable regulations, and enrollment statistics. Pomerantz prevailed in the motion to dismiss the proceedings, a particularly noteworthy victory because Chief Judge George King of the Central District of California had dismissed two prior lawsuits against Corinthian with similar allegations. *Erickson v. Corinthian Colleges, Inc.* (C.D. Cal.).

Jeremy led the Firm's litigation team that in 2018 secured a $31 million partial settlement with three defendants in *In re Libor Based Financial Instruments Antitrust Litigation*, a closely watched multi-district litigation, which concerns the London Interbank Offered Rate (LIBOR) rigging scandal.

In *In re China North East Petroleum Corp. Securities Litigation*, Jeremy achieved a significant victory for shareholders in the United States Court of Appeals for the Second Circuit, whereby the Appeals Court ruled that a temporary rise in share price above its purchase price in the aftermath of a corrective disclosure did not eviscerate an investor's claim for damages. The Second Circuit's decision was deemed "precedential" by the *New York Law Journal* and provides critical guidance for assessing damages in a § 10(b) action.

Jeremy had an integral role in *In re Comverse Technology, Inc. Securities Litigation*, in which he and his partners achieved a historic $225 million settlement on behalf of the Class, which was the second-largest options backdating settlement to date.

Jeremy regularly consults with Pomerantz's international institutional clients, including pension funds, regarding their rights under the U.S. securities laws. Jeremy is working with the Firm's international clients to craft a response to the Supreme Court's ruling in *Morrison v. National Australia Bank, Ltd.*, which limited the ability of foreign investors to seek redress under the federal securities laws.

Jeremy is a frequent lecturer worldwide regarding current corporate governance and securities litigation issues.

Jeremy graduated from Fordham University School of Law in 2002. While in law school, he served as a

staff member of the *Fordham Urban Law Journal*. Upon graduation, he began his career at a major New York law firm as a litigation associate, where he specialized in complex commercial litigation.

Jeremy is admitted to practice in New York; the United States District Courts for the Southern and Eastern Districts of New York, the Northern and Southern Districts of Texas, the District of Colorado, the Eastern District of Michigan, the Eastern District of Wisconsin, and the Northern District of Illinois; the United States Courts of Appeals for the First, Second, Third, Fourth, Fifth, Sixth, Ninth, and Tenth Circuits; and the United States Supreme Court.

## Gustavo F. Bruckner

Gustavo F. Bruckner heads Pomerantz's Corporate Governance practice group, which enforces shareholder rights and prosecutes litigation challenging corporate actions that harm shareholders. Under Gustavo's leadership, the Corporate Governance group has achieved numerous noteworthy litigation successes. He has been quoted on corporate governance issues by *The New York Times, The Wall Street Journal*, *Bloomberg*, *Law360*, and *Reuters*, and was honored from 2016 through 2021 by Super Lawyers® as a "Top-Rated Securities Litigation Attorney," a recognition bestowed on no more than 5% of eligible attorneys in the New York Metro area. In 2023, he was included on Lawdragon's list of the 500 Leading Plaintiff Financial Lawyers. Gustavo regularly appears in state and federal courts across the nation. Gustavo presented at the prestigious Institute for Law and Economic Policy conference.

Gustavo is a fierce advocate of aggressive corporate clawback policies that allow companies to recover damages from officers and directors for reputational and financial harm. Most recently, in *McIntosh vs Keizer*, *et al.*, Docket No. 2018-0386 (Del. Ch.), Pomerantz filed a derivative suit on behalf of Hertz Global Holdings, Inc. shareholders, seeking to compel the Hertz board of directors to claw back millions of dollars in unearned and undeserved payments that the Company made to former officers and directors who significantly damaged Hertz through years of wrongdoing and misconduct. Under pressure from plaintiff's ligation efforts, the Hertz board of directors elected to take unprecedented action and mooted plaintiff's claims, initiating litigation to recover tens of millions of dollars in incentive compensation and more than $200 million in damages from culpable former Hertz executives.

Pomerantz, through initiation and prosecution of a shareholder derivative action, forced the Hertz board to seek clawback from former officers and directors of the company, unjustly enriched after causing the Company to file inaccurate and false financial statements leading to a $235 million restatement and $16 million fee to the SEC.

In September 2017, Gustavo's Corporate Governance team achieved a settlement in New Jersey Superior Court that provided non-pecuniary benefits for a non-opt out class. In approving the settlement, Judge Julio Mendez, of Cape May County Chancery Division, became the first New Jersey state court judge to formally adopt the Third Circuit's nine-part *Girsh* factors, *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975). Never before has there been a published New Jersey state court opinion setting out the factors a court must consider in evaluating whether a class action settlement should be determined to be fair and adequate.

Gustavo successfully argued *Strougo v. Hollander*, C.A. No. 9770-CB (Del. Ch. 2015), obtaining a landmark ruling in Delaware that bylaws adopted after shareholders are cashed out do not apply to

shareholders affected by the transaction. In the process, Gustavo and the Corporate Governance team beat back a fee-shifting bylaw and were able to obtain a 25% price increase for members of the class cashed out in the "going private" transaction. Shortly thereafter, the Delaware Legislature adopted legislation to ban fee-shifting bylaws.

In *Stein v. DeBoer* (Or. Cir. Ct. 2017), Gustavo and the Corporate Governance group achieved a settlement that provides significant corporate governance therapeutics on behalf of shareholders of Lithia Motors, Inc. The company's board had approved, without meaningful review, the Transition Agreement between the company and Sidney DeBoer, its founder, controlling shareholder, CEO, and Chairman, who was stepping down as CEO. DeBoer and his son, the current CEO, negotiated virtually all the material terms of the Agreement, by which the company agreed to pay the senior DeBoer $1,060,000 and a $42,000 car allowance annually for the rest of his life, plus other benefits, in addition to the $200,000 per year that he would receive for continuing to serve as Chairman.

In *Miller v. Bolduc*, No. SUCV 2015-00807 (Mass. Sup. Ct. 2015), Gustavo and the Corporate Governance group, by initiating litigation, caused Implant Sciences to hold its first shareholder annual meeting in 5 years and to place an important compensation grant up for a shareholder vote.

In *Strougo v. North State Bancorp*, No. 15 CVS 14696 (N.C. Super. Ct. 2015), Gustavo and the Corporate Governance team caused the North State Bancorp merger agreement to be amended to provide a "majority of the minority" provision for common shareholders in connection with the shareholder vote on the merger. As a result of the action, common shareholders had the ability to stop the merger if they did not wish it to go forward.

In *Hallandale Beach Police Officers and Firefighters' Personnel Retirement Fund vs. Lululemon Athletica, Inc.*, C.A. No. 8522-VCP (Del. Ch. 2014), in an issue of first impression in Delaware, Gustavo successfully argued for the production of the company chairman's Rule 10b5-1 stock trading plan. The court found that a stock trading plan established by the company's chairman, pursuant to which a broker, rather than the chairman himself, would liquidate a portion of the chairman's stock in the company, did not preclude potential liability for insider trading.

Gustavo was Co-Lead Counsel in *In re Great Wolf Resorts, Inc. Shareholders Litigation*, C.A. No. 7328-VCN (Del. Ch. 2012), obtaining the elimination of stand-still provisions that allowed third parties to bid for Great Wolf Resorts, Inc., resulting in the emergence of a third-party bidder and approximately $94 million (57%) in additional merger consideration for Great Wolf shareholders.

Gustavo received his law degree in 1992 from the Benjamin N. Cardozo School of Law, where he served as an editor of the Moot Court Board and on the Student Council. Upon graduation, he received the award for outstanding student service.

After graduating law school, Gustavo served as Chief-of-Staff to a New York City legislator.

Gustavo is a Mentor and Coach to the NYU Stern School of Business, Berkley Center for Entrepreneurial Studies, New Venture Competition. He was a University Scholar at NYU where he obtained a B.S. in Marketing and International Business in 1988 and an MBA in Finance and International Business in 1989. Gustavo is a Trustee and former Treasurer of the Beit Rabban Day School, and an arbitrator in the Civil Court of the City of New York.

Gustavo is admitted to practice in New York and New Jersey; the United States District Courts for the Eastern, Northern, and Southern Districts of New York and the District of New Jersey; the Eastern District of Wisconsin; the United States Courts of Appeals for the Second and Seventh Circuits; and the United States Supreme Court.

## Brian Calandra

Brian Calandra joined Pomerantz in June 2019 as Of Counsel and was elevated to Partner in January 2023. He has extensive experience in securities, antitrust, complex commercial, and white-collar matters in federal and state courts nationwide. Brian has represented issuers, underwriters, and individuals in securities class actions involving the financial, telecommunications, real estate, and pharmaceutical industries. He has also represented financial institutions in antitrust class actions concerning foreign exchange; supra-national, sub-sovereign and agency bonds; bonds issued by the government of Mexico; and credit card fees. In 2021, Brian was honored as a Super Lawyers® "Top-Rated Securities Litigation Attorney".

Brian has written multiple times on developments in securities law and other topics, including co-authoring an overview of insider trading law and enforcement for *Practical Compliance & Risk Management for the Securities Industry*, co-authoring an analysis of anti-corruption compliance risks posed by sovereign wealth funds for *Risk & Compliance*, and authoring an analysis of the effects of the 2005 Bankruptcy Abuse Prevention and Consumer Protection Act on women in bankruptcy for the *Women's Rights Law Reporter*.

Before joining Pomerantz, Brian was a litigation associate at Shearman & Sterling LLP. Brian graduated from Rutgers School of Law-Newark in 2009, *cum laude*, Order of the Coif. While at Rutgers, Brian was co-editor-in-chief of the *Women's Rights Law Reporter* and received the Justice Henry E. Ackerson Prize for Distinction in Legal Skills and the Carol Russ Memorial Prize for Distinction in Promoting Women's Rights.

Brian is admitted to practice in New York; the United States District Courts for the Northern, Southern and Eastern Districts of New York; the District of New Jersey, and the Eastern District of Wisconsin; the United States Courts of Appeals for the First, Second, Third, Fifth and Tenth Circuits; and the United States Supreme Court.

## Justin D. D'Aloia

Justin D. D'Aloia is a Partner in Pomerantz's New York office, where he specializes in securities class action litigation. He has extensive experience litigating high-profile securities cases in federal and state courts across the country. Justin has represented issuers, underwriters, and senior executives in matters involving a range of industries, including the financial services, life sciences, real estate, technology, and consumer retail sectors. His practice covers the full spectrum of proceedings from pre-suit demand through settlement.

Justin joined Pomerantz as a Partner in October 2022. Before joining Pomerantz, Justin was counsel at a large international law firm where he focused on securities litigation and other complex shareholder

class action litigation. He previously served as a law clerk to Judge Mark Falk of the United States District Court for the District of New Jersey.

Justin received his J.D. from Fordham University School of Law, where he was Editor-in-Chief of the Fordham International Law Journal. He earned his undergraduate degree from Rutgers University with a concentration in Business and Economics.

Justin is admitted to practice in New York; United States District Courts for the Southern and Eastern Districts of New York and the District of Colorado; United States Courts of Appeals for the Second, Third, and Tenth Circuits.

**Emma Gilmore**

Emma Gilmore is a Partner at Pomerantz and is regularly involved in high-profile class-action litigation. In 2024, Benchmark Litigation selected her as "Plaintiff Litigator of the Year." In 2023, the *National Law Journal* named her a Plaintiffs' Attorney Trailblazer and Benchmark Litigation shortlisted her for Plaintiff Litigator of the Year. Emma was honored by Law360 in 2023 and in 2018 as an MVP in Securities Litigation, part of an "elite slate of attorneys [who] have distinguished themselves from their peers by securing hard-earned successes in high-stakes litigation, complex global matters and record-breaking deals." Only up to six attorneys nationwide are selected each year as MVPs in Securities Litigation. In 2018, Emma was the first woman plaintiff attorney to receive this outstanding award since it was initiated in 2011. In 2021, Emma was awarded a spot on *National Law Journal*'s prestigious Elite Women of the Plaintiffs Bar list. In 2021 and 2020, she was named by Benchmark Litigation as one of the Top 250 Women in Litigation—an honor bestowed on only seven plaintiffs' lawyers in the U.S. those years. The *National Law Journal* and the *New York Law Journal* honored her as a "Plaintiffs' Lawyer Trailblazer." Emma has been honored since 2018 as a Super Lawyer®. She has been recognized by Lawdragon as one of the top 500 Leading Plaintiff Financial Lawyers.

Emma is regularly invited to speak about recent trends and developments in securities litigation. She serves on the New York City Bar Association's Securities Litigation Committee. Emma regularly counsels clients around the world on how to maximize recoveries on their investments.

Emma played a leading role in the Firm's class action case in the Southern District of New York against Brazil's largest oil company, Petrobras, arising from a multi-billion-dollar kickback and bribery scheme, in which the Firm was sole Lead Counsel. In a significant victory for investors, Pomerantz achieved a historic $3 billion settlement with Petrobras. This is not only the largest securities class action settlement in a decade but is the largest settlement ever in a class action involving a foreign issuer, the fifth-largest class action settlement ever achieved in the United States, and the largest settlement achieved by a foreign lead plaintiff. The biggest instance of corruption in the history of Brazil had ensnared not only Petrobras' former executives but also Brazilian politicians, including former president Lula da Silva and one-third of the Brazilian Congress. Emma traveled to Brazil to uncover evidence of fraud and drafted the complaint. She deposed and defended numerous fact and expert witnesses, including deposing the former CEO of Petrobras, the whistleblower, and the chief accountant. She drafted the appellate brief, playing an instrumental role in securing a significant victory for investors in this case at the Second Circuit Court of Appeals, when the Court rejected the heightened ascertainability requirement for obtaining class certification that had been imposed by other circuit courts. She opposed defendants' petition for a writ of certiorari to the Supreme Court. Emma successfully obtained sanctions

against a professional objector challenging the integrity of the settlement, both in the District Court and in the Court of Appeals for the Second Circuit.

Emma organized a group of twenty-seven of the foremost U.S. scholars in the field of evidence and spearheaded the effort to submit an amicus brief to the U.S. Supreme Court on their behalf in a critical issue for investors. One of the two issues before the High Court in *Goldman Sachs Group, Inc. et al v. Arkansas Teachers Retirement System, et al.* (No. 20-222) squarely affected investors' ability to pursue claims collectively as a class: whether, in order to rebut the presumption of reliance originated by the Court in the landmark *Basic v. Levinson* decision, defendants bear the burden of persuasion, or whether they bear only the much lower burden of production. The scholars argued that defendants carry the higher burden of persuasion. In a 6-3 decision, the Supreme Court sided with Pomerantz and the scholars.

Emma led the Firm's class action litigation against Deutsche Bank and its executives, arising from the Bank's improper anti-money-laundering and know-your-customer procedures. Plaintiffs alleged that, despite the Bank's representations that it implemented a "robust and strict" Know Your Customer program with "special safeguards" for politically exposed persons (PEPs), defendants repeatedly exempted high-net-worth individuals and PEPs from any meaningful due diligence, enabling their criminal activities through the Bank's facilities. For example, Deutsche Bank continued "business as usual" with Jeffrey Epstein even after learning that 40 underage girls had come forward with testimony that he had sexually assaulted them. Deutsche Bank's former CEOs also onboarded, retained, and serviced Russian oligarchs and other clients reportedly engaged in criminal activities, with little or no due diligence. On October 20, 2022, Emma secured for investors nearly 50% of recoverable damages, which reflects a premium for the palpable misconduct and is exceptionally high for securities class action settlements. The Deutsche Bank litigation and settlement serve as important legal precedents aimed to deter financial institutions from enabling the wealthy and powerful to commit crimes in return for financial benefits to the institutions.

Emma played a leading role in *Strougo v. Barclays PLC*, a high-profile securities class action that alleged Barclays PLC misled institutional investor clients about the extent of the banking giant's use of so-called "dark pool" trading systems. She secured an important precedent-setting opinion from the Second Circuit. Emma organized a group of leading evidence experts who filed amicus briefs supporting plaintiffs' position in the Second Circuit.

Emma secured a unanimous decision by a panel of the Ninth Circuit Court of Appeals, benefiting defrauded investors in *Costa Brava Partnership III LP v. ChinaCast Education Corp*. In an issue of first impression, the Ninth Circuit held that imputation of the CEO's scienter to the company was warranted vis-a-vis innocent third parties, despite the fact that the executive acted for his own benefit and to the company's detriment.

She has also devoted a significant amount of time to pro bono matters. She played a critical role in securing a unanimous ruling by the Arkansas Supreme Court striking down as unconstitutional a state law banning cohabiting individuals from adopting children or serving as foster parents. The ruling was a relief for the 1,600-plus children in the state of Arkansas who needed a permanent family. The litigation generated significant publicity, including coverage by the *Arkansas Times, the Wall Street Journal, and the New York Times.*

She was Lead Counsel in the Firm's class action litigation against Arconic, in which she secured a $74 million settlement for the class. Arconic is the U.S. company that manufactured the highly flammable aluminum cladding allegedly responsible for the 2017 Grenfell Tower fire in London that eradicated a public housing block, killing 72 people and injuring 70 other tenants. Arconic repeatedly misrepresented to the market its safety protocols and the safety classification of its cladding products. When the truth about Arconic's unsafe practices emerged, investors lost over $1 billion in damages.

Before joining Pomerantz, Emma was a litigation associate with the firms of Skadden, Arps, Slate, Meagher and Flom, LLP, and Sullivan & Cromwell, LLP. She worked on the *WorldCom Securities Litigation,* which settled for $2 billion.

She also served as a law clerk to the Honorable Thomas C. Platt, former U.S. Chief Judge for the Eastern District of New York.

Emma graduated *cum laude* from Brooklyn Law School, where she served as a staff editor for the *Brooklyn Law Review*. She was the recipient of two CALI Excellence for the Future Awards, in the subjects of evidence and discovery. She graduated *summa cum laude* from Arizona State University, with a BA in French and a minor in Business.

She serves on the Firm's Anti-Harassment and Discrimination Committee.

### Michael Grunfeld

Michael Grunfeld joined Pomerantz in July 2017 as Of Counsel and was elevated to Partner in 2019.

Michael has extensive experience in securities, complex commercial, and white-collar matters in federal and state courts around the country.

He has played a leading role in some of the Firm's significant class action litigation, including its case against Yahoo!, Inc. arising out of the biggest data breaches in U.S. history, in which the Firm, as Lead Counsel, achieved an $80 million settlement on behalf of the Class. This settlement made history as the first substantial shareholder recovery in a securities fraud class action related to a cybersecurity breach. Michael also plays a leading role in many of the Firm's other ongoing class actions.

Michael is an honoree of Benchmark Litigation's 40 & Under Hot List 2020, 2021, and 2022, granted to a few of the "best and brightest law firm partners who stand out in their practices." He was named a 2019 Rising Star by Law360, a prestigious honor awarded to a select few top litigators under 40 years old "whose legal accomplishments transcend their age." In 2020, 2021, and 2022, Michael was recognized by Super Lawyers® as a Top-Rated Securities Litigation Attorney;" in 2018 and 2019 he was honored as a New York Metro Rising Star.

Michael also leads Pomerantz's litigation on behalf of the Colorado Public Employees' Retirement System as an intervenor in *The Doris Behr 2012 Irrevocable Trust v. Johnson & Johnson.* At issue is an activist investor's attempt to have Johnson & Johnson ("J&J") shareholders vote on a proxy proposal instituting a corporate bylaw that would require all securities fraud claims against the company to be pursued through mandatory arbitration, and that would waive shareholder's rights to bring securities

class actions. In March 2022, the district court handed down an important victory for shareholders when it granted J&J's and the Intervenors' Motion to Dismiss the Third Amended Complaint.

Michael is the co-author of a chapter on damages in securities class actions in the LexisNexis treatise, *Litigating Securities Class Actions*.

Michael served as a clerk for Judge Ronald Gilman of the Sixth Circuit Court of Appeals and as a foreign law clerk for Justice Asher Grunis of the Israeli Supreme Court. Before joining Pomerantz, he was a litigation associate at Shearman & Sterling LLP and Paul, Weiss, Rifkind, Wharton & Garrison LLP.

Michael graduated from Columbia Law School in 2008, where he was a Harlan Fiske Stone Scholar and Submissions Editor of the Columbia Business Law Review. He graduated from Harvard University with an A.B. in Government, *magna cum laude*, in 2004.

Michael is admitted to practice in New York; the United States District Courts for the Southern and Eastern Districts of New York, Eastern District of Michigan, and the District of Colorado; and the United States Courts of Appeal for the Second, Third, Fourth, Sixth, Ninth, and Tenth Circuits.

## J. Alexander Hood II

J. Alexander Hood II joined Pomerantz in June 2015 and was elevated to Of Counsel to the Firm in 2019. He was elevated to Partner in 2022. Alex leads the Firm's case origination team, identifying and investigating potential violations of the federal securities laws. In 2023, Alex was selected as a Rising Star in the *National Law Journal's* Elite Trial Lawyers awards competition. This award honors lawyers under 40 who represent the next generation of legal leaders. He has been named a Super Lawyers® Rising Star each year since 2019.

He has been named a Super Lawyers® Rising Star each year since 2019.FF

Alex played a key role in securing Pomerantz's appointment as Lead Counsel in actions against Meta Platforms, Inc., AT&T, Inc., Adobe, Inc., Hawaiian Electric Industries, Inc., Rite Aid Corporation, Yahoo!, Inc., Fiat Chrysler Automobiles N.V., Wynn Resorts Limited, Perrigo Company plc, among others.

Alex also oversees the firm's involvement on behalf of institutional investors in non-U.S. litigations, assisting Pomerantz clients with respect to evaluating and pursuing recovery in foreign jurisdictions, including matters in the Netherlands, Germany, the UK, Australia, Brazil, Denmark, and elsewhere.

Prior to joining Pomerantz, Alex practiced at nationally recognized law firms, where he was involved in commercial, financial services, corporate governance, and securities matters.

Alex graduated from Boston University School of Law (J.D.) and from the University of Oregon School of Law (LL.M.). During law school, he served as a member of the Boston University Review of Banking & Financial Law and participated in the Thomas Tang Moot Court Competition. In addition, Alex clerked for the American Civil Liberties Union of Tennessee and, as a legal extern, worked on the Center for Biological Diversity's Clean Water Act suit against BP in connection with the Deepwater Horizon oil spill.

Alex is admitted to practice in New York; the United States District Courts for the Southern, Eastern, Western and Northern Districts of New York; the District of Colorado; the Eastern District of Michigan; the Eastern District of Wisconsin; the Northern District of Illinois; the Northern District of Indiana; the Southern District of Texas; and the United States Courts of Appeals for the Second Circuit.

## Omar Jafri

Omar Jafri is a Partner at Pomerantz. He represents defrauded investors in individual and class action securities litigation. *Lawdragon* has named him one of the country's Leading Plaintiff Financial Lawyers, and Super Lawyers® has recognized him as a Top-Rated Securities Litigator. Previously, Omar was recognized by the *National Law Journal* as a Rising Star of the Plaintiffs' Bar. The *National Law Journal* selected lawyers who "demonstrated repeated success in cutting-edge work on behalf of plaintiffs over the last 18 months [and] possess a solid track record of client wins over the past three to five years." He was also recognized by Super Lawyers® as a Rising Star in Securities Litigation between 2021 and 2023.

Omar has played an integral role in numerous cases where the Firm achieved significant recoveries for defrauded shareholders as Lead, Co-Lead or Additional Counsel, including: *Roofer's Pension Fund v. Papa et al.* ($97 million recovery); *In re Chicago Bridge & Iron Co. N.V. Securities Litigation* ($44 million recovery); *In re Juno Therapeutics, Inc. Securities Litigation* ($24 million recovery); *In re Aveo Pharmaceuticals, Inc. Securities Litigation* ($18 million recovery, which was more than four times larger than the SEC's fair fund recovery in its parallel litigation); *Sudunagunta v. NantKwest, Inc.* ($12 million settlement); *Cooper v. Thoratec Corporation et al.* ($11.9 million settlement following a reversal in the United States Court of Appeals for the Ninth Circuit after the lower court repeatedly dismissed the case); *Thomas v. MagnaChip Semiconductor Corp. Securities Litigation* ($6.2 million settlement with majority shareholder, Avenue Capital); *Solomon v. Sprint Corporation et al.* ($3.75 million settlement); In re Paysign, Inc. Securities Litigation ($3.75 million settlement); *Schaeffer v. Nabriva Therapeutics plc et al.* ($3 million settlement); *In re Sequans Communications S.A. Securities Litigation* ($2.75 million settlement); Torres et al. v. Berry Corporation et al. ($2.5 million settlement); and Busic v. Orphazyme A/S et al. ($2.5 million settlement).

Through vigorous litigation, Omar has helped shape important precedents for all investors. *NantKwest* was the first case in the United States to recognize statistical proof of traceability. In *Roofer's Pension Fund v. Papa et al.*, the District Court independently analyzed the market of a security traded on a foreign exchange and found that it met the standards of market efficiency to allow for class certification for the first time since the U.S. Supreme Court decided *Morrison*. *Nabriva* was the first case in the Second Circuit to sustain a complaint based on the failure to disclose the FDA's serious criticisms identified in a Form 483 letter. In *Yan v. ReWalk Robotics et al.*, while the United States Court of Appeals for the First Circuit disagreed on the merits, the Circuit held that it is erroneous to dismiss a case for lack of standing when a named plaintiff can be substituted with another class member, shutting the door on such defense tactics in any future case filed in that Circuit. *In re Bed Bath & Beyond Corporation Securities Litigation* was one of the first decisions in the country to conclude that the dissemination of a misleading emoji can be an actionable misrepresentation under the federal securities laws. And in *Glazer Capital Management, L.P. et al. v. Forescout Technologies, Inc. et al.*, Omar won a rare reversal in a securities fraud class action in the United States Court of Appeals for the Ninth Circuit. In a published decision that reversed the dismissal in *Forescout*, the Ninth Circuit held that lower courts must not comingle the lower standard for falsity with the higher standard for scienter in analyzing the sufficiency of a securities fraud complaint, and repudiated numerous arguments concerning the testimony of

Confidential Witnesses that the defense bar had convinced many lower courts to erroneously endorse over the years.

Omar started his legal career at the height of the financial crisis in 2008 and has litigated major disputes on behalf of institutional investors arising out of the credit crisis, including disputes related to Collateralized Debt Obligations, Residential Mortgage-Backed Securities, Credit Default Swaps and other complex financial investments. Omar also represented the Examiner in the *Lehman Brothers* bankruptcy, the largest in history at the time, and helped draft a report that identified colorable claims against Lehman's senior executives for violating their fiduciary duties. He also has a robust *pro bono* criminal defense practice and has represented indigent defendants charged with crimes that range from simple battery to arson and murder.

Before joining Pomerantz, Omar was a law clerk to Judge William S. Duffey, Jr. of the United States District Court for the Northern District of Georgia, and an associate at an international law firm where he represented clients in a wide variety of matters, including securities litigation, complex commercial litigation, white collar criminal defense, and internal investigations.

Omar is a 2004 honors graduate of the University of Texas at Austin, and a 2008, *magna cum laude*, graduate of the University of Illinois College of Law, where he was inducted into the *Order of the Coif* and received the Rickert Award for Excellence in Advocacy. He is a fellow of the American Bar Foundation.

Omar is admitted to practice in Illinois; the United States District Courts for the Northern District of Illinois (Trial Bar) and the Northern District of Indiana; the United States Courts of Appeals for the First, Second, Fifth, and Ninth Circuits; and the United States Supreme Court.

### Jordan L. Lurie

Jordan L. Lurie joined Pomerantz as a partner in the Los Angeles office in December 2018. Jordan heads Pomerantz's Strategic Consumer Litigation practice. He was named a 2021 Southern California Super Lawyer®.

Jordan has litigated shareholder class and derivative actions, complex corporate securities and consumer litigation, and a wide range of fraud and misrepresentation cases brought under state and federal consumer protection statutes involving unfair competition, false advertising, and privacy rights. Among his notable representations, Jordan served as Lead Counsel in the prosecution and successful resolution of major nationwide class actions against Nissan, Ford, Volkswagen, BMW, Toyota, Chrysler and General Motors. He also successfully preserved a multi-million dollar nationwide automotive class action settlement by convincing the then Chief Judge of the Ninth Circuit and his wife, who were also class members and had filed objections to the settlement, to withdraw their objections and endorse the settlement.

Jordan has argued cases in the California Court of Appeals and in the Ninth Circuit that resulted in published opinions establishing class members' rights to intervene and clarifying the standing requirements for an objector to appeal. He also established a Ninth Circuit precedent for obtaining attorneys' fees in a catalyst fee action. Jordan has tried a federal securities fraud class action to verdict. He has been a featured speaker at California Mandatory Continuing Legal Education seminars and is a

trained ombudsman and mediator. In 2020, Jordan was recognized as a 2021 Southern California Super Lawyer.

Outside of his legal practice, Jordan is an active educator and community leader and has held executive positions in various organizations in the Los Angeles community. Jordan participated in the first Wexner Heritage Foundation leadership program in Los Angeles and the first national cohort of the Board Member Institute for Jewish Nonprofits at the Kellogg School of Management.

Prior to joining Pomerantz, Jordan was the Managing Partner of the Los Angeles office of Weiss & Lurie and Senior Litigator at Capstone Law APC.

Jordan graduated cum laude from Yale University in 1984 with a B.A in Political Science and received his law degree in 1987 from the University of Southern California Gould School of Law, where he served as Notes Editor of the *University of Southern California Law Review*.

Jordan is a member of the State Bar of California and has been admitted to practice before the United States District Courts for the Northern, Southern, Central and Eastern Districts of California, the Eastern and Western Districts of Michigan, and the District of Colorado.

## Jennifer Pafiti

Jennifer Pafiti became associated with the Firm in April 2014 and was elevated to Partner in December 2015. A dually qualified U.K. solicitor and U.S. attorney, she is the Firm's Head of Client Services and also takes an active role in complex securities litigation, representing clients in both class and non-class action securities litigation.

Jennifer received the Innovative Leader Award in Corporate Counsel's 2024 Women, Influence, and Power in Law Awards. She has been recognized with inclusion in the 2024 Lawdragon 500 Global Plaintiff Lawyers list and the 2024 Lawdragon 500 Leading Plaintiff Financial Leaders list. In 2023, Jennifer was one of only four individuals to be honored with the *New York Law Journal*'s Innovation Award, which recognizes "creative and inspiring approaches by forward-thinking firms and individuals." Jennifer was nominated as a 2023 Lawyer of Distinction. In 2022, *The Enterprise World* named Jennifer as *The Most Successful Business Leader to Watch.* In 2021, Jennifer was selected as one of the "Women, Influence and Power in Law" honorees by Corporate Counsel, in the Collaborative Leadership—Law Firm category. Lawdragon has named Jennifer among the Leading 500 Lawyers in the United States every year since 2021. In 2020 she was named a Southern California Rising Star by Super Lawyers® and was recognized by Benchmark Litigation as a Future Star. Lawdragon has recognized Jennifer as a Leading Plaintiff Financial Attorney from 2019 through 2021. In 2019, she was also honored by Super Lawyers® as a Southern California Rising Star in Securities Litigation, named to Benchmark Litigation's *40 & Under Hot List* of the best young attorneys in the United States, and recognized by *Los Angeles Magazine* as one of Southern California's Top Young Lawyers. In 2018, Jennifer was recognized as a Lawyer of Distinction. She was honored by Super Lawyers® in 2017 as both a Rising Star and one of the Top Women Attorneys in Southern California. In 2016, the *Daily Journal* selected Jennifer for its "Top 40 Under 40" list of the best young attorneys in California.

Jennifer was an integral member of the Firm's litigation team for *In re Petrobras Securities Litigation,* a case relating to a multi-billion-dollar kickback and bribery scheme at Brazil's largest oil company,

Petróleo Brasileiro S.A.–Petrobras, in which the Firm was sole Lead Counsel. She helped secure a significant victory for investors in this case at the Second Circuit Court of Appeals, when the court rejected the heightened ascertainability requirement for obtaining class certification that had been imposed by other Circuit courts such as the Third and Sixth Circuit Courts of Appeals. Working closely with Lead Plaintiff, Universities Superannuation Scheme Limited, she was also instrumental in achieving the historic settlement of $3 billion for Petrobras investors. This is not only the largest securities class action settlement in a decade but is the largest settlement ever in a securities class action involving a foreign issuer, the fifth-largest securities class action settlement ever achieved in the United States, the largest securities class action settlement achieved by a foreign Lead Plaintiff, and the largest securities class action settlement in history not involving a restatement of financial reports.

Jennifer was involved, among other cases, in the securities class action against rare disease biopharmaceutical company, KaloBios, and certain of its officers, including CEO Martin Shkreli. In 2018, Pomerantz achieved a settlement of $3 million plus 300,000 shares for defrauded investors—an excellent recovery in light of the company's bankruptcy. *Isensee v. KaloBios*. Jennifer also helped achieve a $10 million recovery for the class in a securities litigation against the bankrupt Californian energy company, PG&E, which arose from allegedly false statements made by the company about its rolling power outages in the wake of the catastrophic wildfire incidents that occurred in California in 2015, 2017, and 2018. *Vataj v. Johnson, et al.*

Jennifer earned a Bachelor of Science degree in Psychology at Thames Valley University in England, prior to studying law. She earned her law degrees at Thames Valley University (G.D.L.) and the Inns of Court School of Law (L.P.C.) in the U.K.

Before studying law in England, Jennifer was a regulated financial advisor and senior mortgage underwriter at a major U.K. financial institution. She holds full CeFA and CeMAP qualifications. After qualifying as a solicitor, Jennifer specialized in private practice civil litigation, which included the representation of clients in high-profile cases in the Royal Courts of Justice. Prior to joining Pomerantz, Jennifer was an associate with Robbins Geller Rudman & Dowd LLP in their San Diego office.

Jennifer regularly travels throughout the U.S. and Europe to advise clients on how best to evaluate losses to their investment portfolios attributable to financial fraud or other misconduct, and how best to maximize their potential recoveries. Jennifer is also a regular speaker at events on securities litigation and fiduciary duty. In 2022, Thought Leaders 4 Disputes published Jennifer's article entitled "The Globalisation of Securities Litigation."

Jennifer served on the Honorary Steering Committee of Equal Rights Advocates ("ERA"), which focuses on specific issues that women face in the legal profession. ERA is an organization that protects and expands economic and educational access and opportunities for women and girls.

Jennifer is a member of the National Association of Pension Fund Attorneys and represents the Firm as a member of the California Association of Public Retirement Systems, the State Association of County Retirement Systems, the National Association of State Treasurers, the National Conference of Employee Retirement Systems, the Texas Association of Public Employee Retirement Systems, and the U.K.'s National Association of Pension Funds.

Jennifer is admitted to practice in England and Wales; California; the United States District Courts for the Northern, Central and Southern Districts of California; and the United States Court of Appeals for the Ninth Circuit.

## Joshua B. Silverman

Joshua B. Silverman is a partner in Pomerantz's Chicago office. He specializes in individual and class action securities litigation.

Josh was Lead Counsel in *In re Groupon, Inc. Securities Litigation,* achieving a $45 million settlement, one of the highest percentage recoveries in the Seventh Circuit. He was also Lead or Co-Lead Counsel in *In re MannKind Corp. Securities Litigation* ($23 million settlement); *In re AVEO Pharmaceuticals, Inc. Securities Litigation* ($18 million settlement, more than four times larger than the SEC's fair fund recovery in parallel litigation); *New Mexico State Investment Council v. Countrywide Financial Corp.* (very favorable confidential settlement); *New Mexico State Investment Council v. Cheslock Bakker & Associates* (summary judgment award in excess of $30 million); *Sudunagunta v. NantKwest, Inc.* ($12 million settlement); *Bruce v. Suntech Power Holdings Corp.* ($5 million settlement); *In re AgFeed, Inc. Securities Litigation* ($7 million settlement); and *In re Hemispherx BioPharma Securities Litigation* ($2.75 million settlement). Josh also played a key role in the Firm's representation of investors before the United States Supreme Court in *StoneRidge,* and prosecuted many of the Firm's other class cases, including *In re Sealed Air Corp. Securities Litigation* ($20 million settlement).

Josh, together with Managing Partner Jeremy Lieberman, achieved a critical victory for investors in the securities fraud class action against Perrigo Co. plc when Judge Arleo of the United States District Court for the District of New Jersey certified classes of investors that purchased Perrigo securities on both the New York Stock Exchange and the Tel Aviv Stock Exchange. Pomerantz represents a number of institutional investors that purchased Perrigo securities on both exchanges after an offer by Mylan N.V. to tender Perrigo shares. This is the first time since *Morrison* that a U.S. court has independently analyzed the market of a security traded on a non-U.S. exchange and found that it met the standards of market efficiency necessary allow for class certification.

Several of Josh's cases have set important precedent. For example, *In re MannKind* established that investors may support complaints with expert information. *New Mexico v. Countrywide* recognized that investors may show Section 11 damages for asset-backed securities even if there has been no interruption in payment or threat of default. More recently, *NantKwest* was the first Section 11 case in the nation to recognize statistical proof of traceability.

In addition to prosecuting cases, Josh regularly speaks at investor conferences and continuing legal education programs.

Before joining Pomerantz, Josh practiced at McGuireWoods LLP and its Chicago predecessor, Ross & Hardies, where he represented one of the largest independent futures commission merchants in commodities fraud and civil RICO cases. He also spent two years as a securities trader, and continues to actively trade stocks, futures, and options for his own account.

Josh is a 1993 graduate of the University of Michigan, where he received Phi Beta Kappa honors, and a 1996 graduate of the University of Michigan Law School.

Josh is admitted to practice in Illinois; the United States District Court for the Northern District of Illinois; the United States Courts of Appeals for the First, Second, Third, Seventh, Eighth and Ninth Circuits; and the United States Supreme Court.

### Brenda Szydlo

Brenda Szydlo joined Pomerantz in January 2016 as Of Counsel and was elevated to Partner in 2022. She brings to the Firm extensive experience in complex civil litigation in federal and state court on behalf of plaintiffs and defendants, with a particular focus on securities and financial fraud litigation, litigation against pharmaceutical corporations, accountants' liability, and commercial litigation. In 2020-2024, Brenda was recognized by Super Lawyers® as a "Top-Rated Securities Litigation Attorney." Brenda was also included on the Lawdragon 500 Leading Plaintiff Financial Lawyers list in 2022-2024. Additionally, Brenda was named New York Metro Top Women 2024 for Securities Litigation.

Brenda played a leading role in the Firm's securities class action case in the Southern District of New York against Brazil's largest oil company, Petrobras, arising from a multi-billion-dollar kickback and bribery scheme, in which the Firm, as sole Lead Counsel, achieved a precedent-setting legal ruling and a historic $3 billion settlement for the Class. This is not only the largest securities class action settlement in a decade but is the largest settlement ever in a securities class action involving a foreign issuer, the fifth-largest securities class action settlement ever achieved in the United States, the largest securities class action settlement achieved by a foreign Lead Plaintiff, and the largest securities class action settlement in history not involving a restatement of financial reports.

Brenda has represented investors in additional class and private actions that have resulted in significant recoveries, such as *In re Pfizer, Inc. Securities Litigation*, where the recovery was $486 million, and *In re Refco, Inc. Securities Litigation*, where the recovery was in excess of $407 million. She has also represented investors in opt-out securities actions, such as investors opting out of *In re Bank of America Corp. Securities, Derivative & ERISA Litigation* in order to pursue their own securities action.

Prior to joining Pomerantz, Brenda served as Senior Counsel in a prominent plaintiff advocacy firm, where she represented clients in securities and financial fraud litigation, and litigation against pharmaceutical corporations and accounting firms. Brenda also served as Counsel in the litigation department of one of the largest premier law firms in the world, where her practice focused on defending individuals and corporations in securities litigation and enforcement, accountants' liability actions, and commercial litigation.

Brenda is a graduate of St. John's University School of Law, where she was a St. Thomas More Scholar and member of the Law Review. She received a B.A. in economics from Binghamton University.

Brenda is admitted to practice in New York; United States District Courts for the Southern and Eastern Districts of New York; the U.S. Courts of Appeals for the Second and Ninth Circuits; and the United States Supreme Court.

**Matthew L. Tuccillo**

A Partner since 2013, Matthew L. Tuccillo joined Pomerantz in 2011.  With 25+ years of experience, he is recognized as a top national securities litigator.

Matt serves as the Firm's lead litigator on high-stakes securities class action litigation in courts nationwide.  He closely advises his institutional clients, which are regularly appointed to serve as lead plaintiffs overseeing such lawsuits, which often have class-wide damages of $500 million - $1 billion+.  Matt's representative cases include:

- In *In re Emergent Biosolutions, Inc. Securities Litigation*, No. 8:21-cv-00955-PWG (D. Md.), arising from a company's COVID-19 vaccine manufacturing failures, Matt investigated and prepared a robust amended complaint, then succeeded in overcoming Defendants' motion to dismiss in September 2023, in securing class certification in June 2024, and in leading the case is through discovery.  Matt secured a $40 million class-wide settlement following a mediation and months of ensuring negotiations.  The court granted preliminary in October 2024.
- In *Edwards v. McDermott Int'l, Inc.*, No. 4:18-cv-4330-AB (S.D. Tex.), Matt successfully opposed a motion to dismiss a class action lawsuit alleging a years-long, multi-prong fraud by an engineering and construction company that did a risky merger, delayed massive write-downs, and declared bankruptcy.  Matt led the case through discovery, securing court orders that required defendants to review for production 1.25 million+ documents identified via plaintiff-authored search terms on plaintiff-selected custodians, as a prelude to production of 450,000+ defense and third party documents and 40 party and non-party fact depositions.  Matt secured an order partially certifying the class in June 2024, which both sides cross-appealed to the Fifth Circuit.
- In *Ramos v. Comerica, Inc.*, No. 2:23-cv-06843-SB-JPR (C.D. Cal.), securities class action claims arose from a bank's statements regarding certain government contract programs and related operating and financial metrics.  After multiple fact-driven amendments and hard-fought litigation of two motions to dismiss, the case appears for appellate litigation before the Ninth Circuit.
- In *In re Miniso Group Holding Limited Securities Litigation*, No. CV-22-5815 (MR Wx) (S.D.N.Y.), securities class action claims arose from a China-based retail company's U.S. IPO.  A further amended complaint will be filed after the court resolves a pending reconsideration motion regarding its dismiss rulings.
- In *Chun v. Fluor Corp., et al*., No. 3:18-cv-01338-S (N.D. Tex.), Matt served as co-lead counsel in hard-fought litigation concerning underperforming, large-scale, fixed-bid projects through two motions to dismiss.  A months-long mediation and negotiation process resulted in a court-approved $33 million settlement, which was a 37.5% recovery of the upheld claim value.
- In *Kendall v. Odonate Therapeutics, Inc., et al.*, No. 3:20-01828-H-LL (S.D. Cal.), Matt successfully opposed a motion to dismiss a securities lawsuit arising from a pharmaceuticals company's failure to advance its lead drug candidate to FDA approval.  Notably, the court held that defendants' scienter (intent) was sufficiently pled, even though they bought, rather than sold, company stock during the period of alleged fraud.  A successful mediation resulted in a court-approved $12.75 million settlement.
- In *In re BP p.l.c. Securities Litigation*, No. 4:10-md-2185 (S.D. Tex.), where the court praised the "uniformly excellent" "quality of lawyering," Matt spearheaded lawsuits over BP's Gulf of Mexico oil spill by 125+ global institutional investors.  Over 9 years, he successfully opposed three motions to dismiss, oversaw e-discovery of 1.75 million documents, led the Plaintiffs Steering Committee, was

the sole interface with BP and the Court, and secured some of the Firm's most ground-breaking rulings.  In a ruling of first impression, he successfully argued that investors asserted viable English law "holder claims" for losses due to retention of already-owned shares in reliance on a fraud, a theory barred under U.S. law since *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975).  He successfully argued against *forum non conveniens* (wrong forum) dismissal of 80+ global institutions' lawsuits - the first ruling after *Morrison v. Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869 (2010), to permit foreign investors to pursue in U.S. court their foreign law claims for losses in a foreign company's securities traded on a foreign exchange.   He successfully argued that the U.S. Securities Litigation Uniform Standards Act of 1998 (SLUSA), which extinguishes U.S. state law claims in deference to the U.S. federal law, should not extend to the foreign law claims of U.S. and foreign investors, a ruling that saved those claims from dismissal where U.S. federal law afforded no remedy after *Morrison*.  In 2021, Matt achieved mediator-assisted, confidential, favorable monetary settlement for all 35 Firm clients including public and private pension funds, money management firms, partnerships, and trusts from the U.S., Canada, the U.K., France, the Netherlands, and Australia.  Notably, seven of these plaintiffs were Matt's institutional clients from the U.S., U.K., and Canada.

- In *In re Toronto-Dominion Bank Securities Litigation*, No. 1:17-cv-01735 (D.N.J.), Matt pled a multi-year fraud arising at one of Canada's largest banks, based on extensive statements by former employees detailing underlying retail banking misconduct.  Matt persuaded the court to reject a motion to dismiss in an order noteworthy because it validated the scienter (intent) pleading despite no witness speaking directly to the individual defendants' state of mind.  The court approved a $13.25 million class-wide settlement achieved after mediation.
- In *Perez v. Higher One Holdings, Inc., et al*., No. 14-cv-00755-AWT (D. Conn.), Matt persuaded the court, after an initial dismissal, to uphold a second amended complaint asserting five threads of fraud by an education funding company and its founders and to approve a $7.5 million class-wide settlement.  Notably, the court held that the company's reported financial results violated SEC Regulation S-K, Item 303, for failure to disclose known trends and impacts from underlying misconduct – a rare ruling absent an accounting restatement.
- In *In re KaloBios Pharmaceuticals, Inc. Securities Litigation*, No. 15-cv-05841 (N.D. Cal.), a lawsuit against a bankrupt drug company and its jailed ex-CEO, Matt negotiated two class-wide settlements totaling $3.25+ million, including cash payments and stock from the company, that were approved by the bankruptcy and district courts.
- In *In re Silvercorp Metals, Inc. Securities Litigation*, No. 1:12-cv-09456 (S.D.N.Y.), Matt worked with mining, accounting, damages, and market efficiency experts to survive a motion to dismiss by a Canadian company with mining operations in China and NYSE-traded stock.  In approving the $14 million settlement achieved after two mediations, Judge Rakoff called the case "unusually complex," given the technical nature of mining metrics, the need to compare mining standards in Canada, China, and the U.S., and the volume of Chinese-language evidence.

Matt was also on the multi-firm team that represented commercial real estate investors against the Empire State Building's long-term lessees/operators regarding a consolidation, REIT formation, and IPO in *In re Empire State Realty Trust, Inc. Investor Litig*., No. 650607/2012 (N.Y. Sup. Ct.), which was resolve for a $55 million cash/securities settlement fund, a $100 million tax benefit from restructured terms, remedial disclosures, and deal protections.

Matt regularly counsels institutional investors, foreign and domestic, regarding pending or potential complex litigation in the U.S.  He is skilled at identifying potential securities frauds early, regularly

providing clients with the first opportunity to evaluate and pursue their claims, and he has worked extensively with outside investment management firms retained by clients to identify a winning set of supporting evidence.  When litigation is filed, he fully oversees its conduct and resolution, counseling clients throughout every step of the process, while handling all significant motions and courtroom arguments.  These skills have enabled him to sign numerous institutional clients for litigation and portfolio monitoring services, including public and private pension plans, investment management firms and sponsored investment vehicles, from both the U.S. and abroad.  Matt's clients have spearheaded the Firm's litigation efforts in the *BP*, *Fluor*, *McDermott*, *Emergent*, *Miniso*, and *Comerica* litigations discussed above.

Matt takes great pride in representing union clients.  He got his own union card as a teenager (United Food & Commercial Workers International Union, Local 371), following in the footsteps of his grandfather (International Brotherhood of Teamsters, Local 560).

Before joining Pomerantz, Matt worked at a large full-service firm then plaintiff-side boutique firms in Boston and Connecticut, litigating complex business disputes and securities, consumer, and employment class actions.  His pro bono work included securing Social Security benefits for a veteran with non-service-related disabilities.

Matt graduated from the Georgetown University Law Center in 1999, where he made the Dean's List. He graduated from Wesleyan University in 1995, and among his various volunteer activities, he served as President of the Wesleyan Lawyers Association from 2017-2020.

His has been named a *Super Lawyers®* "Top-Rated Securities Litigation Attorney" (2016-present), *Lawdragon* Leading Plaintiff Financial Lawyer (2019-present), *Benchmark* Litigation Star (2021-2023), *Legal 500* Recommended Securities Litigator (2016, 2021), *American Lawyer* Top Rated Litigator (2023) and Northeast Trailblazer (2021), and a *Martindale-Hubbell* AV® Preeminent™ peer-rated attorney (2014-present).  His advocacy has been covered by Bloomberg, Law360, the *Houston Chronicle*, the *Hartford Business Journal*, and other outlets.

He is a member of the Bars the Supreme Court of the United States; the State of New York; the State of Connecticut; the Commonwealth of Massachusetts; the Second and Ninth Circuit Courts of Appeals; and the United States District Courts for the Southern and Eastern District of New York, Connecticut, Massachusetts, the Northern District of Illinois, the Eastern District of Wisconsin, and the Southern District of Texas.  He is regularly admitted *pro hac vice* in state and federal courts nationwide.

**Austin P. Van**

Austin focuses his practice on securities class actions and other high-profile litigations.  Austin has repeatedly been recognized by Lawdragon as one of the top 500 Leading Plaintiff Financial Lawyers, and has been named as a Recommended Lawyer by The Legal 500. From 2018–2024, Austin has been honored as a Super Lawyers® Rising Star.  In 2020, Austin was named an MVP in Securities Litigation by Law360, as part of an "elite slate of attorneys [who] have distinguished themselves from their peers by

securing hard-earned successes in high-stakes litigation, complex global matters and record-breaking deals."  Only up to six attorneys nationwide are selected each year as MVPs in Securities Litigation. Austin was named to Benchmark Litigation's "40 and Under Hotlist" in 2020 and 2021.

Austin represents clients in some of the largest class actions in the country:

- Currently represents institutional investor lead plaintiffs in a shareholder securities class action against social media and technology behemoth Meta Platforms, Inc.  The complaint alleges that Meta misrepresented the impact of privacy changes in Apple's iOS operating system on Meta's core advertising business.  Seeks to recover damages amounting to hundreds of billions of dollars on behalf of global investors resulting from the 26% drop in Meta's share price following the revelation of the true impact of these privacy changes—in absolute terms, the largest one-day drop of a publicly traded company in U.S. history.  (N.D. Cal. 2024)
- Currently represents plaintiffs in a putative nationwide consumer class action against Apple, Inc., maker of the iPhone and other technology products.  The complaint alleges that Apple violated federal and state computer intrusion statutes and state consumer protection laws by tricking iPhone users to install updates to their older iPhone devices that effectively crippled them.  Successfully argued and defeated defendants 'motion to dismiss before District Judge Casey Pitts.  (N.D. Cal. 2024)
- Currently represents lead plaintiffs in a securities class action against Hawaiian Electric Company and its officers.  The complaint alleges that Hawaiian Electric misrepresented the actions it was taking to mitigate wildfire risk, and so concealed the extent of the unmitigated risk of wildfire from investors, who suffered billions of dollars in losses when this risk materialized in the 2023 Maui wildfire disaster in Lahaina.  (N.D. Cal. 2023)
- Currently represents lead plaintiffs in a securities class action against GSX Techedu, n/k/a Gaotu Techedu, a Chinese online education company.  Complaint alleges that GSX falsified half of its student enrollment and revenues and caused investors billions of dollars in losses when the truth became known.  Successfully defeated defendants 'motion to dismiss.  (D.N.J. 2023)
- Represented institutional investor as lead plaintiff in a securities class action against ATI Physical Therapy and its SPAC acquirer.  The complaint alleged that ATI misrepresented that its attrition rate was low, when in fact the rate was twice the industry average.  Successfully defeated defendants ' motion to dismiss and proceeded to discovery on all claims under Section 10(b), Section 14 and Section 20(a) of the Exchange Act to proceed.  Settled for $24.9 million.  (N.D. Ill. 2023)
- Represented lead plaintiffs in a securities class action against Citrix Systems, Inc. The complaint alleged that defendants violated Section 14 of the Exchange Act by soliciting votes to approve the sale of Citrix based on a proxy that concealed from shareholders accelerating SaaS ARR, a key business trend, so Citrix paid shareholders less for their shares than was fair.  Successfully argued and defeated defendants 'motion to dismiss before District Judge Rodolfo Ruiz.  Settled case on favorable terms for $17.5 million. (S.D. Fl. 2024)
- Represented certified class in a securities class action against TechnipFMC, a Fortune 500 oil and gas services company.  Plaintiffs alleged TechnipFMC overstated its net income in its initial registration statement due to its use of incorrect foreign exchange rates.  Successfully argued and defeated defendants 'motion to dismiss, argued and won lead plaintiffs' motion for class certification, and argued and defeated defendants 'motion for summary judgment, all before District Judge Alfred Bennett.  Led the class through complete preparations for trial.  The case settled for approximately $20 million.  (S.D. Tex. 2020)

- Represented lead plaintiffs in a securities class action against electric vehicle manufacturer Faraday Future Intelligent Electric, Inc. and its SPAC acquirer, Property Solutions Acquisition Corp. The complaint alleged that defendants violated Sections 10(b) and 14(a) of the Exchange Act and Section 11 of the Securities Act by misrepresenting the level of committed reservations Faraday had for its flagship car in SEC filings, including in a proxy statement for the de-SPAC acquisition of Faraday. Successfully argued and defeated defendants 'motion to dismiss before District Judge Christina Snyder and defeated defendants' motion for reconsideration. Settled case on favorable terms for $7.5 million. (C.D. Cal. 2021)
- Represented lead plaintiffs in a securities class action against Rockwell Medical, Inc. Based on the strength of the complaint, at a pre-motion conference for defendants 'motion to dismiss, District Senior Judge Allyn R. Ross stated that" based on what I have reviewed, it is virtually inconceivable to me that the consolidated amended complaint could possibly be dismissed on a Rule 12(b)(6) motion or a Rule 9(b) motion" and that any proposed motion to dismiss "would be a complete waste of time and resources of counsel, of the clients 'money, and my time." Defendants declined even to move to dismiss the complaint and settled the case $3.7 million—a highly favorable settlement for the class. (E.D.N.Y. 2019)
- Represented lead plaintiffs in a securities class action against Franklin Wireless Inc., a maker of wireless routers and communications devices. Based on the strength of the complaint, defendants declined to move to dismiss. Successfully obtained class certification and settled the matter on terms highly favorable for the class for $2.4 million. (S.D. Cal. 2021)

Austin received a J.D. from Yale Law School, where he was an editor of the Yale Law Journal and the Yale Journal of International Law. He has a B.A. from Yale University and an M.Sc. from the London School of Economics. Prior to joining Pomerantz, Austin worked as an associate at Cravath, Swaine & Moore LLP.

Austin is admitted to practice law in New York and New Jersey, the United States District Courts for the Southern and Eastern Districts of New York, the District of New Jersey, the Northern District of Illinois, the Southern District of Texas, the United States Courts of Appeals for the First, Second and Ninth Circuits, and the United States Supreme Court.

## Murielle Steven Walsh

Murielle Steven Walsh joined the Firm in 1998 and was elevated to Partner in 2007. In 2024 Murielle was named a Titan of the Plaintiffs Bar by *Law360*, and in 2022 she was selected to participate on the publication's Securities Editorial Board. She was named a 2020 Plaintiffs' Lawyer Trailblazer by the *National Law Journal*, an award created to "honor a handful of individuals from each practice area that are truly agents of change" and was also honored as a 2020 Plaintiffs' Trailblazer by the *New York Law Journal*. Murielle was honored in 2019, 2020 and 2021 as a Super Lawyers® "Top-Rated Securities Litigation Attorney," a recognition bestowed on 5% of eligible attorneys in the New York Metro area. Lawdragon named her a Top Plaintiffs' Financial Lawyer in 2019 and 2020.

During her career at Pomerantz, Murielle has prosecuted highly successful securities class action and corporate governance cases. She was one of the lead attorneys litigating *In re Livent Noteholders' Securities Litigation*, a securities class action in which she obtained a $36 million judgment against the company's top officers, a ruling which was upheld by the Second Circuit on appeal. Murielle was also part of the team litigating *EBC I v. Goldman Sachs*, where the Firm obtained a landmark ruling from the

New York Court of Appeals, that underwriters may owe fiduciary duties to their issuer clients in the context of a firm-commitment underwriting of an initial public offering.

Murielle led Firm's high-profile securities class action against Wynn Resorts Ltd., where the Firm served as lead counsel. The litigation stemmed from the company's alleged cover-up of a prolonged pattern of sexual misconduct by its founder and former CEO, billionaire casino mogul Stephen Wynn. In January 2025, Murielle secured final approval of a $70 million settlement on behalf of defrauded investors. Wynn is widely regarded as the first high-profile executive whose misconduct was exposed by the #MeToo movement. *Ferris v. Wynn Resorts Ltd.*, No. 18-cv-479 (D. Nev.)

In a securities class action against Ormat Technologies, Inc., Murielle achieved a $3.75 million settlement on behalf of defrauded investors in January 2021. Ormat's securities are dual-listed on the NYSE and the Tel Aviv Stock Exchange. Murielle persuaded the district court in exercise supplemental jurisdiction in order to apply U.S. securities law to the claims in the case, regardless of where investors purchased their securities.

Murielle led the Firm's ground-breaking litigation that arose from the popular Pokémon Go game, in which Pomerantz was lead counsel. Pokémon Go is an "augmented reality" game in which players use their smart phones to "catch" Pokémon in real-world surroundings. GPS coordinates provided by defendants to gamers included directing the public to private property without the owners' permission, amounting to an alleged mass nuisance. *In re Pokémon Go Nuisance*, No. 3:16-cv-04300 (N.D. Cal.)

Murielle was co-lead counsel in *Thorpe v. Walter Investment Management Corp.*, No. 14-cv-20880 (S.D. Fla.), a securities fraud class action challenging the defendants' representations that their lending activities were regulatory-compliant, when in fact the company's key subsidiary engaged in rampant violations of federal consumer financial protection laws, subjecting it to various government investigations and enforcement action by the CFPB and FTC. In 2016, the Firm obtained a $24 million settlement on behalf of the class. She was also co-lead counsel in *Robb v. Fitbit, Inc.*, No. 16-cv-00151 (N.D. Cal.), a securities class action alleging that the defendants misrepresented that their key product delivered "highly accurate" heart rate readings when in fact their technology did not consistently deliver accurate readings during exercise and its inaccuracy posed serious health risks to users of Fitbit's products. The Firm obtained a $33 million settlement on behalf of the investor class in this action.

In 2018 Murielle, along with then-Senior Partner Jeremy Lieberman, achieved a $3.3 million settlement for the Class in the Firm's case against Corinthian Colleges, one of the largest for-profit college systems in the country, for alleged misrepresentations about its job placement rates, compliance with applicable regulations, and enrollment statistics. Pomerantz prevailed in the motion to dismiss the proceedings, a particularly noteworthy victory because Chief Judge George King of the Central District of California had dismissed two prior lawsuits against Corinthian with similar allegations. *Erickson v. Corinthian Colleges, Inc.*, No. 2:13-cv-07466 (C.D. Cal.).

Murielle serves as a member and on the Executive Committee of the Board of Trustees of the non-profit organization Court Appointed Special Advocates for Children ("CASA") of Monmouth County. She also served on the Honorary Steering Committee of Equal Rights Advocates ("ERA"), which focuses on and discusses specific issues that women face in the legal profession. ERA is an organization that protects and expands economic and educational access and opportunities for women and girls. In the past, Murielle served as a member of the editorial board for Class Action Reports, a Solicitor for the Legal Aid

Associates Campaign, and has been involved in political asylum work with the Association of the Bar of the City of New York.

Murielle serves on the Firm's Anti-Harassment and Discrimination Committee.

Murielle graduated *cum laude* from New York Law School in 1996, where she was the recipient of the Irving Mariash Scholarship. During law school, Murielle interned with the Kings County District Attorney and worked within the mergers and acquisitions group of Sullivan & Cromwell.

Murielle is admitted to practice in New York; the United States District Court for the Southern District of New York; and the United States Courts of Appeals for the Second and Sixth Circuits.

## Tamar A. Weinrib

Tamar A. Weinrib joined Pomerantz in 2008. She was Of Counsel to the Firm from 2014 through 2018 and was elevated to Partner in 2019. In 2020, The Legal 500 honored her as a Next Generation Partner. Tamar was named a 2018 Rising Star under 40 years of age by Law360, a prestigious honor awarded to a select few "top litigators and dealmakers practicing at a level usually seen from veteran attorneys." Tamar has been recognized by Super Lawyers® as a 2021 "Top-Rated Securities Litigation Attorney;" she was honored as a New York Metro Rising Star every year from 2014 to 2019.

In 2019, Tamar and Managing Partner Jeremy Lieberman achieved a $27 million settlement for the Class in *Strougo v. Barclays PLC*, a high-profile securities class action in which Pomerantz was Lead Counsel. Plaintiffs alleged that Barclays PLC misled institutional investor clients about the extent of the banking giant's use of so-called "dark pool" trading systems. This case turned on the duty of integrity owed by Barclays to its clients. In November 2016, Tamar and Jeremy achieved precedent-setting victories for investors, when the Second Circuit Court of Appeals held that direct evidence of price impact is not always necessary to demonstrate market efficiency to invoke the presumption of reliance, and that defendants seeking to rebut the presumption of reliance must do so by a preponderance of the evidence rather than merely meeting a burden of production. In 2018, Tamar successfully opposed Defendants' petition to the Supreme Court for a writ of certiorari.

In approving the settlement in *Strougo v. Barclays PLC* in June 2019, Judge Victor Marrero of the Southern District of New York stated:

> Let me thank counsel on both sides for the extraordinary work both sides did in bringing this matter to a reasonable conclusion. As the parties have indicated, the matter was intensely litigated, but it was done in the most extraordinary fashion with cooperation, collaboration, and high levels of professionalism on both sides, so I thank you.

Tamar headed the litigation of *In re Delcath Systems, Inc. Securities Litigation*, in which Pomerantz achieved a settlement of $8,500,000 for the class. She successfully argued before the Second Circuit in *In re China North East Petroleum Securities Litigation,* to reverse the district court's dismissal of the defendants on scienter grounds.

Among other securities fraud class actions that Tamar led to successful settlements are *KB Partners I, L.P. v. Pain Therapeutics, Inc.* ($8,500,000); *New Oriental Education & Technology Group, Inc.* ($3,150,000); and *Whiteley v. Zynerba Pharmaceuticals, Inc. et al.* ($4,000,000).

Before coming to Pomerantz, Tamar had over three years of experience as a litigation associate in the New York office of Clifford Chance US LLP, where she focused on complex commercial litigation. Tamar has successfully tried pro bono cases, including two criminal appeals and a housing dispute filed with the Human Rights Commission.

Tamar graduated from Fordham University School of Law in 2004 and while there, won awards for successfully competing in and coaching Moot Court competitions.

Tamar is admitted to practice in New York; the United States District Courts for the Southern and Eastern Districts of New York; and the United States Courts of Appeals for the Second, Third, Fourth, and Ninth Circuits.

## Michael J. Wernke

Michael J. Wernke joined Pomerantz as Of Counsel in 2014 and was elevated to Partner in 2015. He was named a 2020 Plaintiffs' Lawyer Trailblazer by the *National Law Journal*, an award created to "honor a handful of individuals from each practice area that are truly agents of change."

Michael, along with Managing Partner Jeremy Lieberman, led the litigation in *Pirnik v. Fiat Chrysler Automobiles N.V. et al.*, No. 1:15-cv-07199-JMF (S.D.N.Y), in which the Firm, as Lead Counsel, achieved a $110 million settlement for the class. This high-profile securities class action alleges that Fiat Chrysler concealed from investors that it improperly outfitted its diesel vehicles with "defeat device" software designed to cheat NOx emissions regulations in the U.S. and Europe, and that regulators had accused Fiat Chrysler of violating the emissions regulations. The *Fiat Chrysler* recovery provides the class of investors with as much as 20% of recoverable damages—an excellent result when compared to historical statistics in class action settlements, where typical recoveries for cases of this size are between 1.6% and 3.3%.

Michael led the securities class action *Zwick Partners, LP v. Quorum Health Corp., et al.*, No. 3:16-cv-2475, achieving a settlement of $18 million for the class in June 2020. The settlement represented between 12.7% and 42.9% of estimated recoverable damages. Plaintiff alleged that defendants misrepresented to investors the poor prospects of hospitals that the parent company spun off into a stand-alone company. In defeating defendants' motions to dismiss the complaint, Michael successfully argued that company from which Quorum was spun off was a "maker" of the false statements even though all the alleged false statements concerned only Quorum's financials and the class involved only purchasers of Quorum's common stock. This was a tremendous victory for plaintiffs, as cases alleging false statements of goodwill notoriously struggle to survive motions to dismiss.

Along with Managing Partner Jeremy Lieberman, Michael leads the Firm's individual action against pharmaceutical giant Teva Pharmaceutical Industries Ltd. and Teva Pharmaceuticals USA, Inc. (together, "Teva"), and certain of Teva's current and former employees and officers, relating to alleged anticompetitive practices in Teva's sales of generic drugs. Teva is a dual-listed company; the Firm represents several Israeli institutional investors who purchased Teva shares on the Tel Aviv Stock

Exchange. In early 2021, Pomerantz achieved a major victory for global investors when the district court agreed to exercise supplemental jurisdiction over the Israeli law claims. *Clal Insurance Company Ltd. v. Teva Pharmaceutical Industries Ltd.*

In December 2018, Michael, along with Pomerantz Managing Partner Jeremy A. Lieberman, secured a $31 million partial settlement with three defendants in *In re Libor Based Financial Instruments Antitrust Litigation*, a closely watched multi-district litigation, which concerns the LIBOR rigging scandal.

In October 2018, Michael secured a $15 million settlement in *In re Symbol Technologies, Inc. Securities Litigation*, No. 2:05-cv-03923-DRH-AKT (E.D.N.Y.), a securities class action that alleges that, following an accounting fraud by prior management, Symbol's management misled investors about the state of its internal controls and the Company's ability to forecast revenues.

He was Lead Counsel in *Thomas v. Magnachip Semiconductor Corp.*, in which he achieved a $23.5 million partial settlement with certain defendants, securing the settlement despite an ongoing investigation by the Securities and Exchange Commission and shareholder derivative actions. He played a leading role in *In re Lumber Liquidators, Inc. Securities Litigation*, in which Pomerantz, as Co-Lead Counsel, achieved a settlement of $26 million in cash and 1,000,000 shares of Lumber Liquidators common stock for the Class. Michael also secured a $7 million settlement (over 30% of the likely recoverable damages) in the securities class action *Todd v. STAAR Surgical Company, et al.*, No. 14-cv-05263-MWF-RZ (C.D. Cal.), which alleged that STAAR concealed from investors violations of FDA regulations that threatened the approval of STAAR's long awaited new product.

In the securities class action *In re Atossa Genetics, Inc. Securities Litigation*, No. 13-cv-01836-RSM (W.D. Wash.), Michael secured a decision by the Ninth Circuit Court of Appeals that reversed the district court's dismissal of the complaint. The Ninth Circuit held that the CEO's public statements that the company's flagship product had been approved by the FDA were misleading despite the fact that the company's previously filed registration statement stated that that the product did not, at that time, require FDA approval.

During the nine years prior to coming to Pomerantz, Michael was a litigator with Cahill Gordon & Reindel LLP, with his primary focus in the securities defense arena, where he represented multinational financial institutions and corporations, playing key roles in two of only a handful of securities class actions to go to jury verdict since the passage of the PSLRA.

In 2020 and 2021, Michael was honored as a Super Lawyers® "Top Rated Securities Litigation Attorney." In 2014 and 2015, he was recognized as a Super Lawyers® New York Metro Rising Star.

Michael received his J.D. from Harvard Law School in 2004. He also holds a B.S. in Mathematics and a B.A. in Political Science from Ohio State University, where he graduated *summa cum laude*.

He serves on the Firm's Anti-Harassment and Discrimination Committee.

Michael is admitted to practice in New York; the United States District Court for the Southern District of New York; and the United States Supreme Court.

## Senior Counsel

### Stanley M. Grossman

Stanley M. Grossman, Senior Counsel, is a former Managing Partner of Pomerantz. Widely recognized as a leader in the plaintiffs' securities bar, he was honored in 2020 with a Lifetime Achievement award by the *New York Law Journal*. Martindale Hubbell awarded Stan its 2021 AV Preeminent Rating®, "given to attorneys who are ranked at the highest level of professional excellence for their legal expertise, communication skills, and ethical standards by their peers." Stan was selected by *Super Lawyers*® as an outstanding attorney in the United States for the years 2006 through 2020 and was featured in the *New York Law Journal* article *Top Litigators in Securities Field—A Who's Who of City's Leading Courtroom Combatants*. Lawdragon named Stan a Leading Plaintiff Financial Lawyer in 2019 and 2020, and in 2021, he was inducted into the Lawdragon Hall of Fame. In 2013, Brooklyn Law School honored Stan as an Alumnus of the Year.

Stan has primarily represented plaintiffs in securities and antitrust class actions, including many of those listed in the Firm biography. *See, e.g., Ross v. Bernhard*, 396 U.S. 531 (1970); *Rosenfeld v. Black*, 445 F.2d 137 (2d Cir. 1971); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433 (9th Cir. 1987); and *In re Salomon Bros. Treasury Litig.*, 9 F.3d 230 (2d Cir. 1993). In 2008 he appeared before the United States Supreme Court to argue that scheme liability is actionable under Section 10(b) and Rule 10b-5(a) and (c). *See StoneRidge Inv. Partners, LLC v. Sci.-Atlanta*, *Inc.,* No. 06-43 (2008). Other cases where he was the Lead or Co-Lead Counsel include: *In re Salomon Brothers Treasury Litigation*, No. 91 Civ. 5471 (S.D.N.Y. 1994) ($100 million cash recovery); *In re First Executive Corporation Securities Litigation*, No. CV-89-7135 (C.D. Cal. 1994) ($100 million settlement); and *In re Sorbates Direct Purchaser Antitrust Litigation*, No. C98-4886 (N.D. Cal. 2000) (over $80 million settlement for the class).

In 1992, Senior Judge Milton Pollack of the Southern District of New York appointed Stan to the Executive Committee of counsel charged with allocating to claimants hundreds of millions of dollars obtained in settlements with Drexel Burnham & Co. and Michael Milken.

Many courts have acknowledged the high quality of legal representation provided to investors by Stan. In *Gartenberg v. Merrill Lynch Asset Management, Inc.*, No. 79 Civ. 3123 (S.D.N.Y.), where Stan was lead trial counsel for plaintiff, Judge Pollack noted at the completion of the trial:

> [I] can fairly say, having remained abreast of the law on the factual and legal matters that have been presented, that I know of no case that has been better presented so as to give the Court an opportunity to reach a determination, for which the court thanks you.

Stan was also the lead trial attorney in *Rauch v. Bilzerian* (N.J. Super. Ct.) (directors owed the same duty of loyalty to preferred shareholders as common shareholders in a corporate takeover), where the court described the Pomerantz team as "exceptionally competent counsel." He headed the six week trial on liability in *Walsh v. Northrop Grumman* (E.D.N.Y.) (a securities and ERISA class action arising from Northrop's takeover of Grumman), after which a substantial settlement was reached.

Stan frequently speaks at law schools and professional organizations. In 2010, he was a panelist on *Securities Law: Primary Liability for Secondary Actors*, sponsored by the Federal Bar Council, and he

presented *Silence Is Golden—Until It Is Deadly: The Fiduciary's Duty to Disclose*, at the Institute of American and Talmudic Law. In 2009, Stan was a panelist on a Practicing Law Institute "Hot Topic Briefing" entitled StoneRidge—*Is There Scheme Liability or Not?*

Stan served on former New York State Comptroller Carl McCall's Advisory Committee for the NYSE Task Force on corporate governance. He is a former president of NASCAT. During his tenure at NASCAT, he represented the organization in meetings with the Chairman of the Securities and Exchange Commission and before members of Congress and of the Executive Branch concerning legislation that became the PSLRA.

Stan served for three years on the New York City Bar Association's Committee on Ethics, as well as on the Association's Judiciary Committee. He is actively involved in civic affairs. He headed a task force on behalf of the Association, which, after a wide-ranging investigation, made recommendations for the future of the City University of New York. He was formerly on the board of the Appleseed Foundation, a national public advocacy group.

Stan is admitted to practice in New York; the United States District Courts for the Southern and Eastern Districts of New York, Central District of California, Eastern District of Wisconsin, District of Arizona, District of Colorado; the United States Courts of Appeals for the First, Second, Third, Ninth and Eleventh Circuits; and the United States Supreme Court.

### Marc I. Gross

Marc I. Gross is Senior Counsel at Pomerantz LLP, where he has litigated securities fraud class actions for over four decades, serving as its Managing Partner from 2009 to 2016. His major lawsuits include SAC Capital (Steven Cohen—insider trading); Chesapeake Energy (Aubrey McClendon—insider bail out); Citibank (analyst Jack Grubman—false AT&T stock recommendation); and Charter Communications (Paul Allen—accounting fraud). He also litigated market efficiency issues in the firm's landmark $3 billion recovery in *Petrobras*.

Marc has also served as President of the Institute of Law and Economic Policy ("ILEP"), which has organized symposiums each year where leading academics have presented papers on securities law and consumer protection issues. These papers have been cited in over 200 cases, including several in the United States Supreme Court. http://www.ilep.org.

Marc has addressed numerous forums in the United States on shareholder-related issues, including ILEP; Loyola-Chicago School of Law's Institute for Investor Protection Conference; the National Conference on Public Employee Retirement Systems' ("NCPERS") Legislative Conferences; PLI conferences on Current Trends in Securities Law; a panel entitled *Enhancing Consistency and Predictability in Applying Fraud-on-the-Market Theory*, sponsored by the Duke Law School Center for Judicial Studies, as well as securities law students at NYU and Georgetown Law schools.

Among other articles, Marc authored *Cooking Books? The Valuation Treadmill*, 50 Sec. Reg. L. Jrl. 363 (2022); *Reputation and Securities Litigation*, 47 Sec. Reg. l Jrl. 99 (2019) *Back to Basic(s): Common Sense Trumps Econometrics*, N.Y.L.J. (Jan. 8, 2018) (with Jeremy Lieberman); and *Class Certification in a Post-Halliburton II World*, 46 Loyola-Chicago L.J. 485 (2015).

Marc was honored in 2022 by T'ruah, the Rabbinic Call to Human Rights, for his pro bono work in support of the Coalition of Immokalee Workers in Florida in their battle for recognition by Wendy's Restaurants, and recently joined the Board of Mainchance, a homeless drop-in shelter operating in Manhattan.

Marc is a graduate of NYU Law '76 and Columbia College '73.

**Patrick V. Dahlstrom**

Patrick Dahlstrom joined Pomerantz as an associate in 1991 and was elevated to Partner in January 1996. He served as Co-Managing Partner with Jeremy Lieberman in 2017 and 2018 and is now Senior Counsel. Patrick heads the Firm's Chicago office. He was honored as a Super Lawyers® "Top-Rated Securities Litigation Attorney" from 2018–2021 in both Securities Litigation and Appellate matters. In 2021, Patrick was inducted into the Lawdragon Hall of Fame.

Patrick, a member of the Firm's Institutional Investor Practice and New Case Groups, has extensive experience litigating cases under the PSLRA. He led *In re Comverse Technology, Inc. Securities Litigation*, No. 06-CV-1825 (E.D.N.Y.), in which the Firm, as Lead Counsel, recovered a $225 million settlement for the Class—the second-highest ever for a case involving back-dating options, and one of the largest recoveries ever from an individual officer-defendant, the company's founder and former CEO. In *Comverse*, the Firm obtained an important clarification of how courts calculate the "largest financial interest" in connection with the selection of a Lead Plaintiff, in a manner consistent with *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005). Judge Garaufis, in approving the settlement, lauded Pomerantz: "The court also notes that, throughout this litigation, it has been impressed by Lead Counsel's acumen and diligence. The briefing has been thorough, clear, and convincing, and . . . Lead Counsel has not taken short cuts or relaxed its efforts at any stage of the litigation."

In *DeMarco v. Robertson Stephens, Inc.*, 228 F.R.D. 468 (S.D.N.Y. 2005), Patrick obtained the first class certification in a federal securities case involving fraud by analysts.

Patrick's extensive experience in litigation under the PSLRA has made him an expert not only at making compelling arguments on behalf of Pomerantz's clients for Lead Plaintiff status, but also in discerning weaknesses of competing candidates. *In re American Italian Pasta Co. Securities Litigation* and *Comverse* are the most recent examples of his success in getting our clients appointed sole Lead Plaintiff despite competing motions by numerous impressive institutional clients.

Patrick was a member of the trial team in *In re ICN/Viratek Securities Litigation* (S.D.N.Y. 1997), which, after trial, settled for $14.5 million. Judge Wood praised the trial team: "[P]laintiffs counsel did a superb job here on behalf of the class . . . This was a very hard fought case. You had very able, superb opponents, and they put you to your task . . . The trial work was beautifully done and I believe very efficiently done."

Patrick's speaking engagements include interviews by NBC and the CBC regarding securities class actions, and among others, a presentation at the November 2009 State Association of County Retirement Systems Fall Conference as the featured speaker at the Board Chair/Vice Chair Session entitled: "Cleaning Up After the 100 Year Storm. How trustees can protect assets and recover losses

following the burst of the housing and financial bubbles."

Patrick is a 1987 graduate of the Washington College of Law at American University in Washington, D.C., where he was a Dean's Fellow, Editor in Chief of the *Administrative Law Journal*, a member of the Moot Court Board representing Washington College of Law in the New York County Bar Association's Antitrust Moot Court Competition, and a member of the Vietnam Veterans of America Legal Services/Public Interest Law Clinic. Upon graduating, Patrick served as the Pro Se Staff Attorney for the United States District Court for the Eastern District of New York and was a law clerk to the Honorable Joan M. Azrack, United States Magistrate Judge.

Patrick is admitted to practice in New York and Illinois; the United States District Courts for the Southern and Eastern Districts of New York, Northern District of Illinois, Northern District of Indiana, Eastern District of Wisconsin, District of Colorado, and Western District of Pennsylvania; the United States Courts of Appeals for the First, Fourth, Sixth, Seventh, Eighth, and Ninth Circuits; and the United States Supreme Court.

## Of Counsel

### Samuel J. Adams

Samuel J. Adams became an Associate at Pomerantz in January 2012 and was elevated to Of Counsel to the Firm in 2021. He has been recognized as a Super Lawyers® "Rising Star" every year from 2015 through 2021.

Sam focuses his practice on corporate governance litigation and has served as a member of the litigation team in numerous actions that concluded in successful resolutions for stockholders. He was an integral member of the litigation team that secured a $5.6 million settlement on behalf of a class of shareholders of Physicians Formula Holdings, Inc. following an ignored merger offer. *In re Physicians Formula Holdings, Inc. S'holder Litig.*, C.A. No. 7794-VCL (Del. Ch. Ct.). Sam was also instrumental in achieving a settlement in *Strougo v. Hollander*, C.A. No. 9770-CB (Del. Ch. Ct.) which provided for a 25% price increase for members of the class cashed out in the going-private transaction and established that fee-shifting bylaws adopted after a challenged transaction do not apply to stockholders affected by the transaction. Additionally, he was on the team of Pomerantz attorneys who obtained the elimination of stand-still provisions that allowed third parties to bid for Great Wolf Resorts, Inc., resulting in the emergence of a third-party bidder and approximately $94 million (57%) in additional merger consideration for Great Wolf shareholders. *In re Great Wolf Resorts, Inc. S'holder Litig.*, C.A. No. 7328-VCN (Del. Ch.).

Sam is a 2009 graduate of the University of Louisville Louis D. Brandeis School of Law. While in law school, he was a member of the National Health Law Moot Court Team. He also participated in the Louis D. Brandeis American Inn of Court.

Sam is admitted to practice in New York; the United States District Courts for the Southern, Northern, and Eastern Districts of New York and the Eastern District of Wisconsin; and the United States Court of Appeals for the Fifth Circuit.

## Ari Y. Basser

Ari Y. Basser joined Pomerantz as an associate in April 2019 and was elevated to Of Counsel in January 2022. He focuses his practice on strategic consumer litigation by representing consumers in unfair competition, fraud, false advertising, and auto defect actions that recover monetary and injunctive relief on behalf of class members while also advocating for important consumer rights. Ari has successfully prosecuted claims involving California's Unfair Competition Law, California's Consumers Legal Remedies Act, the Song-Beverly Consumer Warranty Act, and the Magnusson-Moss Warranty Act.

Prior to joining Pomerantz, Ari was an associate at major litigation law firms in Los Angeles. Ari also worked as a Law Clerk in the Economic Crimes Unit of the Santa Clara County Office of the District Attorney. Ari has litigated antitrust violations, product defect matters, and a variety of fraud and misrepresentation cases brought under state and federal consumer protection statutes involving unfair competition and false advertising. He has also been deputized in private attorneys general enforcement actions to recover civil penalties from corporations, on behalf of the State of California, for violations of the Labor Code.

Ari is a contributing author to the *Competition Law Journal*, the official publication of the Antitrust, UCL, and Privacy Section of the State Bar of California, where he has examined trends in antitrust litigation and the regulatory authority of the Federal Trade Commission.

Ari received dual degrees in Economics and Psychology from the University of California, San Diego in 2004. He earned his Juris Doctor in 2010 from Santa Clara University School of Law.

## Samantha Daniels

Samantha brings years of commercial litigation experience to the Pomerantz team, joining the Firm as Of Counsel in 2024.  Her practice involves representing aggrieved shareholders in securities litigation to recover losses across a number of industries, including pharma, technology, and entertainment.

Prior to joining Pomerantz, Samantha was an associate at Gibson, Dunn & Crutcher LLP, primarily in the firm's renowned appellate practice, representing highly visible clients in a range of issues from securities litigation, consumer deception, and labor and employment, to constitutional crises. Her former matters include resolving first impression questions of employment status for gig workers for Uber and Postmates, securing victory for Apple against allegations of consumer fraud regarding FaceTime, and helping win NML shareholders 2.1 billion in due Argentine bonds.

Samantha earned her law degree from the University of Chicago Law School where she published her student comment on consumer protection. Before that, Samantha studied at Cornell University in Ithaca, New York, earning degrees in Political Science and History.

## Cheryl D. Hamer

Cheryl D. Hamer joined Pomerantz in 2003 as an associate, served as a partner from 2007 to 2015 and is now Of Counsel to the Firm. She is based in San Diego.

Before joining Pomerantz, she served as counsel to nationally known securities class action law firms focusing on the protection of investors rights. In private practice for over 20 years, she has litigated, at both state and federal levels, Racketeer Influenced and Corrupt Organizations, Continuing Criminal Enterprise, death penalty and civil rights cases and grand jury representation. She has authored numerous criminal writs and appeals.

Cheryl was an Adjunct Professor at American University, Washington College of Law from 2010–2011 and served as a pro bono attorney for the Mid-Atlantic Innocence Project. She was an Adjunct Professor at Pace University, Dyson College of Arts and Sciences, Criminal Justice Program and The Graduate School of Public Administration from 1996–1998. She has served on numerous non-profit boards of directors, including Shelter From The Storm, the Native American Preparatory School and the Southern California Coalition on Battered Women, for which she received a community service award.

Cheryl has been a member of the Litigation and Individual Rights and Responsibilities Sections of the American Bar Association, the Corporation, Finance & Securities Law and Criminal Law and Individual Rights Sections of the District of Columbia Bar, the Litigation and International Law Sections of the California State Bar, and the National Association of Public Pension Attorneys (NAPPA) and represents the Firm as a member of the Council of Institutional Investors (CII), the National Association of State Treasurers (NAST), the National Conference on Public Employees Retirement Systems (NCPERS), the International Foundation of Employee Benefit Plans (IFEBP), the State Association of County Retirement Systems (SACRS), the California Association of Public Retirement Systems (CALAPRS) and The Association of Canadian Pension Management (ACPM/ACARR).

Cheryl is a 1973 graduate of Columbia University and a 1983 graduate of Lincoln University Law School. She studied tax law at Golden Gate University and holds a Certificate in Journalism from New York University and a Certificate in Photography: Images and Techniques from The University of California San Diego.

### Jonathan D. Park

Jonathan D. Park joined Pomerantz as Of Counsel in April 2022. Prior to joining Pomerantz, he was associated with a prominent plaintiff-side litigation firm, where he represented clients in securities and investment litigation. He is regularly recognized as a Super Lawyers® Rising Star.

Jonathan focuses his practice on securities litigation. He is currently pursuing claims against Twitter concerning its cybersecurity practices and user metrics. Jonathan was a key member of the litigation teams that obtained settlements in *Poirier v. Bakkt Holdings, Inc.* (E.D.N.Y.) and *Lako v. loanDepot, Inc.* (C.D. Cal.). Prior to joining Pomerantz, he was a member of the litigation team that obtained $19 million for the class in *In re Synchronoss Technologies, Inc. Securities Litigation*, and he represented investors in *In re JPMorgan Chase & Co. Securities Litigation*, which arose from the "London Whale" scandal and was settled for $150 million. He has also represented investors in opt-out securities actions against pharmaceutical manufacturers and other companies.

Jonathan also has experience representing investors in breach of contract actions. He was the primary associate representing institutional investors injured by the early redemption of bonds issued by CoBank, ACB and AgriBank, FCB. In the litigation against CoBank, the plaintiffs secured a summary judgment ruling on liability, and in the litigation against AgriBank, the plaintiffs defeated a motion to

dismiss, permitting the claims to proceed though the plaintiffs were beneficial owners and not record holders of the bonds at issue. Both cases were resolved on confidential terms.

At the New York City Bar Association, Jonathan has served on the Task Force on Puerto Rico, the New Lawyers Council, and the International Human Rights Committee. He also served on the board of his non-profit running club, the Dashing Whippets Running Team.

Jonathan earned his J.D. in 2013 from Fordham University School of Law, where he served on the school's Moot Court Board as the Editor of the Jessup International Law Competition Team. During law school, he was a Crowley Scholar in International Human Rights, received the Archibald R. Murray Public Service Award, and interned with a refugee law project in Cairo, Egypt. He received a B.A. in 2006 from Vassar College, where he majored in Africana Studies.

**Brian P. O'Connell**

Brian P. O'Connell joined Pomerantz as an associate in August 2021 and was elevated to Of Counsel in August 2024. Brian focuses his practice on securities and financial services litigation.

Brian leads some of the Firm's most important securities class actions, winning decisions that expand investor rights. Among these is a case against Ginkgo Bioworks ("Ginkgo"), a synthetic biology company that merged with a special purpose acquisition company ("SPAC"). The case alleges that Ginkgo made false and misleading statements about its revenue, customers and value before the merger. Brian recently reached a settlement agreement with Ginkgo defendants for $17.75 million, representing favorable recovery for the class of investors.

In March 2024, Brian survived a motion to dismiss another de-SPAC case against Grab Holdings, Inc., known as the Uber of Southeast Asia, giving the oral argument that sustained Section 11 of the Securities Act and Section 14(a) of the Securities Exchange Act claims. Brian also played an integral role in the litigation and settlement of three Pomerantz cases that recently reached final approval of settlement: telecommunications giant Sprint Corporation ($3.75 million), biopharmaceutical company Orphazyme A/S ($2.5 million), and energy and oil company Berry Corporation ($2.5 million).

Prior to joining Pomerantz in its Chicago office, Brian was an associate at Cafferty Clobes Meriwether & Sprengel LLP, where he specialized in antitrust and commodity futures litigation. Brian has successfully litigated complex class actions involving securities, as well as manipulation of futures and options contracts. Brian also previously worked at the Financial Regulatory Authority (FINRA) as a contractor focusing on options trading regulation. Following law school, Brian was a legal fellow at the chambers of Judge Marvin E. Aspen in the United States District Court for the Northern District of Illinois.

Brian is passionate about finance and securities law, having previously interned for the Chicago Board Options Exchange and for Susquehanna International Group. Brian has served as a Vice Chair of the Chicago Bar Association Securities Law Committee. Brian was recently recognized as a Super Lawyers® Rising Star for 2024.

Brian earned his Juris Doctor from Northwestern University Pritzker School of Law. During his time there, he had the opportunity to work at the Center on Wrongful Convictions, where he argued in court

on behalf of a client serving a life sentence and was later exonerated. Brian also served as Executive Articles Editor for the Journal of International Human Rights Law and as a teaching assistant for the Northwestern Center on Negotiation and Mediation.

A graduate of Stanford University, Brian majored in Political Science and minored in Economics. During his senior year, he was Editor-in-Chief of The Stanford Review, where he had previously been a Features Editor and a staff writer.

Brian is admitted to practice in Illinois and California, the United States District Courts for the Northern District of Illinois, the Northern and Central Districts of California, and the United States Court of Appeals for the Ninth Circuit.

### Lesley Portnoy

Lesley Portnoy joined Pomerantz as Of Counsel in January 2020, bringing to the Firm more than a decade of experience representing investors and consumers in recovering losses caused by corporate fraud and wrongdoing. Lesley is based in Los Angeles.

Lesley has assisted in the recovery of billions of dollars on behalf of aggrieved investors, including the victims of the Bernard M. Madoff bankruptcy. Courts throughout the United States have appointed him as Lead Counsel to represent investors in securities fraud class actions. Lesley has been recognized as a Super Lawyers® Rising Star every year from 2017 through 2021.

As Co-Lead Counsel with Pomerantz in *In re Yahoo!, Inc. Sec. Litig.*, a high-profile class action litigation against Yahoo!, Inc., Lesley helped achieve an $80 million settlement for the Class in 2018. The case involved the biggest data breaches in U.S. history, in which over 3 billion Yahoo accounts were compromised.

Other securities fraud cases that Lesley successfully litigated include *Parmelee v. Santander Consumer USA Holdings, Inc.*; *In re Fifth Street Asset Management, Inc. Sec. Litig.*; *In re ITT Educational Services, Inc. Sec. Litig.*; *In re Penn West Petroleum Ltd. Sec. Litig.*; *Elkin v. Walter Investment Management Corp.*; *In re CytRx Corporation Sec. Litig.*; *Carter v. United Development Funding IV*; and *In re Akorn, Inc. Sec. Litig.*

Lesley received his B.A. in 2004 from the University of Pennsylvania. In 2009, he simultaneously received his JD magna cum laude from New York Law School and his Masters of Business Administration from City University of New York. At New York Law School, Lesley was on the Dean's List—High Honors and an Articles Editor for the New York Law School Law Review.

Lesley is admitted to practice in New York and California; the United States District Courts for the Southern and Eastern Districts of New York, the Central, Northern, and Southern Districts of California and the Northern District of Texas; and the United States Court of Appeals for the Second Circuit.

**Jennifer Banner Sobers**

Jennifer Banner Sobers is Of Counsel to the Firm.

In 2021, Jennifer was honored as a Super Lawyers® "Top-Rated Securities Litigation Attorney". She was also named a 2020 Rising Star by Super Lawyers®, Law360, and the *New York Law Journal*, all separate and highly competitive awards that honor attorneys under 40 whose legal accomplishments transcend their age. After a rigorous nomination and vetting process, Jennifer was honored in 2019 and 2020 as a member of the National Black Lawyers Top 100, an elite network of the top 100 African American attorneys from each state.

Jennifer played an integral role on the team litigating *In re Petrobras Securities Litigation,* in the Southern District of New York*,* a securities class action arising from a multi-billion-dollar kickback and bribery scheme involving Brazil's largest oil company, Petróleo Brasileiro S.A.–Petrobras. The Firm, as sole Lead Counsel, achieved a historic $3 billion settlement on behalf of investors in Petrobras securities. Among Jennifer' contributions to the team's success were: managing the entire third-party discovery in the United States, which resulted in the discovery of key documents and witnesses; deposing several underwriter bank witnesses; drafting portions of Plaintiffs' amended complaints that withstood motions to dismiss the claims and Plaintiffs' successful opposition to Defendants' appeal in the Second Circuit, which resulted in precedential rulings, including the Court rejecting the heightened ascertainability requirement for obtaining class certification that had been imposed by other circuit courts; and second chaired argument in the Second Circuit that successfully led to the Court upholding the award of sanctions against a professional objector challenging the integrity of the settlement.

Jennifer played a leading role in *In re Toronto-Dominion Bank Securities Litigation*, an action in the District of New Jersey alleging a multi-year fraud arising from underlying retail banking misconduct by one of Canada's largest banks that was revealed by investigative news reports. Jennifer undertook significant work drafting the briefing to oppose Defendants' motion to dismiss the claims, which the Court denied. She oversaw the discovery in the action, which included, among other things, heading the complicated process of obtaining documents in Canada and being a principal drafter of the motion to partially lift the PSLRA stay in order to obtain discovery. Jennifer successfully presented oral argument which led to the Court approval of a $13.25 million class-wide settlement.

U.S. District Judge Noel L. Hillman, in approving the *Toronto-Dominion Bank* settlement, stated, "I commend counsel on both sides for their hard work, their very comprehensive and thoughtful submissions during the motion practice aspect of this case. I paused on it because it was a hard case. I paused on it because the lawyering was so good. So, I appreciate from both sides your efforts." He added, "It's clear to me that this was comprehensive, extensive, thoughtful, meaningful litigation leading up to the settlement." Singling out Pomerantz's role as lead counsel, the judge also said, "This settlement appears to have been obtained through the hard work of the Pomerantz firm . . . It was through their efforts and not piggybacking on any other work that resulted in this settlement."

Jennifer was a key member of the team litigating individual securities actions against BP p.l.c. in the Northern District of Texas on behalf of institutional investors in BP p.l.c. to recover losses in BP's common stock (which trades on the London Stock Exchange), arising from BP's 2010 Gulf oil spill. The actions were resolved in 2021 in a confidential, favorable monetary settlement for all 35 Firm clients.

Jennifer was a lead litigator in *Crutchfield v. Match Group, Inc*. Jennifer was also a key member of the litigation teams of other nationwide securities class action cases, including: *In re Ubiquiti Networks, Inc. Sec. Litig.*, an action in the Southern District of New York, for which Jennifer was one of the principal drafters of the amended complaint—the strength of which led the Court to deny permission to the defendants to file a formal motion to dismiss it—which secured a court-approved $15 million class-wide settlement; *In re KaloBios Pharmaceuticals, Inc. Securities Litigation,* an action in the Northern District of California, which successfully secured settlements from the bankrupt company and its jailed CEO worth over $3.25 million for the Class that were approved by the Court as well as the bankruptcy court; *Perez v. Higher One Holdings, Inc.,* an action in the District of Connecticut, for which Jennifer was one of the principal drafters of the successful opposition to Defendants' motion to dismiss, and which secured a court-approved $7.5 million class-wide settlement; *Edwards v. McDermott Int'l, Inc.*; *Chun v. Fluor Corp.*; and *Kendall v. Odonate Therapeutics, Inc*.

Prior to joining Pomerantz, Jennifer was an associate with a prominent law firm in New York where her practice focused on complex commercial litigation, including securities law and accountants' liability. An advocate of pro bono representation, Jennifer earned the Empire State Counsel honorary designation from the New York State Bar Association and received an award from New York Lawyers for the Public Interest for her pro bono work.

Jennifer received her B.A. from Harvard University (with honors), where she was on the Dean's List, a Ron Brown Scholar, and a recipient of the Harvard College Scholarship. She received her J.D. from University of Virginia School of Law where she was a participant in the Lile Moot Court Competition and was recognized for her pro bono service.

She is a member of the Securities Litigation and Public Service Committees of the Federal Bar Council, and the New York City Bar Association.

Jennifer is admitted to practice in New York; the United States District Court for the Southern and Eastern Districts of New York; and the United States Courts of Appeals for the Second, Fifth, and Ninth Circuits.

## Nicolas Tatin

French lawyer Nicolas Tatin joined Pomerantz in April 2017 as Of Counsel. He heads the Firm's Paris office and serves as its Director-Business Development Consultant for France, Benelux, Monaco and Switzerland. Nicolas advises institutional investors in the European Union on how best to evaluate losses to their investment portfolios attributable to financial misconduct, and how best to maximize their potential recoveries in U.S. and international securities litigations.

Nicolas was previously a financial lawyer at ERAFP, France's €24bn pension and retirement fund for civil servants, where he provided legal advice on the selection of management companies and the implementation of mandates entrusted to them by ERAFP.

Nicolas began his career at Natixis Asset Management, before joining BNP Paribas Investment Partners, where he developed expertise in the legal structuring of investment funds and acquired a global and cross-functional approach to the asset management industry.

Nicolas graduated in international law and received an MBA from IAE Paris, the Sorbonne Graduate Business School.

## Christopher Tourek

Christopher Tourek focuses his practice on securities litigation.

Prior to joining Pomerantz in its Chicago office, Christopher was an associate at a prominent complex-litigation firm and specialized in consumer protection, antitrust, and securities litigation. Christopher has successfully litigated securities fraud, antitrust violations, and consumer protection violations on behalf of plaintiffs in state and federal court. His litigation experience has led to his being honored as a Super Lawyers® Rising Star in Mass Torts litigation from 2016 through 2021, and in the area of Securities litigation from 2022 through 2025.

Christopher is currently pursuing claims concerning a novel pump-and-dump scheme involving emojis and Twitter that resulted in hundreds of millions of dollars in damages in In re Bed Bath & Beyond Corporation Securities Litigation (D.D.C.). He is also a member of the team pursuing claims in In re: FTX Cryptocurrency Exchange Collapse Litigation (S.D. Fla.). Finally, Christopher is representing investors in securities actions against home robotics manufacturers, pharmaceutical manufacturers, and other companies.

Christopher graduated *cum laude* in 2013 from the University of Illinois College of Law, where he obtained his pro bono notation, honors in legal research, and was a member of the Federal Civil Rights Clinic, in which he first chaired the case of *Powers v. Coleman* in the United States District Court for the Central District of Illinois. He earned his bachelor's degree in Government & Law, with a minor in Anthropology & Sociology, from Lafayette College in 2010.

Christopher is admitted to practice in Illinois and the United States District Courts for the District of Columbia, the Northern and Southern Districts of Illinois, and the Eastern District of Michigan.

## Associates

## Genc Arifi

Genc Arifi focuses his practice on securities litigation.

Prior to joining Pomerantz in its Chicago office, Genc was an associate with a prominent Chicago law firm and represented an expansive range of businesses in employment law matters as well as complex commercial litigation in both state and federal courts. Genc's experience includes handling complex civil matters, such as cases arising out of the Racketeer Influenced and Corrupt Organizations Act (RICO), shareholder derivative lawsuits, and employment law matters. He has also advised technology start-up clients as well as established financial institutions with risk assessment and litigation strategies.

Genc earned his J.D. from DePaul University College of Law and his B.S. from Western Illinois University, *summa cum laude*. He demonstrated strong academic credentials throughout law school; most notably when he achieved the highest grade in Business Organizations, which earned him the CALI Excellence for the Future Award. Genc was a recipient of the Dean's Certificate of Service awarded to law students who provided 100 hours of community service. Genc participated in a criminal appeals clinic and successfully reduced an indigent client's prison sentence.

Genc is co-author of "Valuation," Chapter 6 in "Disputes Involving Closely Held Companies 2020 Edition." Published by the Illinois Institute for Continuing Legal Education in Feb. 2020, it is the essential guide for Illinois attorneys who represent closely held corporations, partnerships, or LLCs.

Genc currently serves as the Secretary and board member of the Albanian-American Community of Illinois, a 501(c)(3) non-profit whose mission is to preserve and promote Albanian culture, history, and tradition through civic engagement and educational initiatives.

Genc is admitted to practice in Illinois and the United States District Court for the Northern District of Illinois.

### Brandon M. Cordovi

Brandon M. Cordovi focuses his practice on securities litigation.

Prior to joining Pomerantz, Brandon was an associate at a law firm in New York that specializes in the defense of insurance claims. Brandon's practice focused on the defense of transportation, premises, and construction liability matters.

Brandon earned his J.D. in 2018 from Fordham University School of Law, where he served on the Moot Court Board and was the recipient of a merit-based scholarship. While at Fordham Law, Brandon participated in the Securities Litigation and Arbitration Clinic, where he prepared for the negotiation and arbitration of claims brought on behalf of clients with limited resources. During his second summer of law school, Brandon was a summer associate at a major plaintiff's securities firm.

Brandon earned his B.S. from the University of Delaware where he double majored in Sport Management and Marketing.

Brandon is admitted to practice in New York, New Jersey, and the United States District Courts for the Southern and Eastern Districts of New York.

### Jessica N. Dell

Jessica Dell focuses her practice on securities litigation.

She has worked on dozens of cases at Pomerantz, including the Firm's securities fraud lawsuits arising from BP's 2010 Gulf oil spill. Jessica has expertise in managing discovery and a nose for investigating complex fraud across many sectors, including pharmaceuticals, medical devices, and data security. True to her roots in public interest law, she has also worked in complex pro bono class action litigation at Pomerantz.

Jessica graduated from CUNY School of Law in 2005. She was the recipient of an Everett fellowship for her work at Human Rights Watch. She also interned at the Urban Justice Center and National Advocates for Pregnant Women. While in the CUNY clinical program, she represented survivors of domestic violence facing deportation and successfully petitioned under the Violence Against Women Act. She also successfully petitioned for the release of survivors incarcerated as drug mules in Central America. After Hurricane Katrina, Jessica traveled to Louisiana to aid emergency efforts to reunite families and restore legal process for persons lost in the prison system weeks after the flood.

Jessica is a member of the New York City and State Bar Associations and the National Lawyers Guild.

**Zachary Denver**

Zachary Denver focuses his practice on securities litigation.

Prior to joining Pomerantz, Zachary worked at prominent New York firms where he litigated a variety of complex commercial matters, specializing in financial markets, securities, and bankruptcy.

Zachary graduated from New York University School of Law in 2013 and was a staff editor at the NYU Journal of Law and Liberty and a board member for the Suspension Representation Project. He earned a double bachelor's degree from the University of Massachusetts in Political Science and Communications. After undergrad, Zachary served as a Teach for America corps member in New York City and earned a master's degree in classroom teaching from PACE University.

Zachary also serves as a board member for the Legal Alliance of Pheonjong, a non-profit organization that provides legal services to Tibetan asylum seekers in New York City, and he has served as lead counsel on several applications including two successful trials in immigration court.

Zachary is admitted to practice in New York, the United States District Courts for the Southern and Eastern Districts of New York and the Courts of Appeals for the Second, Fifth, and Ninth Circuits.

**Dean P. Ferrogari**

Dean P. Ferrogari focuses his practice on securities litigation. He was recognized in the 2024 and 2025 editions of the Best Lawyers: Ones to Watch® in America publication for his work in securities litigation. He was also recognized as a 2024 Super Lawyers® Rising Star.

Dean earned his Juris Doctor in 2020 from Brooklyn Law School, where he served as an Associate Managing Editor for the Brooklyn Law Review. While in law school, Dean was initiated into the International Legal Honor Society of Phi Delta Phi and was an extern for the Brooklyn Volunteer Lawyers Project. He was recognized by the New York State Unified Court System's Office for Justice Initiatives for his distinguished service in assisting disadvantaged civil litigants in obtaining due process in consumer credit actions. Dean also authored the publication "The Dark Web: A Symbol of Freedom Not Cybercrime," New York County Lawyers Association CLE Institute, *Security in a Cyber World: Whistle Blowers, Cyber Threats, Domestic Terrorism, Financial Fraud, Policy by Twitter . . . and the Evolving Role of the Attorney and Firm*, Oct. 4, 2019, at 321.

Dean earned his B.A. from the University of Maryland, where he majored in Economics and was awarded the President's Transfer Scholarship.

He is admitted to practice in the United States District Courts for the Southern and Eastern Districts of New York.

## Emily C. Finestone

Emily C. Finestone focuses her practice on securities litigation.

Prior to joining Pomerantz, Emily was an associate at a boutique litigation firm in New York where she successfully litigated matters pertaining to sports and entertainment law, copyright infringement, and employment law. Emily previously worked at a prominent complex litigation firm specializing in consumer protection, antitrust, whistleblower, and securities litigation. She also gained appellate experience as a temporary law clerk and Staff Attorney at the Supreme Court of Virginia.

In 2022 – 2024, Emily was recognized as a Super Lawyers® Rising Star.

Emily graduated from Boston University School of Law in 2015 and was a member of *the Review of Banking &* Financial *Law*. She received her B.A. from the University of Virginia in 2012, where she double majored in English and Spanish, and minored in Government.

Emily is admitted to practice in New York, Massachusetts, Pennsylvania, and Virginia, as well as the United States District Courts for the Southern District of New York, Eastern District of New York, District of Connecticut, District of Massachusetts, and Eastern District of Pennsylvania.

## Jianan (Adam) Jiang

Jianan (Adam) Jiang focuses his practice on securities litigation.

Prior to joining Pomerantz, Adam was a litigation associate at a full service Chicago law firm, where he litigated commercial and construction cases in state and federal courts.

Adam earned his J.D., cum laude, from Washington University in St. Louis School of Law. During his time there, he served as a Staff Editor for the Washington University Global Studies Law Review. Adam also participated in the Low Income Taxpayer Clinic, where he represented indigent taxpayers to resolve tax disputes with the Internal Revenue Service.

Adam received his Bachelor of Engineering with Honors Class One (equivalent to summa cum laude) and the University Medal from the University of New South Wales in Sydney, Australia. Adam majored in Civil Engineering and worked as a geotechnical engineer before law school.

Adam speaks Mandarin and went to high school in Beijing, China.

Adam is admitted to practice in New York and Illinois, and the United States District Court for the Northern District of Illinois.

**James M. LoPiano**

James M. LoPiano focuses his practice on securities litigation. He is part of the Firm's case origination team, identifying and investigating potential violations of the federal securities laws.

James has been named a Super Lawyers® Rising Star each year since 2021.

Prior to joining Pomerantz, James served as a Fellow at Lincoln Square Legal Services, Inc., a non-profit law firm run by faculty of Fordham University School of Law.

James earned his J.D. in 2018 from Fordham University School of Law, where he was awarded the Archibald R. Murray Public Service Award, cum laude, and merit-based scholarship.  While in law school, James served as a judicial intern to the Honorable Stephen A. Bucaria of the Nassau County Supreme Court, Commercial Division, of the State of New York.  He also served as Senior Notes and Articles Editor of the Fordham Intellectual Property, Media and Entertainment Law Journal, and authored the publication "Public Fora Purpose: Analyzing Viewpoint Discrimination on the President's Twitter Account," Note, 28 Fordham Intell. Prop. Media & Ent. L.J. 511 (2018).  In addition, James completed legal internships at the Authors Guild and Fordham University School of Law's Intellectual Property and Information Law Clinic, where he counseled clients and worked on matters related to Freedom of Information Act litigation, trademarks, and copyrights.

James earned his B.A. from Stony Brook University, where he double majored in English and Cinema and Cultural Studies, completed the English Honors Program, was inducted into the Stony Brook University chapter of the International English Honors Society, and was awarded the university's Thomas Rogers Award for best analytical paper in an English course by an undergraduate.

James is admitted to practice in New York and the United States District Courts for the Southern and Eastern Districts of New York.

**Diego Martinez-Krippner**

Diego Martinez-Krippner focuses his practice on securities litigation.

Prior to joining Pomerantz, Diego was a litigation associate at a large international law firm, where he litigated cases in state and federal courts involving mergers and acquisitions, corporate governance, multidistrict litigation, products liability, and commercial matters. He also served as a litigation associate at a boutique law firm where he was involved in disputes concerning art, investment instruments, intellectual property, fiduciary duties, and other commercial matters.

Diego is a graduate of the University of Chicago and the University of Illinois College of Law. He began his career as a judicial law clerk for the Honorable Theresa Lazar Springmann, United States District Court for the Northern District of Indiana, and the Honorable Mary Beck Briscoe, United States Court of Appeals for the Tenth Circuit.

Diego is admitted to practice in Illinois.

**Thomas H. Przybylowski**

Thomas H. Przybylowski focuses his practice on securities litigation.

Prior to joining Pomerantz, Thomas was an associate at a large New York law firm, where his practice focused on commercial and securities litigation, and regulatory investigations. In 2020 and 2021, Thomas was honored as a Super Lawyers® Rising Star.
Thomas earned his J.D. in 2017 from the Georgetown University Law Center. While in law school, Thomas served as a Notes Editor for the *Georgetown Journal of Legal Ethics* and authored the publication "A Man of Genius Makes No Mistakes: Judicial Civility and the Ethics of the Opinion," Note, 29 Geo. J. Legal Ethics 1257 (2016). Thomas earned his B.A. from Lafayette College in 2014, where he double majored in English and Philosophy.

Thomas is admitted to practice in New York and New Jersey, and the United States District Courts for the Eastern and Southern Districts of New York and the District of New Jersey.

**Jared Rabinowitz**

Jared Rabinowitz focuses his practice on securities litigation.

Prior to joining Pomerantz, Jared was a judicial law clerk for Justice Andrew Borrok of the New York County Supreme Court Commercial Division.

Jared earned his J.D. in 2021 from New York Law School, where he served as a Senior Editor for the *New York Law School Law Review* and was the recipient of a merit-based scholarship. While at New York Law School, Jared participated in the Securities Arbitration Clinic, where he prepared for the negotiation and arbitration of securities claims brought on behalf of clients with limited resources. Prior to law school, Jared worked as an institutional equity trader at a New York financial services firm.

Jared earned his B.S. from Hofstra University where he majored in Legal Studies in Business.

Jared is admitted to practice in New York and United States District Courts for the Southern and Eastern Districts of New York.

**Ankita Sangwan**

Ankita Sangwan focuses her practice on corporate governance matters.

She graduated in 2022 from the LL.M. program at Columbia Law School as a Harlan Fiske Stone Scholar. Prior to attending Columbia Law School, Ankita worked for four years in the Commercial Litigation Team of a prominent law firm in Bombay, India, at which she focused her practice on complex commercial and civil disputes. Ankita assisted in arguments before various courts in India, including the Supreme Court.

In 2017, Ankita graduated with Honors from the B.A. LL.B. program at Jindal Global Law School, India. She was a member of the university's Moot Court Society, which finished as semi-finalists at the World Rounds of the International Investment Moot Court Competition, held in Frankfurt, Germany (2016).

Ankita's moot court experience was recognized by her university; she was awarded the "Outstanding Contribution to Moot Court" prize upon graduation.

Ankita is admitted to practice in the State of New York.

**Villi Shteyn**

Villi Shteyn focuses his practice on securities litigation.

Villi worked on individual securities lawsuits concerning BP's 2010 Gulf of Mexico oil spill, which proceeded in *In re BP p.l.c. Secs Litig.*, No. 4:10-md-2185 (S.D. Tex.) and were resolved in 2021 in a confidential, favorable monetary settlement for all 35 Firm clients, including public and private pension funds, money management firms, partnerships, and investment trusts from the U.S., Canada, the U.K., France, the Netherlands, and Australia. He also worked on a successful 2021 settlement for investors in a case against Chinese company ChinaCache.

Villi pursued claims against Deutsche Bank for its lending activities to disgraced financier Jeffrey Epstein and was involved in the Firm's class action litigation against Arconic, arising from the deadliest U.K. fire in more than a century. He also represented investors in a case against AT&T for widespread fraud relating to their rollout of DirecTVNow, and against Frutarom for fraud related to widespread bribery in Russia and Ukraine. He represented Safra Bank in a class action against Samarco Mineração S.A., in connection with the Fundao dam-burst disaster, which is widely regarded as the worst environmental disaster in Brazil's history. He represented investors against Recro Pharma in relation to their non-opioid pain-relief product IV Meloxicam, and against online education companies 2U and K12. Villi also worked on a consumer class action against Apple, Inc. in relation to alleged slowdowns of the iPhone product.

Before joining Pomerantz, Villi was employed by a boutique patent firm, where he worked on patent validity issues in the wake of the landmark *Alice* decision and helped construct international patent maintenance tools for clients and assisted in pursuing injunctive relief for a patent-holder client against a large tech company.

Villi has been recognized as a Super Lawyers® Rising Star from 2021 through 2023.

Villi graduated from The University of Chicago Law School (J.D., 2017). In 2014, he graduated *summa cum laude* from Baruch College with a Bachelor of Science in Public Affairs.

Villi is admitted to practice in New York, and the United States District Courts for the Southern District of New York and the Eastern District of New York, and the United States Court of Appeals for the Second Circuit.

**Stephanie Weaver**

Stephanie Weaver focuses her practice on securities litigation. Prior to joining Pomerantz, Stephanie was an associate at a boutique securities litigation firm, focused on securities litigation, antitrust and bankruptcy matters.

Stephanie graduated from St. John's University School of Law *cum laude* in 2021. While in law school, she served as Managing Director of the Moot Court Honor Society and won the Best Brief Award at the 2020 Elaine Jackson Stack Moot Court Competition. She was also a member of the school's New York International Law Review. She was also honored as a New York State Court of Appeals Fellow in 2019. She earned her bachelor's degree *summa cum laude* from St. John's University in 2018.

Stephanie is admitted to practice in the State of New York.

### Guy Yedwab

Guy Yedwab focuses his practice on securities litigation.

Guy graduated from Rutgers Law School *summa cum laude* in 2023, while also receiving a Master's Degree in Public Affairs and Policy from the Rutgers University Bloustein School of Planning and Public Policy. While in law school, he won awards with the National Appellate Advocacy Team and was an editor at the *Journal of Law and Public Policy*, in which he published a note on constitutional law. He was honored with the Marsha Wenk Fellowship at the A.C.L.U. of New Jersey, and the Eagleton Institute's Henry J. Raimondo Legislative Fellowship.

Guy serves as a board member for the League of Independent Theater, a 501(c)(6) trade association for small-sized cultural institutions in New York City. As such, he consults with policymakers on fostering small business in the city.

Guy is admitted to practice in New York State's First Appellate Department.

## Staff Attorneys

### Jay Douglas Dean

Jay Dean focuses on class action securities litigation. He has been a commercial litigator for more than 30 years.

Jay has been practicing with Pomerantz since 2008, including as an associate from 2009–2014, interrupted by a year of private practice in 2014–2015. More recently, he was part of the Pomerantz teams prosecuting the successful *Petrobras* and *Yahoo* actions. Prior to joining Pomerantz, he served as an Assistant Corporation Counsel in the Office of the Corporation Counsel of the City of New York, most recently in its Pensions Division. While at Pomerantz, in the Corporation Counsel's office and previously in large New York City firms, Jay has taken leading roles in trials, motions and appeals.

Jay graduated in 1988 from Yale Law School, where he was Senior Editor of the *Yale Journal of International Law*.

Jay is admitted to practice in New York; the United States District Courts for the Southern and Eastern Districts of New York; and the United States Court of Appeals for the Second Circuit. Jay has also earned the right to use the Chartered Financial Analyst designation.

**Timor Lahav**

Timor Lahav focuses his practice on securities litigation.

Timor participated in the Firm's securities class action case against Brazil's largest oil company, Petrobras, arising from a multi-billion-dollar kickback and bribery scheme, in which the Firm, as sole Lead Counsel, achieved a historic $3 billion settlement for the Class, as well as precedent-setting legal rulings. Timor also participated in the firm's landmark litigation against Yahoo!, Inc., for the massive security breach that compromised 1.5 billion users' personal information.

Timor received his LL.B. from Tel Aviv University School of Law in Israel, following which he clerked at one of Israel's largest law firms. He was an associate at a law firm in Jerusalem, where, among other responsibilities, he drafted motions and appeals, including to the Israeli Supreme Court, on various civil matters.

He received his LL.M. from Benjamin N. Cardozo School of Law in New York. There, Timor received the Uriel Caroline Bauer Scholarship, awarded to exceptional Israeli law graduates.

Timor brings to Pomerantz several years' experience as an attorney in New York, including examining local SOX anti-corruption compliance policies in correlation with the Foreign Corrupt Practices Act; and analysis of transactions in connection with DOJ litigation and SEC enforcement actions.

Timor was a Captain in the Israeli Defense Forces. He is a native Hebrew speaker and is fluent in Russian.

He is admitted to practice in New York and Israel.

**Laura M. Perrone**

Laura M. Perrone focuses on class action securities litigation.

Prior to joining Pomerantz, Laura worked on securities class action cases at Labaton Sucharow. Preceding that experience, she represented plaintiffs at her own securities law firm, the Law Offices of Laura M. Perrone, PLLC.

At Pomerantz, Laura participated in the Firm's securities class action case against Brazil's largest oil company, Petrobras, arising from a multi-billion-dollar kickback and bribery scheme, in which the Firm, as sole Lead Counsel, achieved a historic $3 billion settlement for the Class, as well as precedent-setting legal rulings.

Laura has also represented bondholders against Citigroup for its disastrous investments in residential mortgage-backed securities, shareholders against Barclays PLC for misrepresentations about its dark pool trading system known as Barclays LX, and shareholders against Fiat Chrysler Automobiles for misrepresentations about its recalls and its diesel emissions defeat devices.

Laura graduated from the Benjamin N. Cardozo School of Law, where she was on the editorial staff of Cardozo's Arts and Entertainment Law Journal and was the recipient of the Jacob Burns Merit Scholarship.

Laura is admitted to practice in New York; the United States District Courts for the Southern and Eastern Districts of New York; and the United States Court of Appeals for the Second Circuit.

## Allison Tierney

Allison Tierney focuses her practice on securities litigation.

Allison brings to Pomerantz her 10 years' expertise in large-scale securities class action litigation. She participated in the Firm's securities class action case against Brazil's largest oil company, Petrobras, arising from a multi-billion-dollar kickback and bribery scheme, in which the Firm, as sole Lead Counsel, achieved a historic $3 billion settlement for the Class, as well as precedent-setting legal rulings.

Prior to joining Pomerantz, Allison worked on securities class action cases at several top New York law firms, representing institutional investors. She has represented plaintiffs in disputes related to antitrust violations, corporate financial malfeasance, and residential mortgage-backed securities fraud.

Allison earned her law degree from Hofstra University School of Law, where she served as notes and comments editor for the *Cyberlaw Journal*. She received her B.A. in Psychology from Boston University, where she graduated *magna cum laude*.

Allison is conversant in Spanish and studying to become fluent.

Allison is admitted to practice in New York.