**K&L GATES**

December 9, 2025

Loly Garcia Tor
Partner
loly.tor@klgates.com

T +1 973 848 4026
F +1 973 848 4001

**By ECF**

Hon. Zahid N. Quraishi, U.S.D.J.
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street Room 2020
Trenton, NJ 08608

Re:     *In re Rocket Pharmaceuticals, Inc. Sec. Litig.,*
        **Case No. 3:25-cv-10049-ZNQ-TJB**

Dear Judge Quraishi:

On behalf of Defendants Rocket Pharmaceuticals, Inc. ("Rocket"), Dr. Guarav Shah ("Dr. Shah") and Aaron Ondrey ("Mr. Ondrey") (collectively, "Defendants") in the above-referenced action, we write pursuant to Your Honor's Judicial Preferences to request a pre-motion conference regarding Defendants' anticipated motion to dismiss Plaintiffs' Consolidated Amended Class Action Complaint (ECF No. 34, "CAC") with prejudice for failure to state a claim pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act (the "PSLRA"), 15 U.S.C. §§ 78u-4(b)(3)(A) and 78u-5(c).  Below are the principal bases for the anticipated motion.

**Background.**  Rocket is a biotechnology company focused on the development of gene therapies for rare and devastating diseases.  (CAC ¶ 31)  One such therapy is RP-A501, an investigational treatment for Danon Disease—a devastating genetic disease which leads to early death due to heart failure.  (*Id.* ¶¶ 3, 31, 34)  Rocket conducted a Phase 1 study of RP-A501 evaluating its safety and efficacy in seven male patients with Danon disease. The Phase 1 study results were reported in the New England Journal of Medicine on November 18, 2024 (the "Report").  (*Id.* ¶ 69)  The Report described certain serious adverse events ("SAEs") that had been experienced by patients in the study, including one patient who had "complement-mediated thrombotic microangiopathy . . . with thrombocytopenia and acute kidney injury" (hereinafter "TMA").  (*See Phase 1 Study of AAV9.LAMP2B Gene Therapy in Danon Disease | New England Journal of Medicine*, referenced in CAC ¶ 69).

Following the completion of Rocket's Phase 1 clinical trial, Rocket embarked on the Phase 2 clinical trial.  Rocket disclosed that additional safety measures were implemented and were reflected in the protocol for the pivotal Phase 2 study, including the "exclusion of patients with end-stage heart failure, and a refined immunomodulatory regimen involving transient B- and T-cell mediated inhibition, with an emphasis on preventing complement activation . . . ."  (*See* 10-K filed on February 27, 2024, referenced in CAC ¶ 8.)

K&L GATES LLP
ONE NEWARK CENTER   TENTH FLOOR   NEWARK   NJ 07102
T +1 973 848 4000  F +1 973 848 4001  klgates.com

Two patients who received doses of RP-A501 and a C3 inhibitor (introduced with FDA approval to attempt to suppress complement activation) in May 2025 sustained SAEs, causing Rocket to voluntarily pause the Phase 2 trial; shortly thereafter, on May 23, the FDA placed the trial on a clinical hold, days before one of the patients died.  (CAC ¶¶ 5, 83)  Rocket immediately issued a news release reporting these developments.  (*Id.* ¶ 83)  In less than three months, the FDA lifted the clinical hold on Rocket's Phase 2 trial of RP-A501 for the treatment of Danon Disease.  (*Id.* ¶ 54)

The CAC in this action purports to assert claims against Defendants under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder, as well as a claim against Dr. Shah and Mr. Ondrey for "control person" liability under Section 20(a) of the Exchange Act.  Although the Complaint is lengthy (and repetitive), Plaintiffs' alleged claims are summarized in Paragraphs 5 and 6 of that pleading.  Those Paragraphs allege that Defendants were obligated to disclose that several patients in the Phase 2 clinical trial had experienced SAEs, and that Rocket had amended the Phase 2 trial's protocol to introduce a C3 inhibitor to the pretreatment regimen.  Plaintiff's claims fail for several reasons.

**The CAC Fails to Plead Actionable Misrepresentations or Omissions.** To state a claim under Section 10(b) of the Exchange Act, Plaintiff must plead, among other things, that Defendants made an untrue statement of material fact or omitted material facts necessary to make statements made not misleading, and did so with an intent to "deceive, manipulate or defraud."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007) (internal citation omitted).  Because a claim under Section 10(b) and Rule 10b-5 is a claim for fraud, such a claim must meet the heightened pleading standard of Rule 9(b).  The pleading standards applicable to such claims are made even more stringent by the PSLRA, which imposes another layer of factual particularity upon a pleading asserting allegations of securities fraud.  15 U.S.C. § 78u-4(b)(1).  "One of the purposes of the PSLRA's heightened pleading requirements is to limit abusive securities class-action suits."  *Winer Family Trust v. Queen,* 503 F.3d 319, 326 (3d Cir. 2007).

None of the statements referenced in the CAC contains a blanket representation concerning the safety of the Phase 2 clinical trial, the certainty of its outcome, or an assurance as to the timeline for its conclusion.  And, as noted above, Rocket disclosed the fact that SAEs were observed during the Phase 1 clinical trial and that, as a consequence, it had developed an updated protocol in collaboration with the FDA to attempt to mitigate the development of TMA and other treatment-related adverse events. And, in any case, the challenged statements are no more than opinions or forward-looking statements, rather than statements of present fact, and Rocket's public filings and releases were accompanied by extensive cautionary language, bringing those filings and releases within the "safe harbor" imposed by the PSLRA.  15 U.S.C. § 78u-5.

Moreover, Rocket had no obligation to disclose the manner in which it had updated the clinical protocol.  The law is clear that the details of clinical testing, as well as commentary from the FDA, need not be disclosed to investors.  *See, e.g.*, *Hoey v. Insmed, Inc.,* No. 16-4323 (FLW), 2018 WL 902266, at *9 (D.N.J. Feb. 15, 2018) ("Numerous courts around the country have found that a study's alleged flaws or shortcomings need not be disclosed to a reasonable investor"); *Johnson v. Pozen, Inc.*, No. 1:07-CV-599, 2009 U.S. Dist. LEXIS 12765, at *55 (M.D.N.C. Feb. 19, 2009) ("Defendants did not have a duty to disclose every detail of its FDA correspondence or to use any specific words in their disclosures").  The Third Circuit itself has affirmed the dismissal of a securities class action complaint alleging that the defendant had failed to timely disclose that

December 9, 2025

patients in a Phase 2 clinical trial had experienced "numerous side effects and three deaths . . . ." *City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 169 (3d Cir. 2014).

**The CAC Fails to Raise a Strong Inference of Scienter.**   The CAC does not plead allegations of fact giving rise to an inference, much less a *strong* inference, that the Defendants acted with scienter, as required by the PSLRA's pleading requirements, 15 U.S.C. §78u-4(b)(2).  "Plaintiff's reasoning is a classic example of 'fraud by hindsight.'  The mere allegation that Defendants failed to disclose a risk does not in and of itself constitute strong evidence that they did so with scienter." *Fort Worth Emp's Ret. Fund v. Biovail Corp.*, 615 F. Supp. 2d 218, 226 (S.D.N.Y. 2009).  In addition, "[t]he Third Circuit has generally found 'resignations of key officers to be insufficient to show that they acted with the requisite scienter . . . ." *In re Par Pharm. Sec. Litig.*, No. 06-CV-3226(PGS), 2008 WL 2559362, at *12 (D.N.J. June 24, 2008) (internal citation omitted).

Moreover, the sales of shares by the Individual Defendants referenced in the CAC afford no evidence of scienter; those transactions were common "sell to cover" transactions publicly disclosed in Form 144 filings with the SEC (appearing on Rocket's website) and were effected in order "to cover a tax obligation resulting from the settlement of a vested equity award distribution." The related Form 4 filings (also appearing on Rocket's website) similarly disclosed that the sales were to "pay tax withholding obligations in connection with the vesting of RSUs" (Restricted Stock Units).  In short, the proceeds from the sales were used to pay withholding taxes; the funds were not "pocketed" by the Individual Defendants, as the CAC claims.

The CAC's allegation that Rocket itself raised funds from the sale of shares is equally insufficient. *In re MELA Scis., Inc. Sec. Litig.*, No. 10-CV-8774(VB), 2012 WL 4466604 at *5 (S.D.N.Y. Sept. 19, 2012) (repeated allegations of asserted misrepresentations concerning the results of clinical trials enabled the defendants to sell millions of shares were "inadequate to support an allegation of intent to commit fraud").

**The CAC Fails to Plead Loss Causation.**   Plaintiffs do not adequately plead loss causation. The decline in Rocket's stock price was attributable to the market's reaction following the prompt announcement of a patient's death during the Phase 2 clinical trial, rather than the disclosure of any supposed misrepresentation.  "[L]iability cannot be imposed on the basis of subsequent events."  *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1330 (3d Cir. 2002) (internal citation omitted).

**The CAC Fails to Plead Control Personal Liability**.  Because Plaintiffs fail to plead a primary violation of the federal securities laws, the "control person" claims against Dr. Shah and Mr. Ondrey necessarily fail as well, since "controlling person liability is premised on an independent violation of the federal securities laws." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 211 (3d Cir. 2002).

For the foregoing reasons, Defendants respectfully request the Court's authorization to file a motion to dismiss Plaintiffs' Consolidated Amended Class Action Complaint.

Respectfully submitted,

*s/ Loly G. Tor*

Loly G. Tor

cc: All counsel of record (ECF)

3

December 9, 2025